**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER SMITH on behalf of herself and others similarly situated, | ) ) | 1:13-cv-2018 |
|     Plaintiff, | ) ) | |
| v. | ) ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY. | ) ) ) | JURY DEMANDED |
|     Defendant. | ) | |

## <u>COMPLAINT -- CLASS ACTION</u>

1.    Aimed at protecting consumer privacy, the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") prohibits the use of "automatic telephone dialing systems" to call cellular telephones. It also prohibits use of any artificial or prerecorded voice.

2.    Plaintiff Jennifer Smith received one or more unsolicited, unattended, autodialed prerecorded voice calls on her cellular telephone in January 2013, which was placed by or on behalf of defendant State Farm Mutual Automobile Insurance Company. These calls were made as part of a robodialing campaign, the purpose of which was to advertise State Farm's products and/or services to a large number of potential customers in a short period of time.

3.    As explained herein, State Farm is well aware of the TCPA's prohibitions against autodialed and prerecorded voice calls to cell phones, but systematically uses these devices as part of calling campaigns to gain customers, in spite of this knowledge.

4.    Plaintiff thus brings this action against State Farm under the TCPA on behalf of herself and others similarly situated. Plaintiff seeks statutory damages for herself and the class and an injunction prohibiting State Farm from making impermissible robocalls in the future.

## JURISDICTION AND VENUE

5.      The Court has federal question subject matter jurisdiction over these TCPA claims. Mims v. Arrow Financial Services, LLC, 132 S.Ct. 740 (2012).

6.      Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

7.      Plaintiff is an individual who resides in this District, whose cell phone number is on the National Do Not Call Registry.

8.      State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois corporation that has its headquarters in Bloomington, Illinois.

## THE LEGAL BASIS OF THE CLAIMS AND STATE FARM'S ACKNOWLEDGEMENT OF TCPA LIABILITY FOR THE ACTIONS OF ITS TELEMARKETERS

9.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (Jan. 18, 2012).

10.     Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

11.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

12.     In 2008, the FCC reiterated this holding: "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶10 (Jan.4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748, ¶2 (Dec. 31, 2012).

13.     Accordingly, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call.  Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

14.     Plaintiff alleges that the phone calls at issue in this case were made for the benefit of Defendant State Farm.  As such calls were initiated by State Farm, and State Farm is legally responsible to ensure that such calls complied with applicable telemarketing law, even if State Farm employees did not physically dial the calls.

15.     State Farm is well aware of its liability for calls placed through its network of exclusive agents, as it previously petitioned the Federal Communications Commission for an

3

exemption for calls placed by its agents pursuant to the FCC's "Established Business Relationship" exemption for call to persons on the DNC list.  See *State Farm Mutual Automobile Insurance Company's Request for Clarification & Declaratory Ruling*, a copy of which is attached hereto as Exhibit 1.

16.     In its Request for Clarification & Declaratory Ruling, State Farm stated that its agents have an exclusive relationship with State Farm, and acknowledged that those "[a]gents solicit applications for coverage." *Id.*

17.     State Farm also stated that the entities it uses for telemarketing are "required by agreement to perform those functions and are compensated on that basis" *Id.*

18.     State Farm further stated that "State Farm itself conducts no telemarketing and delegates almost all policyholder communications to local State Farm agents." *Id.*

19.     State Farm explained, "[the agents] perform the same services for State Farm as employees do for companies that happen to in-source, rather than out-source, customer service functions." *Id.*

20.     In this official filing, State Farm additionally acknowledged that "The FCC already has made clear that, with respect to such telemarketing, an insurance company is responsible for its agents' compliance with applicable telemarketing regulations."  Adding in a footnote, "The FCC has stated that a company on whose behalf a telemarketing call is made "bears ultimate responsibility for any violations, and call "placed by an agent of the [company] are treated as if the [company] itself placed the call.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and order, 10 FCC Rcd 12931 at ¶ 13 (Aug. 7, 1995)."

