**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER SMITH on behalf of herself and others similarly situated, | ) ) | 1:13-cv-2018 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY. | ) ) | JURY DEMANDED |
| Defendants. | ) | |

**AMENDED CLASS ACTION COMPLAINT**

1.      Aimed at protecting consumer privacy, the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") prohibits the use of "automatic telephone dialing systems" to call cellular telephones.  The TCPA also prohibits use of any artificial or prerecorded voice.

2.      Plaintiff Jennifer Smith ("Plaintiff") received one or more unsolicited, unattended, autodialed prerecorded voice calls on her cellular telephone in January 2013, which was placed on behalf of defendant State Farm Mutual Automobile Insurance Company.  These calls were made as part of a robodialing campaign, the purpose of which was to advertise State Farm's products and/or services to a large number of potential customers in a short period of time.

3.      As explained herein, State Farm is well aware of the TCPA's prohibitions against autodialed and prerecorded voice calls to cell phones, but systematically uses these devices as part of calling campaigns to gain customers, in spite of this knowledge.

4.      Plaintiff thus brings this action against State Farm under the TCPA on behalf of herself and others similarly situated. Plaintiff seeks statutory damages for herself and the class and an injunction prohibiting State Farm from making impermissible robocalls in the future.

## JURISDICTION AND VENUE

5.     The Court has federal question subject matter jurisdiction over these TCPA claims. Mims v. Arrow Financial Services, LLC, 132 S.Ct. 740 (2012).

6.     Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

7.     Plaintiff is an individual who resides in this District, whose cell phone number is on the National Do Not Call Registry.

8.     State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois corporation that has its headquarters in Bloomington, Illinois.

## THE LEGAL BASIS OF THE CLAIMS AND STATE FARM'S ACKNOWLEDGEMENT OF TCPA LIABILITY FOR THE ACTIONS OF ITS TELEMARKETERS

9.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. § 2(10) and (12); Mims v. Arrow Financial Services, Inc., 132 S.Ct. 740 (Jan. 18, 2012).

10.     Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

11.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

12.     In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability ***in the context of a Robocall*** sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)) .

13.     In May of 2013, the FCC reinforced this issue.  *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* n.107.

14. The 2013 FCC Order further explained:

> To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent

authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

[ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.

*Id.* at ¶¶ 46-47). A copy of this Order is attached as <u>Exhibit 1</u>.

15.    Accordingly, it is undeniably clear, that an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

4

16.     State Farm is legally responsible to ensure that such calls complied with applicable telemarketing law, even if State Farm employees did not physically dial the calls.

17.     Indeed, through limited third party discovery, it has been established that the entity that placed these calls worked for a number of exclusive State Farm insurance agents.

18.     State Farm is well aware of its liability for calls placed through its network of exclusive agents, as it previously petitioned the Federal Communications Commission for an exemption for calls placed by its agents pursuant to the FCC's "Established Business Relationship" exemption for call to persons on the DNC list.  See *State Farm Mutual Automobile Insurance Company's Request for Clarification & Declaratory Ruling*, a copy of which is attached hereto as Exhibit 2.

19.     State Farm is intimately involved with recruitment of its agents, and exercises substantial control over its agents' marketing activities, including their telemarketing.

20.     In its Request for Clarification & Declaratory Ruling, State Farm stated that its agents have an exclusive relationship with State Farm, and acknowledged that those "[a]gents solicit applications for coverage." *Id.*

21.     State Farm also stated that the entities it uses for telemarketing are "required by agreement to perform those functions and are compensated on that basis" *Id.*

22.     State Farm further stated that "State Farm itself conducts no telemarketing and delegates almost all policyholder communications to local State Farm agents." *Id.*

23.     State Farm explained, "[the agents] perform the same services for State Farm as employees do for companies that happen to in-source, rather than out-source, customer service functions." *Id.*

24.     In this official filing, State Farm additionally acknowledged that "The FCC already has made clear that, with respect to such telemarketing, an insurance company is

responsible for its agents' compliance with applicable telemarketing regulations." Adding in a

footnote, "The FCC has stated that a company on whose behalf a telemarketing call is made

"bears ultimate responsibility for any violations, and call "placed by an agent of the [company]

are treated as if the [company] itself placed the call." *In the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and

order, 10 FCC Rcd 12931 at ¶ 13 (Aug. 7, 1995).

