**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER SMITH on behalf of herself and others similarly situated, | ) ) | 1:13-cv-2018 |
| Plaintiff, | ) ) | Judge St. Eve |
| v. | ) ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY. | ) ) ) | JURY DEMANDED |
| Defendant. | ) | |

**<u>SECOND AMENDED CLASS ACTION COMPLAINT</u>**

1.      Defendant State Farm Mutual Automobile Insurance Company ("State Farm") requires its insurance agents to represent the company to consumers, including non-customers.

2.      This requirement is not secret; quite the opposite: State Farm expressly, and publically, authorizes is insurance agents to solicit new State Farm customers through the use of telephones.

3.      For example, State Farm filed a petition with the Federal Communications Commission in 2005, in which it announced to the public that its agents perform telemarketing on its behalf.

4.      As part of its requirement that agents solicit new customers, State Farm exercises substantial control over telemarketing calls made by its agents on its behalf. For example, State Farm insists upon preapproving the script for advertising that even indirectly refers to its name, and maintains the contractual right to direct what insurance applications agents are permitted to submit for consideration, including by market area, policy type or any other means unilaterally determined by State Farm, including marketing technique.

5.      Pursuant to the above policies, practices and procedures, more than forty State Farm agents from Illinois, hired telemarketing company Variable Marketing, LLC ("Variable") in 2012 and 2013, to make autodialed and prerecorded calls to non-customers, for the purpose of selling State Farm insurance policies. Upon information and belief, dozens of other authorized State Farm agents around the country similarly hired Variable over the past four years.

6.      Each of the State Farm agents separately warranted to Variable that they had State Farm's permission to advertise and telemarket on State Farm's behalf.

7.      State Farm has absolute control over whether, and under what circumstances, it will issue an insurance quote to a prospective customer.

8.      State Farm has known at least since around mid-April 2013 that Variable was making autodialed and prerecorded telemarketing calls on its behalf, and has had multiple contacts with Variable as early as February of 2013. There was a discussion of Variable's involvement in these calls in open court at the status conference in this case on May 2, 2013.

9.      Upon information and belief, State Farm's knowledge regarding Variable's calls preceded that date, and this lawsuit.

10.     State Farm has also taken little or no action to curb the illegal telemarketing that is the subject of this case, and certainly has taken insufficient steps, as the calls continued in spite of the pendency of this case.

11.     Indeed, despite State Farm's knowledge of Variable's calls, State Farm has continued to issue insurance quotes during, and arising out of, telephone calls that began as prerecorded and autodialed telemarketing calls placed by Variable on its behalf.

12.     On August 12, 2013, Variable made an autodialed telephone call to plaintiff's cellular telephone, in an attempt to sell State Farm insurance.

13.     After a prerecorded message, the call was transferred to a live Variable representative and then forwarded on to a Chicago-area authorized State Farm insurance agent.

14.     During the phone call, the insurance agent took Ms. Smith's demographic and other information, and entered it directly into State Farm's computer system.

15.     Either during the phone call, or a few minutes after this telephone call (but arising from the call), defendant State Farm Automobile Insurance Company issued a quotation for Auto insurance to Ms. Smith.

16.     Defendant State Farm then sent at least two emails directly to Ms. Smith, along with a quotation for homeowners insurance. One such email is attached as Exhibit A.

17.     State Farm knew or should have known that the quotation it issued arose from an autodialed and prerecorded call made on its behalf, through Variable.

## JURISDICTION AND VENUE

18.     The Court has federal question subject matter jurisdiction over these claims because they arise from violation of federal law. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012).

19.     Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

20.     Plaintiff is an individual who resides in this District, whose cell phone number has been on the National Do Not Call Registry since approximately November 25, 2010.

21.     State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois corporation that has its headquarters in Bloomington, Illinois.

## FACTS AS TO PLAINTIFF

3

22.     Plaintiff is not a State Farm customer, and has never provided her cell phone number to State Farm.  Plaintiff has never provided her cell phone number to any other entity whereby State Farm became privileged to make telemarketing calls to plaintiff's cell phone.

23.     On January 25, 2013, plaintiff received a telephone call from caller ID 773-897-6086.

24.     When plaintiff answered the call, a prerecorded message played that told plaintiff that she could save on her auto insurance. Plaintiff hung up the phone.