21.     In response to State Farm's Petition, the FCC reiterated its warning about the scope of State Farm's liability for calls made by its exclusive agents:  "We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the ultimate responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of the company are treated as if the company itself placed the call." *See* FCC Declaratory Ruling, CG Docket No, 02-278 (DA 05-2293) (August 17, 2005), which is attached as Exhibit 2.

22.     As recently as May of 2010, State Farm has also petitioned the FCC to allow it to make autodialed and pre-recorded calls to the cell phones of individuals nationwide. A copy of State Farm's May 2010 letter to the FCC is attached hereto as Exhibit 3.

23.     In this letter, State Farm unabashedly acknowledges the intrusive nature of the solicitations upon which Plaintiff bases her Complaint, "Certainly, the prerecorded or autodialed call for telemarketing purposes is an intrusion as to consumers". *Id.*

## **FACTS AS TO PLAINTIFF**

24.     State Farm engages in marketing through the use of telephones, both directly and through use of "lead generators," as well as third party telemarketers.

25.     In January 2013 and before, State Farm's policy, practice or procedure permitted it to accept new customers that were originally obtained through the placement of automatically dialed and prerecorded voice telephone calls.

26.     On about January 25, 2013, State Farm, or some lead generator, telemarketer or person on its behalf, called plaintiff's cellular telephone using an automatic telephone dialing system.

27.     The caller ID for the call was 773-897-6086.

28.     When plaintiff answered, State Farm or some person on its behalf played a message that had been recorded ahead of time, which told plaintiff that the caller's records showed that plaintiff could save on her auto insurance. The message then told plaintiff to "press 1" for more information, and "press 3" to be removed from the caller's list.

29.     Because of the nature and quality of the voice coming from the other end of the call, there is no doubt in plaintiff's mind that it was prerecorded or artificial. The prompts to plaintiff to press a number further confirmed that no human being was on the other end. Furthermore, plaintiff is reasonably certain that the call was made using an automatic telephone dialing system because no rational person would hand-dial a phone number, only to play an automated message.

30.     The call to plaintiff's cellular telephone was made as part of a telemarketing campaign, whereby hundreds (or thousands) of telephone numbers were automatically dialed by a computer, and messages automatically played.

31.     Plaintiff did not press 1 or 3; instead she hung up.

32.     Plaintiff called 773-897-6086 later that day to inquire about the call and the caller. After discussing car insurance for a few moments with the operator, the operator told plaintiff that the call had been placed in order to sell State Farm automobile insurance, and that the call would be automatically transferred to another State Farm salesperson once plaintiff provided more personal information, which plaintiff did not do.

33.     Upon information and belief, the operator's above statement was true: the call to plaintiff's cell phone was placed in order to attempt to sell Plaintiff State Farm automobile insurance.

34.     Upon information and belief, the operator's statement that plaintiff would have been transferred to another State Farm salesperson if she provided more personal information, was true.

35.     Plaintiff has never provided her cell phone number to State Farm.  Plaintiff has never provided her cell phone number to any other entity whereby State Farm became privileged to make telemarketing calls to plaintiff's cell phone.

36.     There may have been other calls to plaintiff and the class, too, that were made by or on behalf of State Farm for purposes other than telemarketing.

37.     Indeed, the prohibition in section 227(b)(1)(A)(iii) against use of any "automatic telephone dialing system" and "artificial or prerecorded voice" applies "regardless of the content of the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶11 (Jan.4, 2008).

38.     The claims of the Plaintiff, and the class of persons she seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

39.     Plaintiff and the class have been damaged by the calls that are the subject of this lawsuit because their privacy has improperly and illegally been invaded. Furthermore, plaintiff seeks an injunction prohibiting defendant from engaging in similar conduct in the future; a right that Congress specifically conferred upon aggrieved persons like plaintiff and the class. 47 U.S.C. §227(b)(3).