25.     In response to State Farm's Petition, the FCC reiterated its warning about the

scope of State Farm's liability for calls made by its exclusive agents: "We take this opportunity

to reiterate that a company on whose behalf a telephone solicitation is made bears the ultimate

responsibility for any violation of our telemarketing rules and calls placed by a third party on

behalf of the company are treated as if the company itself placed the call." FCC Declaratory

Ruling, CG Docket No, 02-278 (DA 05-2293)(August 17, 2005).

26.     As recently held by the FCC, such authorization given by State Farm to its

exclusive agents to have access to information which is otherwise within the exclusive control of

State Farm, as well as permitting State Farm agents to use State Farm's trade name and

trademark are all evidence of an agency relationship. *See In re Joint Pet. Filed by Dish Network,*

*LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶ 46 (FCC May 9, 2013).

27.     As recently as May of 2010, State Farm has also petitioned the FCC to allow it to

make autodialed and pre-recorded calls to the cell phones of individuals nationwide. A copy of

State Farm's May 2010 letter to the FCC is attached hereto as Exhibit 3.

28.     In this letter, State Farm acknowledged the intrusive nature of the solicitations the

Plaintiff is basing her Complaint on, "Certainly, the prerecorded or autodialed call for

telemarketing purposes is an intrusion as to consumers". *Id.*

29.     In fact, in the 2013 FCC Ruling Order, the FCC made clear that State Farm was aware of this legal responsibility:

> Similarly, in a 2005 order declaring that State Farm's exclusive independent insurance agents may make lawful telemarketing calls on behalf of State Farm so long as State Farm has a valid "established business relationship" with the customer, we "reiterate[d] that a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call.

*Id.* at ¶ 38.

## FACTS AS TO PLAINTIFF

30.     State Farm engages in marketing through the use of telephones, both directly and through use of "lead generators," as well as third party telemarketers, as the Plaintiff has outlined above.

31.     In January 2013 and before, State Farm's policy, practice or procedure permitted it to accept new customers that were originally obtained through the placement of telephone calls.

32.     On January 25, 2013, State Farm, through one of its exclusive agents that had engaged a lead generator Variable Marketing, LLC ("Variable Marketing"), called plaintiff's cellular telephone using an automatic telephone dialing system.

33.     The caller ID for the call was 773-897-6086.

34.     On January 25, 2013, the caller ID 773-897-6086 was registered to VoIP Innovations of Pennsylvania.

35.     VoIP Innovations hosts a Voice over Internet Protocol ("VoIP") network, which is a technology that allows its customers (and its customer's clients) to make telephone calls over the Internet using a variety of caller IDs that it offers as part of its service.

36.     From November 30, 2012 through February 22, 2013 (including January 25, 2013), VoIP Innovations assigned the 773-897-6086 number to Ytel, Inc. ("YTel") of Irvine, CA. *See* Subpoena Response of VoIP Innovations attached hereto as <u>Exhibit 4</u>.

37.     Ytel provides voice broadcasting services to clients.  Ytel's voice broadcasting services allow its customers to use an automated telephone dialing system, capable of dialing thousands of telephone numbers simultaneously, and play a pre-recorded message when an individual answers the telephone.

38.     On January 25, 2013, the Plaintiff was one of the recipients of a call made on the Ytel system.

39.     Ytel's system is operated by their clients directly, in this instance Variable Marketing.

40.     On January 25, 2013, the user of the caller ID 773-897-6086 was Variable Marketing.  *See* <u>Exhibit 5</u>, Selection of Master Services Agreement between Ytel and Variable Marketing.

41.     Variable Marketing made the telephone call to the Plaintiff.

42.     When the telephone call was answered, a pre-recorded message played.  Plaintiff recognized the call as using an automated telephone dialing system because there was a significant delay after Plaintiff answered before the recorded message began.  In addition, the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

43.     The use of a call that delivers an automated prerecorded message is also indicative of the use of automated equipment during the call, and particularly the use on an automated telephone dialing system to dial such a call.