25.     Plaintiff recognized the call as using an automated telephone dialing system because there was a significant delay after Plaintiff answered before the recorded message began. In addition, the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

26.     Plaintiff called 773-897-6086 later that day in an effort to identify the entities responsible for the illegal telemarketing call. The operator who answered told plaintiff that the call had been placed in order to sell State Farm automobile insurance, and that the call would be automatically transferred to another State Farm salesperson once plaintiff provided more personal information, which plaintiff did not do.

27.     Variable Marketing has confirmed through third party discovery that the January 25, 2013, call was made for purposes of attempting to sell State Farm insurance. Variable has also identified the automated telephone dialing system used to make the calls, YTel.

28.     On August 12, 2013, plaintiff received another call from Variable, similar to the one she received on January 25, 2013.

29.     The August 12, 2013 call was also made by Variable, with the purpose of attempting to sell State Farm insurance.

4

30.     Plaintiff recognized the call as using an automated telephone dialing system because there was a significant delay after Plaintiff answered before the recorded message began. In addition, the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

31.     Plaintiff responded various questions posed by the Variable operator.

32.     Variable then performed a "warm lead" transfer of the call to a Chicago-area authorized State Farm insurance agent's office.

33.     In addition to transferring the telephone call, Variable transferred the demographic and insurance information it had collected from plaintiff, to the State Farm agent.

34.     The agent was David Olchowka. State Farm holds Mr. Olchowka, and its other agents, out as being authorized to speak on its behalf. http://www.statefarm.com/agent/US/IL/Elk-Grove-Village/David-Olchowka-80HHV474000.

35.     Mr. Olchowka's office used the information received from Variable, and took additional information from plaintiff, and entered it directly into State Farm's computer system.

36.     Either during the call, or within a few minutes after, State Farm issued a quotation for automobile and homeowner's insurance to plaintiff.

37.     State Farm emailed the quote directly to plaintiff. This quote from the defendant was precipitated by Variable's call.

38.     In its September 24, 2013 Order dismissing the Amended Complaint without prejudice and granting leave to file a Second Amended Complaint, this Court indicated that the plaintiff must plead more facts regarding why State Farm may be liable for the calls challenged in this case. Plaintiff does so below. The below facts support the following theories[1]:

---

[1] Of course, these facts were developed without the benefit of first-party discovery, and some documents subpoenaed from third party agents were not produced on the theory that State Farm

    a.   Direct Liability;

    b.   Impermissible Delegation of Liability;

    c.   Formal Agency / Actual Authority;

    d.   Apparent Authority;

    e.   Ratification.

**<u>Direct Liability</u>**

39.    State Farm actively participated in the August 12, 2013, call to plaintiff by issuing a quote for insurance, during and/or arising directly from the call.

40.    Because State Farm directly and actively participated in the call, and acted in concert with its agents and Variable to telemarket its products and services, no vicarious liability theory is necessary. State Farm may be held directly liable for the call.

41.    Furthermore, State Farm employs certain persons to advise its agents as to how to better solicit potential customers. One such person is Kathy Riley, in the Los Angeles, California area.

42.    Ms. Riley is a "Sales Leader;" a direct employee of State Farm. Ms. Riley's responsibilities at State Farm are to consult with State Farm agents on best practices to grow their agencies, recruit new agents for opportunities in an assigned market area and help with developing agents' skill level on sales systems around State Farm's vast portfolio of products.

43.    Ms. Riley hired Variable on or about July 13, 2013, to make telemarketing calls on behalf of State Farm. Ms. Riley again hired Variable to make telemarketing calls on behalf of State Farm on August 12, 2013; the same date plaintiff received her second call.

---

"owns" those documents, instead of the agents. More facts will become apparent through first-party discovery. Also, some facts in this complaint support multiple theories of liability.

44.     The IP address for the computers Ms. Riley used to hire Variable and sign her contract with Variable are assigned to defendant.

45.     Upon information and belief, including by virtue of her position of employment with defendant, Ms. Riley was authorized to hire Variable on behalf of State Farm.

46.     Upon information and belief, based upon conversations with Variable's lawyers, either Ms. Riley or another authorized State Farm employee made at least one communication to several State Farm agents, suggesting that telemarketing through Variable or its principal Jeff Schaffer, was a good way to obtain new State Farm customers.