## COUNT I – TCPA

40.     Plaintiff incorporates all previous paragraphs of this complaint.

41.     It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system. The TCPA also specifically prohibits the use of any automatic telephone dialing system and/or artificial or prerecorded voice to cell phones.  47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200State Farm, or some person on its behalf, initiated a call to plaintiff and others' cellular telephones, using an automatic telephone dialing system and/or an artificial or prerecorded voice.

42.     Plaintiff and the class are entitled to have their rights, status and legal relations under the TCPA relating to defendant's telemarketing to cell phones using an automatic dialing system and artificial or prerecorded voice.

43.     The defendant's calls were negligent, or alternatively, they were willful.  47 U.S.C. §312(f)(1).

<u>**Class Allegations**</u>

44.     Plaintiff brings Count I on behalf of a class, which consists of:

All persons nationwide who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention and/or an artificial or prerecorded voice, where the called party had not previously provided his telephone number to State Farm as to the subject matter of the call (e.g. telemarketing), where any call was made on or after March 15, 2009, ongoing.

45.     Plaintiff is a member of this class.

46.     The class is so numerous that joinder is impracticable. Upon information and belief, there are more than one thousand persons in the class.

47.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. The answers to these questions will be dispositive as to the most important issues in the case. They are susceptible to class-wide determination through common proofs, and a single

factual or legal determination will be applicable to each class member. Such questions common to the Class include, but are not limited to:

a.      Whether the calls that are the subject of this lawsuit were made using an "automatic telephone dialing system" as proscribed by the TCPA and applicable FCC regulations and orders;

b.      Whether the messages played during the calls that are the subject of this lawsuit constituted an "artificial or prerecorded voice" as proscribed by the TCPA and applicable FCC regulations and orders; and

c.      Damages, including whether the violations were willful or knowing.

48.     Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

49.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

50.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

51.     Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions by

individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

52.     The identity of the class is likely readily identifiable from defendant's records, or the records of other person(s) involved with making the calls.

53.     Upon information and belief, based upon requirements of the Federal Trade Commission Telemarketing Sales Rule, 16 C.F.R. § 16 C.F.R. § 310.5(a)-(d), defendant and/or the person(s) making calls on its behalf keep physical records of each call made.

54.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and the class and against defendants that provides the following relief:

a.      Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful or knowing;

b.      A permanent injunction prohibiting defendant from violating the TCPA in the future through calling cell phones using an automatic telephone dialing system and/or a prerecorded voice message;

c.      A declaration that defendant used an automatic telephone dialing system and artificial or prerecorded voice, and violated the TCPA in using such for calls to the cell phones of plaintiff and the class; and

d.      Any other relief the Court finds just and proper.

Respectfully submitted,

Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080
*Subject to Admission Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
*Subject to Admission Pro Hac Vice*

## JURY DEMAND

Plaintiff demands trial by jury.

Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke

# Exhibit 1

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C.  20554**

Request of State Farm Mutual
Automobile Insurance Company
For Clarification & Declaratory Ruling

File No. _____

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**
**REQUEST FOR CLARIFICATION & DECLARATORY RULING**

James R. Tuite
State Farm Mutual Automobile
   Insurance Company
One State Farm Plaza
Bloomington, Illinois  61710
Phone:  (309) 766-2127
Fax:  (309) 766-4909
E-mail: jim.tuite.awn7@statefarm.com

Robert L. Pettit
Amy E. Worlton
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, DC 20006
Phone: (202) 719-7000
Fax: (202) 719-7049
E-mail: aworlton@wrf.com

*Counsel for State Farm Mutual*
*Automobile Insurance Company*

May 13, 2005

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | |
|---|---|
| Request of State Farm Mutual Automobile Insurance Company For Clarification & Declaratory Ruling | File No. _____ |

To: Monica Desai, Chief, Consumer and Governmental Affairs Bureau

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**
**REQUEST FOR CLARIFICATION & DECLARATORY RULING**

Pursuant to Section 1.2 of the Commission's rules,[1] State Farm Mutual Automobile Insurance Company ("State Farm") respectfully requests that the Bureau clarify, on an expedited basis, the application of one aspect of the Commission's do-not-call requirements.[2] Specifically, State Farm requests clarification that its exclusive agents, in the circumstances described below, are permitted to telemarket to State Farm's customers on State Farm's behalf as long as State Farm otherwise has a valid "established business relationship" ("EBR")[3] with the customer.