44.     It is wholly inconsistent with common teleservices practices, and with common sense, to make a call of an automated nature by delivering a prerecorded message unless an automated device also dialed the call.

45.     Automated dialing systems such as predictive dialers and prerecorded message delivery are higher efficiency calling mechanisms than the use of live persons and manual dialing.  This is particularly true in practice of "lead generation" where the automated systems are used as a screening mechanism to contact large numbers of consumers, and then only pass along those consumers who demonstrate interest (a "lead") to the next level where they are permitted to talk to a live person.

46.     The automated telephone dialing system used by Variable Marketing was one or more devices that had the capacity to dial numbers from a list without human intervention, and when paired with certain software, had the capacity to store or produce numbers produced by a random or sequential number generator, and dial those numbers at random, in sequential order, or from a database of numbers.

47.     The call from 773-897-6086 included a prerecorded voice that indicated that Plaintiff could save on her auto insurance. The recording indicated that plaintiff could press 1 for more information and press 3 to be removed from the telemarketing list. Plaintiff hung up the phone.

48.     Plaintiff called 773-897-6086 later that day to inquire about the call and the caller. After discussing car insurance for a few moments with the operator, the operator told Plaintiff that the call had been placed in order to sell State Farm automobile insurance, and that the call would be automatically transferred to another State Farm salesperson once Plaintiff provided more personal information, which Plaintiff did not do.

49.     At the time of the pre-recorded phone call sent to the Plaintiff, Variable Marketing was promoting State Farm products and/or services.

50.     The call to Plaintiff's cellular telephone was made as part of a telemarketing campaign whereby thousands of telephone numbers were automatically dialed by a computer, and a pre-recorded message was automatically played.  Indeed, the limited discovery obtained to date demonstrates that there were over 1,000 telephone calls on January 25, 2013 using the Ytel voice broadcasting system and the caller ID 773-897-6086 made by Variable Marketing.  *See* Exhibit 6, second subpoena response from VoIP Innovations.

51.     Variable Marketing has objected to a subpoena issued to it for the identity of the exclusive State Farm agents who hired it to conduct telemarketing promoting State Farm insurance without a protective order being entered, so at this point Plaintiff does not have the identity of the State Farm agent or agents who retained Variable Marketing to place the calls. The identity of those agents is within the possession of both Variable Marketing, State Farm's exclusive agents and, upon information and belief, State Farm itself. Furthermore, such information is available to State Farm itself which has the ability to ask and/or compel its exclusive agents to divulge such information.[1]

52.     Consistent with the telephone call to the Plaintiff, these calls were made to promote State Farm goods and services.

53.     Plaintiff is not a State Farm customer, and has never provided her cell phone number to State Farm.  Plaintiff has never provided her cell phone number to any other entity whereby State Farm became privileged to make telemarketing calls to plaintiff's cell phone.

---

[1] State Farm requested that the Court prohibit first-party discovery, including discovery relating to which of its agents ordered that the calls be made on its behalf, until a ruling on a Fed.R.Civ.P. 12(b)(6) motion was reached. The Court granted this request over Plaintiff's objection.

54.     The claims of the Plaintiff, and the class of persons she seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

## VARIABLE MARKETING AND ITS RELATIONSHIP WITH EXCLUSIVE STATE FARM AGENTS

55.     Variable Marketing, which operates the website

http://instantinsurancemarketing.com/, offers a service where it purports to deliver live insurance

purchasers directly to State Farm insurance agents' phones.

56.     Variable Marketing worked with various State Farm agents, who in turn worked

with State Farm, to design parameters for potential customers that they would call using a pre-

recorded message.

57.     Variable Marketing calls potential customers using pre-recorded messages and

conducts an interview with them using the aforementioned parameters.

58.     After the potential prospect is pre-qualified, all of the information obtained by

Variable Marketing is sent to the State Farm exclusive agent.  That information is used to assist

the State Farm agent in allowing them to complete the sale for State Farm.

59.     The purpose of sharing this information, which is shared instantly over the

internet, is to limit the time spent on the telephone by the State Farm exclusive insurance agent

Variable Marketing is working for.