**Impermissible Delegation of Liability**

47.     The Restatement (Third) of Agency § 7.06 prevents persons from avoiding liability by hiring third parties to do the "dirty work" for them. That section states:

**Failure in Performance of Principal's Duty of Protection**

> A principal required by contract or otherwise by law to protect another cannot avoid liability by delegating performance of the duty, whether or not the delegate is an agent.

48.     The Restatement (Third) of Agency then refers to the Restatement (Second) of Torts, §§ 416 to 429, as examples of situations where a principal cannot delegate away liability.

49.     Included in the duty to "protect another" arises where the principal knows or should know that the work its contractors are hired to do will likely involve nuisance. The Restatement (Second) of Torts § 427B includes states the following:

**Work Likely to Involve Trespass or Nuisance**

> One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another or the creation of a public or a private nuisance, is subject to liability for harm resulting to others from such trespass or nuisance.

50.     These sections of the Restatements (Third) of Agency and (Second) of Torts are applicable here.

51.     State Farm owed plaintiff and the class a non-delegable duty to use reasonable care as to marketing of its products and services; specifically as to telemarketing.

52.     As demonstrated in its 2005 submission to the FCC, State Farm knew about the TCPA's prohibitions as to telemarketing, and endorsed the use of telemarketing as part of how its products and services are usually marketed.

53.     Nuisance, along with invasion of privacy, are the wrongs that the TCPA was enacted to prevent: In passing the TCPA, Congress specifically found that "Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."  Pub.L. 102–243, § 2, ¶¶ 5–6, 9–10, 13–14, 105 Stat 2394 (1991).

54.     State Farm breached this non-delegable duty as to plaintiff and the class through permitting the calls that are the subject of this case to occur, and continue, despite its knowledge of such. Plaintiff and the class did not agree to any delegation by State Farm of this duty.

55.     The Federal Communication Commission concurs that a seller such as State Farm may not avoid liability by outsourcing telemarketing:

> allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶ 37

(FCC May 9, 2013) (internal citations omitted).

**Formal Agency / Actual Authority**

56.     The purpose of State Farm agents is to serve State Farm by soliciting applications

for insurance from consumers on behalf of State Farm.

57.     In furtherance of that goal, State Farm agents were, and are, authorized to hire

third parties, including Variable, to perform telemarketing.

58.     Indeed, a State Farm employee suggested to several State Farm agents that it

would be a good idea to call Variable Marketing owner Jeffrey Schaffer to help advertise the

State Farm product.

59.     State Farm maintains interim control over its agents' actions, both as to

telemarketing and other activities.

60.     For example, State Farm directs the content of its agents' advertising. All

advertising that directly or indirectly identifies State Farm, such as call scripts, must be approved

prior to use by its agents.

61.     Similarly, State Farm sometimes even helps pay for its agents advertising, but

retains absolute and unilateral control over how this happens.

62.     State Farm also issues to its agents manuals, forms, records, computer and

electronic files, equipment and other materials, supplies and services, which agents are expected

and directed to use and follow.

63.     However, although State Farm requires use of these materials and information, it

maintains strict controls over the information's use and dissemination. State Farm even retains

ownership of these materials.

64.     State Farm directs the geographical area that its agents may take credit, and earn fees, for.

65.     Indeed, State Farm specifically retains the right to place whatever limitations it pleases upon what applications for insurance its agents are permitted to submit to State Farm.

66.     At all relevant times, State Farm had the interim right to instruct its agents not to submit applications for insurance that were obtained through telemarketing.

67.     In other words, State Farm had the right to instruct its agents to use Variable Marketing, or not to use Variable Marketing.

68.     Upon information and belief, and based upon conversations with Variable's lawyers, in around August or September 2013, State Farm contacted certain agents and asked them to stop using Variable to telemarket.

69.     Upon information and belief, based upon communications with Variable's lawyers, the agents that State Farm contacted complied with this request and fired Variable.

70.     Because of the above facts, and additional facts that plaintiff may learn through discovery, Variable Marketing was an authorized subagent of State Farm when it made the calls to plaintiff and the class, and State Farm is liable for such calls.