In the *Second Recon Order* in the Commission's docket *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,[4] the FCC determined that an

---

[1] 47 C.F.R. § 1.2.

[2] *See* 47 C.F.R. § 64.1200(c)(2).

[3] 47 C.F.R. § 64.1200(f)(3) (An EBR expires 18 months following the last transaction between a seller and its customer or when the customer requests no more telemarketing calls from the seller, whichever occurs first.).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Second Order on Reconsideration, FCC 05-28, CG Docket No. 02-278 (rel. Feb. 18, 2005)("*Second Recon Order*").

1

insurance company may call a policyholder during the life of an insurance policy pursuant to the EBR exception,[5] even if the policyholder has registered on the National Do-Not-Call Registry.[6] In contrast, the Commission concluded that *insurance agents* may call policyholders only for a period of 18 months from the initiation of a policy because, unlike an insurance company with which a consumer has an "ongoing relationship," an "insurance agent *typically* is only involved in the original transaction."[7]

While one-time interactions between insurance agents and policyholders may be typical in the insurance industry, State Farm has employed a radically different business structure and approach for over eighty years. Far from having agents involved only in the original transaction, State Farm depends almost entirely on more than 16,000 insurance agents – who have an exclusive agency relationship with State Farm – to both represent the company to consumers and provide service to policyholders. Indeed, they are required by agreement to perform those functions and are compensated on that basis. For example, State Farm agents are responsible for answering policyholders' questions and updating them when adjustments in coverage may be appropriate. Agents solicit applications for coverage, submit claims, and in some cases, have draft authority to pay claims on the spot. Moreover, State Farm itself conducts no telemarketing and delegates almost all policyholder communications to local State Farm agents.

Thus, in contrast to the Commission's description of the "typical" insurance agent, State Farm agents are similarly situated to other parties who are permitted by the FCC to telemarket pursuant to an EBR between a consumer and a financial services company. State Farm insurance

---

[5] *See* 47 C.F.R. § 64.1200(f)(9)(ii).

[6] *Second Recon Order*, ¶¶ 26-27.

[7] *Id.* at nt. 77 (emphasis added).

agents are independent contractors, not employees of State Farm. Yet, they perform the same services for State Farm as employees do for companies that happen to in-source, rather than out-source, customer service functions. Likewise, State Farm agents make the same types of customer calls on behalf of State Farm as third-party telemarketing agents hired by financial service companies to make calls under the EBR exception.

Accordingly, the Bureau should clarify that State Farm's exclusive agents are permitted to call policyholders on behalf of State Farm during the life of an insurance policy (or until the EBR between an insurance company and a policyholder is otherwise terminated). The FCC already has made clear that, with respect to such telemarketing, an insurance company is responsible for its agents' compliance with applicable telemarketing regulations.[8]

---

[8] The FCC has stated that a company on whose behalf a telemarketing call is made "bears ultimate responsibility for any violations," and calls "placed by an agent of the [company] are treated as if the [company] itself placed the call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391 at ¶ 13 (Aug. 7, 1995).

Respectfully submitted,

By: _____

James R. Tuite
State Farm Mutual Automobile
  Insurance Company
One State Farm Plaza
Bloomington, Illinois  61710
Phone:  (309) 766-2127
Fax:  (309) 766-4909
E-mail: jim.tuite.awn7@statefarm.com

Robert L. Pettit
Amy E. Worlton
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, DC 20006
Phone: (202) 719-7000
Fax: (202) 719-7049
E-mail: aworlton@wrf.com