60.     The potential customers contacted by Variable Marketing are exclusive with

respect to each State Farm campaign, and as such, are not contacted regarding offers for

companies other than State Farm.

61.     Variable Marketing was retained by a number of exclusive State Farm agents to

implement their system, and has shared that information over social media platforms, including

Twitter.

62.     Variable Marketing maintains a Twitter account, @instantins, which can be

located at www.twitter.com/instantins.

63.     Variable Marketing sent the following messages over Twitter regarding marketing they did for State Farm agents:

    a.   "I've used every resource available to insurance agents and your office is by far the most valuable." –State Farm Agent Doug B.

    b.   "@StateFarm results are in! Verified by 20 SF offices, 40% conversion!  With an additional 10% on the follow up! #SUPERAGENTS"

    c.   "@StateFarm Blake, we are doing something so valuable for SF one of your agents wrote us a $20k check after using us for a month."

    d.   "Lisa, a State Farm agent in Texas uses our team to solve her headaches – no more cold calls, no more prospecting, just a buyer on the line."

    e.   "#JakeFromStateFarm – we have prequalified individuals who need to speak with an agent about a new policy! We are in CA and can't service."

    f.   "@StateFarm, you need local preferred drivers to be competitive.   How about 10 calls transferred directly to your office line 10am-2pm tmrw?"

*See* https://twitter.com/InstantIns  (Last visited May 21, 2013). Upon information and belief, the above statements made by Variable Marketing are true.

64.     Upon information and belief, based upon counsel's investigation and conversations with third parties and counsel, the State Farm agents that hired Variable Marketing to make the calls that are the subject of this case have had a longstanding, multi-year, relationship with State Farm.

65.     State Farm willfully and/or knowingly accepted business derived from the telemarketing calls that its State Farm agents requested that Variable make.

### COUNT I – TCPA

66.     Plaintiff incorporates all previous paragraphs of this complaint.

67.     It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system. The TCPA also specifically prohibits the use of an unsolicited pre-recorded phone message to advertise the sale of goods and services.  47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200.

68.     State Farm, or some person on its behalf, initiated a call to plaintiff and others' cellular telephones, using an automatic telephone dialing system and/or an artificial or prerecorded voice.

69.     Plaintiff and the class are entitled to have their rights, status and legal relations under the TCPA relating to defendant's telemarketing to cell phones using an automatic dialing system and artificial or prerecorded voice.

70.     The defendant's calls were negligent, or alternatively, they were willful.  47 U.S.C. §312(f)(1).

### Class Allegations

71.     Plaintiff brings Count I on behalf of a class, which consists of:

All persons nationwide who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention and/or an artificial or prerecorded voice, where the called party had not previously provided consent to receive such call, where any call was made between and including a date four years prior to the filing of this action, ongoing.

72.     Plaintiff is a member of this class.

73.     The class is so numerous that joinder is impracticable. Upon information and belief, as well as common experience of the size of automated dialing campaigns, there are more than one thousand persons in the class.

74.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

14

      a.      Whether the calls that are the subject of this lawsuit were made using an "automatic telephone dialing system" as proscribed by the TCPA and applicable FCC regulations and orders;

      b.      Whether the messages played during the calls that are the subject of this lawsuit constituted an "artificial or prerecorded voice" as proscribed by the TCPA and applicable FCC regulations and orders; and

      c.      Damages, including whether the violation was willful or knowing.

75.      Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

76.      Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

77.      No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

78.      Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

79.     The identity of the class is likely readily identifiable from defendant's records, or the records of other person(s) involved with making the calls.

80.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and the class and against defendants that provides the following relief:

a.      Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b.      A permanent injunction prohibiting defendant from violating the TCPA in the future through calling cell phones using an automatic telephone dialing system and/or a prerecorded voice message;

c.      A declaration that defendant used an automatic telephone dialing system and artificial or prerecorded voice, and violated the TCPA in using such for calls to the cell phones of plaintiff and the class; and

d.      Any other relief the Court finds just and proper.

Respectfully submitted,

/s/ Edward A. Broderick
Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
*Pro Hac Vice*

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
*Pro Hac Vice*

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/ Edward A. Broderick
Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
*Pro Hac Vice*