71.     In the alternative, because of the above facts, and additional facts that plaintiff may learn through discovery, Variable Marketing was an authorized co-agent of State Farm when it made the calls to plaintiff and the class, and is liable for such calls.

72.     By orchestrating the termination of Variable, State Farm evidenced its ability to control its sub-agent.

**Apparent Agency**

73.     In addition to the actual authority State Farm gives its agents substantial power to affect its legal relations with third parties, including Variable and consumers generally.

74.     State Farm cloaked its agents with apparent authority to enter into advertising arrangements on its behalf, including lead generation telemarketing through Variable.

75.     State Farm filed a formal petition with the Federal Communications Commission in 2005 on behalf of its agents, asking for a declaratory ruling under the TCPA.

76.     The petition asked that the Commission issue a ruling that State Farm could "graft" its Existing Business Relationship exemption to the National Do Not Call Registry prohibitions, so as to permit its agents to make telemarketing calls, just like State Farm could. State Farm's petition was granted. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of State Farm for Clarification and Declaratory Ruling,* 20 FCC Rcd. 13664, 13666-13668 (FCC 2005).

77.     The FCC, however, explicitly warned State Farm that State Farm's agents would otherwise[2] have to comply with the TCPA, and that State Farm would be liable if its agents engaged in telemarketing in violation of the TCPA:

> We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the ultimate responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of the company are treated as if the company itself placed the call.

*Id.*

78.     The significance of the petition, and the ruling, was that State Farm placed the public on notice that its agents would be making calls on its behalf, and that State Farm agents would be treated under the TCPA just as if State Farm itself would be if it were making the calls itself.

---

[2] The EBR exemption does not allow a telemarketer to contact a consumer on their cell phone via auto-dialer; it does not allow a telemarketer to contact a consumer on their cell phone via pre-recorded message; it does not permit a telemarketer to contact a consumer whose phone number is listed on the DNC Registry.

79.     In other words, State Farm cloaked its agents in apparent authority specifically as to legal relations between its agents and the public, and to hire third parties such as Variable to perform telemarketing, sufficient to support vicarious liability  pursuant to the TCPA.

80.     Indeed, State Farm agents understand that they are permitted to enter into telemarketing contracts on behalf of State Farm.

81.     Variable Marketing's standard contract, which was signed by more than forty Illinois State Farm agents in the past eighteen months, warrants that the agents have authority to telemarket on behalf of State Farm.

82.     Based upon this warranty, and the FCC petition and declaratory ruling, Variable Marketing reasonably believed that it had authority to make telemarketing calls on behalf of State Farm.

83.     Further buttressing Variable's reasonable belief that State Farm's agents had authority to hire it on behalf of State Farm is the fact that State Farm agents continued to hire it to make prerecorded telemarketing calls, even after this case had been pending for several months. As late as August 2013, State Farm agents were signing contracts warranting to Variable that they had such authority.

84.     Similarly, Variable was reasonable in believing that the dozens of State Farm agents it worked with had authority to bind State Farm because Variable knew that its calls were resulting in actual quotes for, and sales of, State Farm insurance.

85.     These quotes and sales were being performed by defendant itself.

**Ratification**

86.     State Farm has also repeatedly ratified assent to the telemarketing scheme that led to this lawsuit, including Variable's prerecorded and autodialed calls.

87.     Six months after it had been sued by plaintiff, State Farm issued a formal quotation for insurance to both plaintiff and other consumers, arising directly from contact initiated through Variable calls.

88.     In doing so, State Farm manifested its assent to the public, Variable and its agents, that it is a knowing participant in Variable and its agents' telemarketing complained of herein.

89.     In participating in these calls, State Farm manifested an intent to accept the benefit of Variable's calling campaigns; including calls that were made by Variable on its behalf but that did not result in an insurance quote.[3]

90.     Even if State Farm did not realize that specific insurance quotes were generated through Variable, State Farm made a conscious choice to issue quotes for insurance without adequate knowledge of the source of the quotes.

91.     Because it accepted the calls' benefits, State Farm cannot avoid the burden associated with such.

92.     The FCC has recognized that vicarious liability can arise out of ratification:

Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position."*Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation."*Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others."*Id.* In

---

[3] It is the purpose of the call that is relevant for TCPA purposes, rather than what is actually said or how far into the telemarketing script the caller goes. *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012), quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14098 ¶141 136, 2003 WL 21517853 (F.C.C. July 3, 2003).

such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 *16, ¶ 34, fn 102.