*Counsel for State Farm Mutual Automobile
Insurance Company*

May 13, 2005

# Exhibit 2

**Federal Communications Commission** DA 05-2293

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Rules and Regulations Implementing the | )    CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | ) |
| | ) |
| Request of State Farm Mutual Automobile | ) |
| Insurance Company for Clarification and | ) |
| Declaratory Ruling | ) |

**DECLARATORY RULING**

**Adopted: August 16, 2005**                 **Released: August 17, 2005**

By the Acting Chief, Consumer & Governmental Affairs Bureau:

# I.   INTRODUCTION

1.   In this Declaratory Ruling, we grant a Request for Clarification and Declaratory Ruling filed by State Farm.[1]  Specifically, we clarify that State Farm's "exclusive agents" may rely on the "established business relationship" (EBR) exemption of the Telephone Consumer Protection Act (TCPA)[2] to make telephone solicitations on behalf of State Farm to consumers on the national do-not-call list.[3]  We reiterate, however, that once a consumer makes a company specific do-not-call request, whether to State Farm or any of its agents telemarketing on behalf of State Farm, State Farm and all of its agents must

---

[1]   State Farm Mutual Automobile Insurance Company Request for Clarification and Declaratory Ruling filed May 13, 2005 (State Farm Petition).

[2]   Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), *codified at* 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq*.  Section 227(a)(3) exempts from the term telephone solicitation a call "to any person with whom the caller has an established business relationship."  *See* 47 U.S.C. § 227(a)(3).

[3]   Section 64.1200(f)(3) of our rules defines the term "established business relationship" as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

*See* 47 C.F.R. § 64.1200(f)(3)

1

**Federal Communications Commission** DA 05-2293

honor that request and not call the consumer again to make a telephone solicitation.[4]

## II. BACKGROUND

### A. Telephone Consumer Protection Act of 1991

2. On December 20, 1991, Congress enacted the TCPA, as codified in section 227 of the Communications Act of 1934, as amended (the Act), in an effort to address a growing number of telephone marketing calls and certain telemarketing practices Congress found to be an invasion of consumer privacy.[5] In relevant part, the TCPA required the Commission to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights"[6] and specifically authorized the Commission to consider "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations."[7] Section 227(a)(3) of the Act expressly exempts from the definition of a telephone solicitation calls made to persons with whom the caller has an "established business relationship."[8] Congress determined that such an exemption was necessary to allow companies to communicate by telephone with their existing customers.[9]

3. On July 3, 2003, the Commission revised the TCPA rules and adopted new rules to provide consumers with several options for avoiding unwanted telephone solicitations.[10] In particular, the Commission established a national do-not-call registry that would be jointly administered by the Federal Trade Commission (FTC) and this Commission.[11] The national registry, which went into effect on October 1, 2003, prohibits, with limited exceptions, the making of any telephone solicitation to a residential subscriber that has registered his or her telephone number on the national do-not-call registry.[12] Consistent with the FTC, the Commission adopted an established business relationship exemption to the prohibition on making telephone solicitations to residential telephone subscribers on the national do-not-call list, but limited the duration of that exemption to 18 months following a purchase or

---

[4] The Commission's rules require that a company specific do-not-call request "be honored for 5 years from the time the request is made." *See* 47 C.F.R. § 64.1200(d)(6).

[5] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), *codified at* 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq*.

[6] 47 U.S.C. § 227(c)(1).

[7] 47 U.S.C. § 227(c)(3).

[8] 47 U.S.C. § 227(a)(3).

[9] *See* H.R. Rep. No. 102-317 at 13-14.

[10] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) (*2003 TCPA Order*). On March 11, 2003, the Do-Not-Call Implementation Act was signed into law, requiring the Commission to issue a final rule in its ongoing TCPA proceeding within 180 days of enactment, and to consult and coordinate with the Federal Trade Commission to "maximize consistency" with the rules promulgated by the FTC. *See* Do-Not-Call Implementation Act, Pub. L. No. 108-10, 117 Stat. 557 (2003), *codified at* 15 U.S.C. § 6101.