93.     In its FCC petition, State Farm asked for permission for its agents to receive the benefit of State Farm's "Existing Business Relationship" with existing customers.

94.     State Farm asked for this permission because "Existing Business Relationship" is an affirmative defense to certain TCPA claims.

95.     In doing so, State Farm ratified its own liability for TCPA violations arising out of calls where any Existing Business Relationship might be at issue, such as with calls at issue in this case.

96.     In other words, it would be inequitable for State Farm agents to use State Farm's EBR as a defense, but for State Farm not to be liable for calls that run afoul of that defense.

97.     The benefits of the relationship State Farm requested from the FCC must be accompanied by the burden.[4]

### COUNT I – TCPA

98.     Plaintiff incorporates all paragraphs of this complaint.

---

[4] The FCC also emphasized in its Order that due to the behind-the-scenes nature of relationships between sellers and telemarketers, Courts should consider affording TCPA plaintiffs discovery to establish the basis for vicarious liability for a call which on its face promotes the seller's products or service: "At a minimum, evidence of these kinds of relationships—which consumers may acquire through discovery, if they are not independently privy to such information— should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *In re Joint Pet. Filed by Dish Network, LLC,* CG Docket No. 11-50, 2013 WL 1934349 * 15, ¶ 46 (FCC May 9, 2013). This complaint has been drafted without the benefit of discovery from State Farm.

99. It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system. The TCPA also specifically prohibits the use of an unsolicited pre-recorded phone message to advertise the sale of goods and services. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200.

100. State Farm, or some person on its behalf, initiated a call to plaintiff and others' cellular telephones, using an automatic telephone dialing system and/or an artificial or prerecorded voice.

101. Plaintiff and the class are entitled to have their rights, status and legal relations under the TCPA relating to defendant's telemarketing to cell phones using an automatic dialing system and artificial or prerecorded voice.

102. The defendant's calls were negligent, or alternatively, they were willful.

## Class Allegations – Robocalls to Cell Phones

103. Plaintiff brings Count I on behalf of a class, which consists of:

All persons nationwide who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention and/or an artificial or prerecorded voice, where the called party had not previously provided consent to receive such call, where any call was made between and including a date four years prior to the filing of this action, ongoing.

Plaintiff alleges a subclass corresponding to calls that were transferred to a State Farm agent and resulted in a quote for State Farm insurance.

104. Plaintiff is a member of this class and subclass.

105. The class is so numerous that joinder is impracticable. Upon common experience of the size of automated dialing campaigns, as well as limited third party discovery, there are more than one thousand persons in the class.

106. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

      a.     Whether the calls that are the subject of this lawsuit were made using an "automatic telephone dialing system" as proscribed by the TCPA and applicable FCC regulations and orders;

      b.     Whether the messages played during the calls that are the subject of this lawsuit constituted an "artificial or prerecorded voice" as proscribed by the TCPA and applicable FCC regulations and orders; and

      c.     Damages, including whether the violation was willful or knowing.

107.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

108.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

109.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

110.    Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

111.     The identity of the class is likely readily identifiable from defendant's records, or the records of other person(s) involved with making the calls.

112.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of herself and the class and against defendant that provides the following relief:

a.      Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b.      A permanent injunction prohibiting defendant from violating the TCPA, 47 U.S.C. §227(b)(1)(A)(iii) in the future through marketing by means of calling (or having others call on its behalf) cell phones using an automatic telephone dialing system and/or a prerecorded voice message without the prior express consent of the call recipient;

c.      A declaration that defendant: used an automatic telephone dialing system and artificial or prerecorded voice as used in the TCPA 47 U.S.C. §227(b)(1)(A)(iii): and that State Farm violated that section of the TCPA in using such for calls to the cell phones of plaintiff and the class; and

d.      Any other relief the Court finds just and proper.

### COUNT II – TCPA – Do Not Call Registry

113.     Plaintiff incorporates all paragraphs of this complaint.

114.     It is a violation of the TCPA, 47 U.S.C. §227(c) to call a person's residential or cellular telephone more than once during a twelve month period, for telemarketing purposes, where such number is listed on the Do Not Call Registry.