[11] *2003 TCPA Order*, 18 FCC Rcd at 14034, para. 28.

[12] 47 C.F.R. § 64.1200(c)(2). *See also Mainstream Marketing Services, Inc. v. Federal Trade Comm'n*, 358 F.3d 1228 (10th Cir. 2004) (upholding the constitutionality of the national do-not-call registry), *cert. denied*, 2004 WL 2050134 (U.S. Oct. 4, 2004) (No. 03-1552).

transaction and three months following an inquiry or application, unless the consumer terminates the EBR by, for example, making a company specific do-not-call request.[13] The national do-not-call registry supplemented existing rules that required entities making telephone solicitations to maintain company specific do-not-call lists.[14]

4. On February 18, 2005, the Commission released a Second Order on Reconsideration addressing certain issues raised in petitions for reconsideration of the *2003 TCPA Order*.[15] In relevant part, the Commission clarified that: (1) the existence of a financial agreement, including bank accounts, loans, insurance policies and mortgages, constitute ongoing business relationships that permit a company to contact consumers for the duration of the financial agreement or contract (and for an additional 18 months following the termination of the financial agreement); and (2) intermediaries, such as insurance agents and mortgage brokers, may call those consumers with whom they have arranged an insurance policy or mortgage for a period of 18 months from the time the transaction is completed, *i.e.*, the date that the broker/agent arranged the mortgage or insurance deal.[16] The Commission found that independent brokers and agents often play an important role in these types of financial transactions and that, in many circumstances, the consumer would expect to receive a call from them within a reasonable period of time after the transaction.[17] The Commission noted, however, that unlike the bank or lender with which a consumer has an ongoing relationship based on an account or loan, the mortgage broker or insurance agent typically is only involved in the original transaction.[18] Therefore, the Commission concluded that to allow a broker or agent to make a telephone solicitation for the duration of a loan or term of the policy based on the origination of the transaction would conflict with the underlying goal of the do-not-call rules to protect consumer privacy rights.[19]

## B. State Farm Petition

5. On May 13, 2005, State Farm sought clarification that State Farm's exclusive agents "are permitted to telemarket to State Farm's customers on State Farm's behalf so long as State Farm otherwise has a valid 'established business relationship' (EBR) with the customer."[20] State Farm indicates that it depends almost entirely on 16,000 independent contractor insurance agents – who have an exclusive agency relationship with State Farm – to both represent the company to consumers and provide service to policyholders.[21] As a result, State Farm contends that its agents are similarly situated to other parties that are permitted by the Commission to make telephone solicitations pursuant to an ongoing EBR between a

---

[13] *2003 TCPA Order*, 18 FCC Rcd at 14078-80, para. 112. *See also* 47 C.F.R. § 64.1200(f)(3).

[14] *See* 47 C.F.R. § 64.1200(d)(6).

[15] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Second Order on Reconsideration, 20 FCC Rcd 3788 (2005) (*Second Order on Reconsideration*).

[16] *Second Order on Reconsideration*, 20 FCC Rcd at 3798, paras. 26-27. These restrictions apply when the agent is not otherwise authorized to make telephone solicitations on behalf of the business entity.

[17] *Second Order on Reconsideration*, 20 FCC Rcd at 3798, para. 27.

[18] *Second Order on Reconsideration*, 20 FCC Rcd at 3798, n.77.

[19] *Second Order on Reconsideration*, 20 FCC Rcd at 3798, para. 27.

[20] State Farm Petition at 1.