115.    Liability attaches specifically to persons that make the calls, as well as persons on whose behalf such calls are made.

116.    Variable made more than one call on behalf State Farm to plaintiff within a twelve month period, for purposes of selling State Farm insurance policies.

117.    Variable has made tens of millions of similar calls on behalf of State Farm within four years of filing of this complaint.

118.    State Farm's policy, practices or procedures for complying with the Do Not Call Registry provisions of the TPCA were either nonexistent or insufficient.

119.    In other words, State Farm has not established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the Do Not Call Registry regulations.[5]

120.    Upon information and belief, there are more than 40 or 50 such phone numbers that Variable called on behalf of State Farm more than once within a twelve month period, that were listed on the National Do Not Call Registry.

121.    Plaintiff and the class are entitled to have their rights, status and legal relations under the TCPA relating to defendant's telemarketing to cell phones using an automatic dialing system and artificial or prerecorded voice.

122.    The defendant's calls were negligent, or alternatively, they were willful.  .

## Class Allegations

123.    Plaintiff brings Count II on behalf of a class, which consists of:

All persons nationwide who State Far, or some person on its behalf (such as Variable) called more than once within a twelve month period, on their residential line or cell

---

[5] Whether a TCPA defendant has established and implemented such practices and procedures is an "affirmative defense", for which the defendant bears the burden of proof. 47 U.S.C. §227(c)(5). Plaintiff pleads the absence and insufficiency of such out policies and procedures out of an excess of caution.

phone, within four years of the filing of this complaint, for purposes of encouraging the purchase of State Farm goods and/or services.

Excluded from this class are persons who had State Farm insurance at any time within 18 months of either call, or inquired as to State Farm insurance at any time within three months of either call.

124.    Plaintiff is a member of this class.

125.    The class is so numerous that joinder is impracticable. The class is so numerous that joinder is impracticable. Upon common experience of the size of automated dialing campaigns, as well as limited third party discovery, there are more than one thousand persons in the class.

126.    Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

a.    Whether the calls that are the subject of this case are telephone solicitations; and

b.    Damages, including whether the violation was willful or knowing.

127.    Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

128.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

129.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

130.    Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.    Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

131.    The identity of the class is likely readily identifiable from defendant's records, or the records of other person(s) involved with making the calls.

132.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of herself and the class and against defendant that provides the following relief:

a.    Statutory damages of up to $500 per violation, and up to $1,500 per violation if proven to be willful;

b.    A permanent injunction prohibiting defendant from violating the TCPA in the future by means of State Farm or any person on its behalf making two or more calls within a 12 month period, to residential or cell phones that are on the National Do Not Call Registry, for purposes of marketing State Farm products and/or services, unless the person has asked for an insurance quote within the preceding three months, or was a State Farm customer within the preceding eighteen months;

c.  A declaration that defendant used an automatic telephone dialing system and artificial or prerecorded voice, and violated the TCPA in using such for calls to the cell phones of plaintiff and the class; and

d.  Any other relief the Court finds just and proper.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
*Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
*Pro Hac Vice*

## JURY DEMAND

Plaintiff demands trial by jury.

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601

(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com


Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
*Pro Hac Vice*


Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
*Pro Hac Vice*

<u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls for purposes of marketing State Farm products or services (e.g. call detail and/or dialer records), the events described herein, any third party associated with any such telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim and discoverable.  If defendant is aware of any third party that has possession, custody or control of any such materials that may be discoverable, such as State Farm agents, phone companies, dialer companies including but not limited to YTel and Five9 (if applicable), lead generators (including but not limited to Variable Marketing, LLC, Instant Insurance Transfers, Insurance Leads in Real Time if applicable), telemarketers, outbound voice message companies (e.g. CallAssistant), plaintiff demands that defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke

# Exhibit A



From: zachary.poorman.kmdf@sfgreatquotes.com
To:
Date: Mon, 12 Aug 2013 12:08:48 -0500
Subject: State Farm Insurance Auto Rate Quote requested by Jennifer

To ensure delivery to your inbox, please add zachary.poorman.kmdf@statefarm.com to your address book.