[21] State Farm Petition at 2.

consumer and a financial service company.[22]  No opposition was filed to State Farm's petition.[23]

## III.  DISCUSSION

6.    We clarify that State Farm's exclusive agents are permitted to rely on the EBR of State Farm to make telephone solicitations on behalf of State Farm so long as State Farm has a valid EBR with the customer.[24]  State Farm's agents are authorized to perform almost all communications with the customers of State Farm including telemarketing on behalf of State Farm.[25]  As State Farm notes, its agents are responsible for answering policyholders' questions, providing updates to consumers when adjustments in coverage may be appropriate, soliciting applications for coverage, submitting claims, and in some cases, paying claims.[26]  Moreover, State Farm itself conducts no "in-house" telemarketing.[27]  Thus, in contrast to insurance agents or brokers that are involved only in the original transaction, State Farm's exclusive agents perform the same services for State Farm as employees of companies that "in-source" customer service functions.[28]  As discussed in the *Second Order on Reconsideration*, in the case of an insurance policy, the EBR may extend for the duration of the policy and for an additional 18 months following the termination of that policy.[29]  In addition, we note that this clarification is consistent with the Commission's prior conclusion that third party "telemarketers may rely on the seller's EBR to call an individual consumer to market a seller's services and products."[30]

7.    We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call.[31]  In addition, we note that consumers may terminate the EBR for purposes of telemarketing calls at any time by making a company specific do-not-call request.[32]  Once the consumer makes a company specific do-not-call request, whether to the company or third party, the company and its third party telemarketer may not call

---

[22]  State Farm Petition at 2-3.  In addition, State Farm notes that its agents make the same type of customer calls on behalf of State Farm as third-party telemarketing agents hired by financial service companies to make calls under the EBR exception   State Farm Petition at 3.  *See also 2003 TCPA Order*, 18 FCC Rcd at 14083, para. 118.

[23]  *See* Petitions for Clarification of Action in Rulemaking Proceeding, Public Notice, Report No. 2716 (rel. June 8, 2005).

[24]  *See 2003 TCPA Order*, 18 FCC Rcd at 14083, para. 118.

[25]  *See* State Farm Petition at 2.

[26]  State Farm Petition at 2.

[27]  State Farm Petition at 2.

[28]  State Farm Petition at 2-3.

[29]  *Second Order on Reconsideration*, 20 FCC Rcd at 3798, para. 26.

[30]  *2003 TCPA Order*, 18 FCC Rcd at 14083, para. 118.  We also note that nothing we do herein negates the Commission's conclusion in the *Second Order on Reconsideration* that independent agents or brokers involved only in the original transaction are limited to an 18-month period following that transaction during which they may rely upon an EBR to contact consumers on the national do-not-call list.

[31]  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391 at 12397, para. 13 (1995).

[32]  *See* 47 C.F.R. § 64.1200(f)(3)(i).

**Federal Communications Commission**                              **DA 05-2293**

the consumer again on behalf of that company to make a telephone solicitation regardless of whether the consumer continues to do business with the company.[33]

## IV. PROCEDURAL ISSUES

### A. Materials in Accessible Formats

8. To request materials in accessible formats (such as Braille, large print, electronic files, or audio format), send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau at 202-418-0530 (voice), 202-418-0432 (TTY). This Declaratory Ruling can also be downloaded in Word and Portable Document Format at http://www.fcc.gov/cgb/policy.

### B. Ordering Clauses

9. Accordingly, IT IS ORDERED that, pursuant to Sections 1-4, 227, and 303(r) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227 and 303(r); and Section 64.1200 of the Commission's rules, 47 C.F.R. § 64.1200, this Declaratory Ruling in CG Docket No. 02-278 IS ADOPTED as set forth herein.

10. IT IS FURTHER ORDERED, that the Request for Clarification and Declaratory Ruling filed by State Farm Mutual Automobile Insurance Company in CG Docket 02-278 on May 13, 2005, IS GRANTED to the extent stated herein.


FEDERAL COMMUNICATIONS COMMISSION


Monica Desai
Acting Chief
Consumer & Governmental Affairs Bureau

---

[33] *See 2003 TCPA Order*, 18 FCC Rcd at 14086-87, para. 124.