## Jennifer, check out your State Farm® Savings!

Thanks for considering State Farm for your auto insurance needs. I'm happy to offer the coverage you requested at the following monthly rate:

$

**Email Me to Take Advantage of This Rate NOW**

**This quote is just a starting point. Once we talk about your specific needs and budget, I may be able to offer you additional savings.**

And if you choose State Farm as your insurance provider, you'll also receive personal attention that goes beyond great discounts and savings. You will have access to:

- Pick Your Way to Pay™ flexible payment options that work with your budget



- Your local agent 24 hours a day, 7 days a week, to help you with a claim or any other questions you might have

**Your quote is only active for a limited time. Take advantage today by calling me at 847-985-0777, sending me an email,** or stopping by my office. My team and I will make ourselves available when it's convenient for you.

I look forward to working with you!

**Email Me to Take Advantage of This Rate NOW**



**David Olchowka**

1006 Rohlwing Road

Elk Grove Village, IL  60007-3218

847-985-0777   Fax 847-985-0097
email me | visit me online

This personalized quote contains the following discounts:

    Anti-Theft Device
    Good Driving
    Multiple Automobiles
    Multiple Line (15%)
    Vehicle Safety (10%)
    Vehicle Safety (30%)

Vehicle Year: ▉
Make/Model: ▉
Type: Auto
Your Quote Includes These Coverages:

| Coverage | Amount |
| --- | --- |
| Liability - Bodily Injury / Property Damage | $100,000/$300,000/$100,000 |
| Bodily Injury | $100,000/$300,000 |
| Property Damage | $100,000 |
| Comprehensive Deductible | $500 |
| Collision Deductible | $500 |
| Uninsured Motor Vehicle - Bodily Injury | $100,000/$300,000 |
| Uninsured & Underinsured Motor Vehicle | 100000/300000 |
| Underinsured Motor Vehicle | $100,000/$300,000 |
| Medical Payments | $10,000 |
| Emergency Road Service | Included |
| Car Rental and Travel Expenses | $25 per day ($600 max) |
| Death, Dismemberment, and Loss of Sight - $5000 | No Coverage |
| Death, Dismemberment, and Loss of Sight - $10000 | No Coverage |
| Loss of Earnings | No Coverage |
| Additional Use of Non-Owned Car - BIPD Liability | No Coverage |
| Additional Use of Non-Owned Car - Physical Damage | No Coverage |

Your Quote Includes These Discounts:
    Anti-Theft Device
    Good Driving
    Multiple Automobiles
    Multiple Line (15%)

Vehicle Safety (10%)
TOTAL 6 MONTH PREMIUM: $ ███

Vehicle Year: ███
Make/Model: ███
Type: Auto
Your Quote Includes These Coverages:

| | |
|---|---|
| Liability - Bodily Injury / Property Damage | $100,000/$300,000/$100,000 |
| Bodily Injury | $100,000/$300,000 |
| Property Damage | $100,000 |
| Comprehensive Deductible | $500 |
| Collision Deductible | $500 |
| Uninsured Motor Vehicle - Bodily Injury | $100,000/$300,000 |
| Uninsured & Underinsured Motor Vehicle | 100000/300000 |
| Underinsured Motor Vehicle | $100,000/$300,000 |
| Medical Payments | $10,000 |
| Emergency Road Service | Included |
| Car Rental and Travel Expenses | $25 per day ($600 max) |
| Death, Dismemberment, and Loss of Sight - $5000 | No Coverage |
| Death, Dismemberment, and Loss of Sight - $10000 | No Coverage |
| Loss of Earnings | No Coverage |
| Additional Use of Non-Owned Car - BIPD Liability | No Coverage |
| Additional Use of Non-Owned Car - Physical Damage | No Coverage |

Your Quote Includes These Discounts:
Anti-Theft Device
Good Driving
Multiple Automobiles
Multiple Line (15%)
Vehicle Safety (30%)
TOTAL 6 MONTH PREMIUM: $ ███

**Stay Connected:**

   

Facebook    Twitter    YouTube    Mobile

This is a brief example of some of the coverages and limits which are available. It is not a contract, binder of coverage, nor a recommendation of coverage. All coverages are subject to terms and conditions contained in a policy and endorsements. If you have questions, please contact my office.

©2010 State Farm Mutual Automobile Insurance Company
State Farm Indemnity Company
Bloomington, IL

**State Farm**™

EM04