# Exhibit 3

# State Farm Insurance Companies



May 18, 2010

*Received & Inspected*

*MAY 19 2010*

The Commissioner's Secretary
Office of the Secretary
Federal Communications Commission
9300 East Hampton Drive
Capital Heights, MD 20743

*FCC Mail Room*

One State Farm Plaza
Bloomington, Illinois 61710-0001

James R. Tuite
Associate General Counsel
Phone: (309) 766-2127
Fax: (309) 766-4909

RE: CG Docket No. 02–278, FCC Number 10–18 (Resending to add docket & FCC Numbers)

Dear Commissioner's Secretary,

State Farm Mutual Automobile Insurance Company ("State Farm"), on its own behalf, and on behalf of its affiliates accepts the invitation of the Federal Communications Commission to comment on proposed revisions to its rules under the Telephone Consumer Protection Act (TCPA). We understand the intent of the Commission in its invitation for comment is to propose revisions which would harmonize its rules with the Federal Trade Commission's (FTC) recently amended Telemarketing Sales Rules.

While there may be debate about the statutory purpose for TSR and TCPA rules, with the TCPA having two distinct provisions, one restricting only prerecorded telemarketing calls to residential lines, and another which addresses all prerecorded or autodialed calls to emergency telephone lines, healthcare facilities, or wireless lines absent prior express consent (47 U.S.C. Sec. 227(b)(1) (A) and (B), we would ask whether this goal of consistency is desirable, and whether it leads to some external or unintended consequences.

Frankly, it is very difficult for a business to determine whether the customer's normal means of telecommunication is a residential line or a mobile or cell phone. So the distinctions drawn between residential and cell phone tend to blur from a business and customer relationship such that the business will tend to adopt the most restrictive standard for communications.

Whereas auto-dialers and prerecorded calls especially for marketing purposes may be deemed intrusive and adding unintended user costs for cell phones, that perception State Farm submits may be changing with respect to non-marketing and service orientated calls.

Autodialed and prerecorded calls or even text alerts provide practical service to State Farm insurance and bank customers.

Customers may be alerted by their local State Farm agent that their car policy is about to lapse for non-payment of premium and that the customers in the household driving could be severally penalized under state financial responsibility laws for driving without required auto insurance.

Customers may be similarly alerted about credit card balances, overdrafts or any past due account in order to avoid additional fees.

More practically, the autodialing permits claim representatives to communicate at time of loss after a major storm or other loss event with customers and claimants. It enables routine service information

1

No. of Copies rec'd _0+4_
List ABCDE

about an auto or home claim to be shared so that scheduling appointments and the ultimate resolution of claims can be better addressed from the customer's perspective and need.

Pre-recorded messages or auto-dialers can provide a range of messages to resolve customer initiated service calls in addition to State Farm agent and customer call center support.

Moreover, the Gramm Leach Bliley Act, HITECH and some 45 state breach laws require financial institutions to establish response and customer notification programs following events in which unauthorized access to customer information has taken place. Autodialed and prerecorded messages may be the fastest and most efficient way of notifying customers.

Certainly, the prerecorded or autodialed call for telemarketing purposes is an intrusion as to consumers, but to deny such access to customers to critical notice and valuable information would be to disadvantage the consumer and customer.

For example, this past year, which was a record winter, State Farm initiated pre-recorded calls to customers advising them how to protect their homes from extreme changes in temperature by simple steps such as disconnecting exterior garden hoses or heat wrapping exposed pipes. State Farm did not receive complaints about these calls. Our agents reported our customers were most appreciative of the alerts and State Farm reduced winter loss as to freezing pipes and maintained cost savings for it customers.

Conclusion

The impact of these proposed harmonizing amendments goes beyond the scope of the FTC Telephone Sales Rules restricting marketing and curtails service calls State Farm believes are necessary in addressing insurance risk and financial product risk and ultimately benefiting the customer. The public preference for cell phone use and the ability to take the land line number and associate it with the cell phone, makes the rule a one level standard. We believe the rule as proposed would increase costs for consumers and deny services our customers need and expect from State Farm and their State Farm agent.

We appreciate this opportunity to share our comments and concerns with the proposed rule.


Very Truly Yours,

James R. Tuite
Associate General Counsel

JRT/wrc