IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER SMITH, et al., individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 1:13-cv-2018 |
| v. ) ) | Honorable Amy J. St. Eve |
| STATE FARM MUTUAL AUTOMOBILE COMPANY, ) ) ) | |
| Defendants. ) | |

**DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S
<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Dated: February 25, 2014

Mark L. Hanover (ARDC #6216201)
Anthony T. Eliseuson (ARDC #6277427)
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
mark.hanover@dentons.com
anthony.eliseuson@dentons.com

*Attorneys for Defendant Nationwide Mutual
Insurance Company*

**INTRODUCTION**

Seven named plaintiffs filed a putative class action Complaint[1] against a company called Variable Marketing (which allegedly engages in the business of generating sales leads and selling them to customers, including insurance agents) and three insurance companies State Farm, Farmers, and Nationwide. The Complaint attempts to state direct and vicarious liability claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") arising out of alleged "robocalls" and allegedly improper telemarketing practices. The Complaint fails to state claims against Nationwide for the following four reasons:

First, the plain text of § 227(b) limits any private right of action to direct claims against the person that "initiated" or "made" the call, and vicarious liability, if any, only extends to those that exercise actual control over the telemarketing process. In a recent case involving the FCC, the United States Supreme Court recognized that the scope of a private right of action is a question of law reserved exclusively for the judiciary, and no deference is owed to an agency. The FCC itself has also acknowledged that its guidance regarding the application of agency principles to the TCPA is without controlling force. Since Plaintiffs cannot allege that any of the insurance company carriers actually controlled Variable Marketing's telemarketing practices, Plaintiffs' claims are precluded.

Second, even if vicarious liability claims were otherwise viable, they are precluded here because Variable Marketing inherently breached any alleged agency relationship with any of the defendants as a matter of law. According to the Complaint, Variable Marketing acted contrary to the interests of each defendant insurer by promoting the products of competitors. This conduct breaches an agent's duty to the principal, and terminates any purported agency relationship as a

---

[1] The "Complaint" refers to the Consolidated Master Class Action Complaint. (Doc. #111). Defendants are referred to as "State Farm" (State Farm Mutual Automobile Insurance Company), "Farmers" (Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, and Mid-Century Insurance Company), "Nationwide" (Nationwide Mutual Insurance Company) and "Variable Marketing" (Variable Marketing, LLC).

- 1 -

matter of law. Moreover, the Complaint makes clear that plaintiffs had actual knowledge of the conduct causing the breach of duty, and thus plaintiffs' third party claims against the principals (*i.e.,* the defendant insurers) are barred.

Third, based on this Court's previous dismissal order (doc #50), the Complaint fails to make adequate allegations against Nationwide to support any theory of agency liability. Unsupported and conclusory allegations about the conduct of third-party lead generator Variable Marketing does not impute liability to Nationwide. (Nationwide further incorporates the arguments raised by State Farm on this issue.)

Finally, Count III of the Complaint cannot state a claim against Nationwide because five of the plaintiffs fail to allege the prerequisite under § 227(c) of "more than one telephone call," and the two remaining plaintiffs fail to allege that their calls were attributable to Nationwide or specifically allege that their phone numbers were listed on any Do Not Call database.

## ARGUMENT

**I.  A Private Right Of Action Under The TCPA § 227(B) Is Limited To Direct Liability Against The Person "Mak[ing]" Or "Initiat[ing]" The Call And Vicarious Liability, If Any, Should Only Extend To Those That Exercise Actual Control Over The Person Engaging In The Call.**

The scope of any private right of action under a federal statute like the TCPA is a question of law reserved exclusively for the judiciary. *City of Arlington v. FCC*, 133 S. Ct. 1863, 1871 n.3 (2013) (recognizing the precedent of *Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990) as supporting the "modest proposition that the Judiciary, not any executive agency, determines 'the scope'—including the available remedies—'of judicial power vested by' statutes establishing private rights of action"); *see also Adams Fruit Co.*, 494 U.S. at 649 (holding that even if the statutory language regarding a potential private right of action were ambiguous, then the agency's interpretation is not entitled to deference, because the interpretive function belongs exclusively to

courts).[2] Defendants may properly challenge the scope of a private right of action through a motion to dismiss. *Sterk. v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) (in reversing the denial of a motion to dismiss, the Seventh Circuit held that only limited portions of the Video Privacy Protection Act gave rise to a private right of action).[3]

Here, the text and structure of the TCPA plainly demonstrates that § 227(b) limits a private right of action to direct claims against the "person" that "make[s]" or "initiate[s]" the call—even if that person is attempting to sell the products or services of another. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1241-44 (S.D. Fla. 2013) *appeal pending at* 13-14008 (11th Cir.) (analyzing the text of the TCPA *de novo* to conclude that § 227(b) does not permit vicarious liability). The court in *Mais* found that Congress made specific affirmative choices in the TCPA as to the allocation of liability among the various entities that could be involved in telemarketing calls—and these choices demonstrate a rejection of

---

[2] In this Court's previous dismissal order issued September 23, 2013 (doc #50 at 4-5), the Court referenced FCC guidance concerning the existence of vicarious liability under § 227(b). *Id.* (citing 28 FCC Rcd 6574 (the "2013 FCC Ruling"). Nationwide was not a party to the case at that time, and it is not clear that the parties squarely raised for adjudication the question whether the FCC's guidance is controlling. Nationwide respectfully submits that the FCC's opinion lacks controlling force, and is not entitled to deference. *City of Arlington*, 133 S. Ct. at 1871 n.3; *see also Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) (refusing to defer to FCC guidance regarding TCPA fax provisions, where such guidance was not contained in a promulgated regulation, because the guidance was inconsistent with statutory text and FCC's own regulations). Nationwide's position is consistent with the Court's characterization of the FCC guidance as non-controlling "dicta." (doc #50 at 9); *see also Dish Network, L.L.C. v. FCC*, No. 13-1182, 2014 WL 323660, at *1 (D.C. Cir. Jan. 22, 2014) (per curiam) (dismissing challenge to FCC's 2013 Ruling because the "FCC agrees that the 'guidance' in question has no binding effect on courts, that it is not entitled to deference under [*Chevron*].")

[3] If the Court were to rule in favor of Nationwide based on the arguments set forth below in sections II or III, then the Court need not rule on whether § 227(b) permits vicarious liability under this broader view, or at all. *Cf. Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 587 (1999) (district court properly avoided complex and novel questions of subject matter jurisdiction by instead dismissing on grounds of personal jurisdiction).

vicarious liability under § 227(b). *Id.* at 1241-42.[4] Specifically, the court in *Mais* contrasted the operative language of § 227(b), which is limited to persons who "make" or "initiate" calls, with the language of § 227(c), which allows a private right of action for calls "*by or on behalf of*" a party (emphasis added). *Compare* 47 U.S.C. § 227(b)(1)(A) *with* 47 U.S.C. § 227(c)(5).

As the *Mais* court concluded, Congress could have drafted legislation allowing for vicarious liability under § 227(b) using the same language that appears in § 227(c), but Congress chose not to do so. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Other courts have also recognized the distinction in this statutory language and concluded that vicarious liability under § 227(b), if any, is limited to formal agency in which the principal exercises actual control over the specific conduct alleged to violate the TCPA. *See Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718, at *3 (N.D. W. Va. Sept. 12, 2012); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012); *see also* 2013 FCC Ruling at 23-29, 28 FCC Rcd at 6596-6602 (Statement of Commissioner Pai dissenting in part, similarly concluding that § 227(b) liability should be limited to strict formal agency in which the principal exercises control, and criticizing the more expansive reading that would allow liability under apparent authority or ratification theories).[5] Thus, because Plaintiffs have not (and cannot)

---

[4] The *Mais* decision pre-dates the 2013 FCC Ruling. However, *Mais* involved a debt collection call where the court was directly confronted with a 2008 FCC Ruling providing that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." Despite this pronouncement from the FCC, the *Mais* court held, under Chevron step 1, that the statutory language unambiguously precluded vicarious liability against the creditor, and therefore refused to give deference to the FCC's contrary interpretation.

[5] As Commissioner Pai noted, the Department of Justice provided its views on these issues to the FCC and indicated that it believed the FCC lacked authority to tell the Courts how to apply agency law to the TCPA and that aspects of agency law had no application to the TCPA. *See id.*, 28 FCC Rcd at 6601-02 nn. 29, 34.

allege that Nationwide either exercised actual control or had the ability to exercise control over Variable Marketing, they have not stated a claim under § 227(b).[6] (In any event, as discussed below in Section III, Plaintiffs have not sufficiently alleged a claim even if § 227(b) were to allow for expansive vicarious liability under theories such as apparent authority or ratification).

## II. As A Matter Of Law, The Complaint Affirmatively Alleges Facts Defeating Any Vicarious Liability Theory Against The Insurance Company Defendants.

Even if vicarious liability claims were viable under § 227(b), plaintiffs have pleaded themselves out of court by alleging that the calls by Variable Marketing referenced multiple direct competitors in a highly competitive industry. *See* Complaint (doc #111) at ¶¶ 64, 79, 87, 96, 197 (the recorded messages allegedly played by Variable Marketing allegedly stated, "State Farm, Nationwide, and Farmers *are competing for your business*, and you can save several hundred dollars on your car insurance.") (emphasis added). These allegations demonstrate that the calls of Variable Marketing were intended for its own benefit, and not for the benefit of a principal, because Variable Marketing was seeking to generate a lead it could then sell. *See* Court's Order of September 23, 2013 (doc #50 at 9-10).

Plaintiffs' allegations doom any agency theory as a matter of law: an agent owes a duty of loyalty to its principal, which precludes conduct that either competes with the principal *or that assists the principal's competitors*. *See* Restatement (Third) of Agency § 8.04 ("Throughout the duration of an agency relationship, an agent has a duty to refrain from competing with the

---

[6] This Court addressed the 2013 FCC Ruling in two decisions prior to the D.C. Circuit's resolution of Dish Network's challenge. In *Savanna Group, Inc. v. Trynex, Inc*., No. 10 C 7995, 2013 WL 4734004, at *4-6 (N.D. Ill. Sept. 3, 2013), this Court addressed the ruling in the context of a TCPA fax case, noting that the Hobbs Act bars review of FCC regulations that carry the force of law. *Id.*; *see also* doc #50 at 6 (noting the FCC had indicated that both formal agency and broader apparent authority and ratification theories governed § 227(b)). Subsequent to these decisions, the D.C. Circuit dismissed the Dish Network petition for lack of jurisdiction because the FCC itself conceded that its views on the application of agency law under the TCPA were non-controlling. *Dish Network, L.L.C*, 2014 WL 323660, at *3-4. Nationwide submits that this same logic applies to the threshold question of whether vicarious liability exists at all. *City of Arlington*, 133 S. Ct. at 1871 n.3.

principal and from taking action on behalf of or otherwise assisting the principal's competitors."); *see also Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1336 (7th Cir. 1995) (where a purported "agent" could sell the products of a competitor, then the "agent" was actually an independent contractor acting for its own profit, and was not subject to the principal's control). A breach of this fundamental duty terminates any agency relationship (to the extent such a relationship ever existed).[7] *Maples v. Thomas*, 132 S. Ct. 912, 924-25 (U.S. 2012) ("[T]he authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal.") (quoting Restatement (Second) of Agency § 112); *see also* Section 112 cmt. b (reciting acts that terminate any agency relationship, including acts taken on behalf of a competing principal).

The termination of an agency relationship is binding on third-parties, such as plaintiffs here, when those third parties have knowledge of the facts that created the breach of loyalty. *Id.* at cmt. c (liability in favor of a third-party flows to the original principal only if the third-party lacks knowledge of the facts constituting the breach); *cf.* Restatement (Third) of Agency § 5.04 (where an agent acts adversely to the principal, and a third-party knows or should know of the adverse conduct, then the third-party cannot impute the knowledge of an agent to the principal). Here, plaintiffs' vicarious liability theory is predicated upon recorded messages of Variable Marketing referencing multiple competing insurers. This inherently terminates any agency relationship between Variable Marketing and the defendants. Moreover, plaintiffs had actual knowledge of the conduct, *because they participated in the calls and specifically pleaded it in the Complaint*. Thus, plaintiffs' vicarious liability claims arising out of an agency theory are defeated as a matter of law, and should be dismissed with prejudice. *See, e.g., Atkins v. City of Chicago*,

---

[7] State Farm's discussion of the Variable Marketing agreement demonstrates there is no conceivable agency relationship here. *See* doc # 116 at 3-4, 11.

631 F.3d 823, 832 (7th Cir. 2011) (a party may plead herself out of court by pleading facts showing she has no claim).

### III. Plaintiffs' Allegations Against Nationwide Are Insufficient To Survive A Motion To Dismiss Based On This Court's Prior Dismissal Order.

To the extent the Complaint otherwise survives the threshold issues above, then it nevertheless fails to state a claim against Nationwide based on this Court's dismissal order of September 23, 2013 (doc # 50). No direct liability claim is viable because the Complaint affirmatively alleges that Variable Marketing "made" or "initiated" the calls. In fact, no plaintiff even alleges a basis to tie any allegedly prohibited call to a Nationwide agent. Moreover, even if plaintiffs had adequately alleged a connection to a Nationwide agent, then there are no allegations that would extend liability to Nationwide itself.

### A. No direct liability exists against Nationwide, because the only two plaintiffs who allege any contact with Nationwide agents *allegedly initiated the calls to the agents themselves.*

No plaintiff has alleged a sufficient basis for direct liability against a Nationwide agent, much less as to Nationwide itself. *See* Complaint (doc #111) at ¶¶ 146-56.[8] This is because plaintiffs contend it was Variable Marketing that "made" or "initiated" the calls at issue, which makes Variable Marketing the only defendant subject to a potential direct claim. *See* Order of Dismissal (doc #50) at 4 (recognizing that only Variable Marketing would be potentially subject to a direct claim); 47 U.S.C. § 227(b)(1)(A)-(B). Only two plaintiffs, Benson and Landy, allege they were ever connected to a Nationwide agent as the result of their interaction with Variable

---

[8] The "direct liability" referred to in plaintiffs' quotation of Restatement (Third) of Agency § 7.03 relates to a third-party's right to assert direct claims against a principal based upon an agent's conduct—which presupposes an agency relationship. (doc #111 at ¶ 155). To the extent plaintiffs are asserting this equates to "direct liability" under the TCPA in the absence of an agency relationship, they are simply confused. The only conceivable direct claim here under the TCPA would lie against Variable Marketing, because that defendant allegedly "made" or "initiated" the calls.

Marketing. Yet each of them only spoke to that agent because they chose to *affirmatively return calls* to Variable Marketing, which does not give rise to liability under the TCPA.

### 1. Plaintiff Benson never answered the initial call and was only connected to a Nationwide agent based on his return call and request for a quote.

Plaintiff Benson never even answered the initial call. *Id.* at ¶ 85. Rather, Benson made his own return call, which was greeted with a general message mentioning several competing insurance companies, including Nationwide. *Id.* at ¶ 87. Benson then chose to voluntarily provide personal information to Variable Marketing, which ultimately led to Benson's return call being connected to a Nationwide agent. *Id.* at ¶¶ 88-91. Plaintiff Benson *does not allege* that, if he had answered the initial call, then the call would have been automatically referred to a Nationwide agent rather than some other agent from a competing company.

### 2. Plaintiff Landy similarly only received a call from a Nationwide agent after he called Variable Marketing and requested that call.

Similarly, plaintiff Landy allegedly answered the initial call, but did not continue the call to receive a quote or to learn which insurance company he would have been routed to. *Id.* at ¶ 94. Instead, plaintiff Landy voluntarily placed a return call to Variable Marketing—after he already knew the purpose of that call—where he was referred to insurance from competing companies "State Farm, Farmers, and Nationwide." *Id.* at ¶ 97. Plaintiff Landy then allegedly chose to provide personal information to Variable Marketing and to request an insurance quote, which allegedly resulted in a response to his request from a Nationwide agent named "Leo." *Id.* at ¶¶ 98-101. Landy does not allege this *subsequent call* violated the TCPA. With respect to the initial call, no allegations connect it to "Leo" or to Nationwide.

### 3. The remaining five plaintiffs do not allege any specific connection to Nationwide, but instead allege their calls were made for other insurers or to sell insurance generally without reference to any insurer.

The other five plaintiffs do not allege any specific connection between their call and Nationwide—in fact, most allege their calls were made on behalf of a different insurance

- 8 -

company. Specifically, plaintiffs Smith, Primack, and Clark do not allege they heard a recorded message that mentioned Nationwide. (doc #111 at ¶¶ 40-60 (Smith); ¶¶ 70-76 (Primack), and ¶¶ 81-83 (Clark)). On the contrary, Smith affirmatively alleges the calls involving her were intended to sell State Farm insurance *id.* at ¶¶ 45-46, and that Variable Marketing was also working for Farmers. *Id.* at ¶¶ 47-48, 52-59. The call involving plaintiff Primack allegedly related solely to State Farm, and there was no mention of Nationwide. *Id.* at ¶¶ 70-75. Plaintiff Clark merely alleges his call related to the general topic of insurance, without the reference to any specific insurer. *Id.* at ¶¶ 81-83. Thus, plaintiff Clark cannot state a claim against Nationwide any more than he could state a claim against myriad other insurance companies with agents who allegedly did business with Variable Marketing. (doc # 50 at 9-10). In sum, these three plaintiffs have no claim against Nationwide, and their claims should be dismissed.

The remaining two plaintiffs, Matejovich and Friedman, only allege that Nationwide's name was mentioned along with State Farm and Farmers in a recorded message—played in response to return calls they initiated. *Id.* at ¶¶ 64, 79. But the TCPA does not apply to calls placed *by* a plaintiff *to* a defendant, and therefore this recorded message is irrelevant. Moreover, plaintiff Matejovich was ultimately transferred to a State Farm agent—not to Nationwide—and plaintiff Friedman was never transferred to any insurance company agent at all. *See id.* at ¶¶ 61-69 (Matejovich) and ¶¶ 77-80 (Friedman). Thus, neither of these plaintiffs has any basis for a claim against Nationwide either.

**B.    Plaintiffs' conclusory agency allegations are inadequate.**

If plaintiffs' theory of agency and vicarious liability were legally cognizable, then the Complaint would still fail to state a claim based on inadequate pleading. As this Court explained (and as set forth in State Farm's brief), plaintiffs attempt three different theories of vicarious liability against the insurance company defendants: actual agency, apparent authority, and ratification. *See* (doc #50 at 4-10). All of these theories involve circumstances of a "multi-level

- 9 -

agent" or a "subagency" (*i.e.,* Variable Marketing allegedly acts as the agent for Nationwide's agent.) *Id.* at 6-7. To state a claim under such multi-level or subagency theories, this Court specifically required plaintiffs to allege facts—not merely conclusions—supporting the notion that the insurer defendants had control over Variable Marketing itself, or that the insurers had given "actual or apparent authority [to its agents] to appoint Variable Marketing to perform its functions." *Id.* at 6-7 (citing Restatement (Third) Agency § 3.15).

Other than *pro forma,* boilerplate conclusions, plaintiffs have not alleged any facts to demonstrate that Nationwide had any knowledge of Variable Marketing's existence—let alone the notion that Nationwide allegedly knew or approved the use of Variable Marketing by its agents or controlled the efforts of Variable Marketing. This renders any theory of agency liability against Nationwide a nonstarter. Remarkably, the Complaint even includes a telling allegation that would defeat the named plaintiffs' claims on their face: "Even if the Insurance Company Defendants did not know about Variable's calls before this suit was filed, they became aware of such through this lawsuit." (doc #111 at ¶ 140). Since the allegedly wrongful conduct perpetrated against the named plaintiffs obviously occurred *before* the filing of the Complaint, then the insurers cannot be liable if they first discovered the existence of calls by Variable Marketing *after* the Complaint was filed. Moreover, this Court's previous dismissal order makes clear that such after-the-fact knowledge would be insufficient for liability against the insurers.

The infirmity of the Complaint is further borne out by allegations regarding a vague and undefined alleged "marketing scheme" by the insurers, and conclusory statements about general agency obligations. *See* (doc #111 at ¶¶ 109-44, 167-217). Plaintiffs may tout the quantity of these allegations, but they are qualitatively empty as to Nationwide. There are no specific allegations regarding conduct *by Nationwide,* or knowledge about Variable Marketing *by Nationwide,* or specific marketing efforts by agents *of Nationwide*. Indeed, there is almost no specific mention of Nationwide at all. *Id.*

The only allegations that relate to Nationwide at all are the exact type that this Court *has already rejected*. *Compare, e.g.,* (doc #111 at ¶ 153) (alleging Nationwide "knew," or "[a]lternatively … had good reason to know" about insurance quotes relating to Variable Marketing calls) and (doc #111 ¶ 169) (conclusorily alleging that Nationwide agents had actual authority) *with* (doc #50 at 6-7) (explaining that such boilerplate conclusory allegations were insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To the extent plaintiffs make any effort at specific allegations against any insurer (which allegations still fail to state a claim) those allegations are targeted at State Farm and Farmers. *See, e.g., id.* at ¶¶ 120-32 (summarily alleging, without any underlying factual basis, that State Farm controls the advertising of its agents, approves scripts, and encourages the use of Variable Marketing); *id.* at ¶¶ 121-27 (summarily alleging, without any underlying factual basis, that Farmers assists its agents' marketing efforts).

On this same basis, any apparent authority or ratification theory fails. The apparent authority theory is fatally defective as to Nationwide because there is no allegation by any plaintiff that Nationwide's name was mentioned in any incoming call they received. Rather, Nationwide was allegedly mentioned only in the *outgoing calls* returned by certain plaintiffs. *Compare, supra* at 8-10 (discussing each plaintiffs' allegations) *with* (doc #50 at 9) (dismissing apparent authority claims because "[n]otably, according to Ms. Smith's allegations, Variable Marketing did not even mention State Farm's name during the call at issue."). Thus there was no basis for any plaintiff to believe they received a call under the apparent authority of Nationwide. At most plaintiffs could attempt to allege that Variable Marketing acted with apparent authority in *answering* plaintiffs' calls, which would not support a TCPA claim.

Similarly, plaintiffs cannot pursue a ratification theory, because such a theory entails the prerequisite of an agency relationship, which has not been properly alleged (as discussed above). Restatement (Third) of Agency § 4.03 cmt. b. ("When an actor is not an agent and does not

purport to be one, the agency-law doctrine of ratification is not a basis [for liability]."); *see also Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) ("a principal agent relationship is … a requisite [to ratification], and ratification can have no meaning without it"). Additionally, the ratification theory would require specific allegations showing Nationwide was allegedly aware of *all* material facts. *See, e.g.,* Restatement (Third) of Agency § 4.06 cmt. a (ratification must be based on "knowledge of material facts about the act of the agent or other actor); Restatement (Third) of Agency § 4.01 cmt. g. (similar principle). Applied here, this would mean that plaintiffs must allege that Nationwide had actual knowledge—for each specific policy transaction—that the policy was generated through a Variable Marketing call; that the Variable Marketing call was made though an autodialer allegedly in violation of the TCPA; and that Variable Marketing did not have consent or another permissible ground for making that call. Not only are such allegations entirely absent from the Complaint with regard to Nationwide, but the Complaint actually implies *the opposite—*that Nationwide likely lacked any such knowledge about Variable Marketing before this lawsuit was filed. (doc #111 at ¶ 140).

In sum, plaintiffs' Complaint is fatally deficient with regard to Nationwide, and it should be dismissed with prejudice given there is no reason to believe further pleadings would be anything other than futile. *See, e.g., Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile.") (citation omitted).

**IV.     Count III Should Be Dismissed Against Nationwide Because No Plaintiff Who Alleges They Received Multiple Calls Has Any Connection To Nationwide.**

The private right of action available under § 227(c) relates to violations of the Do Not Call registry, and applies only to persons who "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Here, at most two of the plaintiffs claim to have

received multiple calls, but neither specifically alleges their phone numbers were listed on the Do Not Call database or on any defendant-specific database. *Compare Meilleur v. AT&T Inc.*, No. 11-1025, 2011 WL 5592647, at * 2 (W.D. Wash. Nov. 16, 2011) (granting motion to dismiss because plaintiff "must allege he received two calls violating the do-not-call regulations in a twelve-month period to have a cause of action under [Section 227(c)]") *with* (doc #111 at ¶¶ 40-60 & 81-83) (plaintiffs Smith and Clark alleging they received more than one call, but not alleging specifically that their numbers were on the Do Not Call registry).[9] In any event, neither plaintiff Smith nor Clark alleges that Nationwide had any involvement with those calls. On the contrary, plaintiff Smith expressly alleges her calls were on behalf of State Farm and Farmers. (doc #111 at ¶¶ 41, 45-48). Thus, Count III should be dismissed as to Nationwide.

---

[9] Count III assumes that plaintiffs Smith and Clark had their telephone numbers on the Do Not Call registry, but there is no allegation that they did in fact affirmatively place their numbers on the registry. *See* (doc # 111 at ¶¶ 252-55).

- 13 -

- 14 -

**WHEREFORE**, Defendant Nationwide Mutual Insurance Company respectfully requests that this Court enter an order granting this Motion and dismissing this action with prejudice, and any further relief this Court deems necessary and proper.

Dated:  February 25, 2014				Respectfully submitted,


						/s/ Mark L. Hanover

Mark L. Hanover (ARDC #6216201)
Anthony T. Eliseuson (ARDC #6277427)
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
mark.hanover@dentons.com
anthony.eliseuson@dentons.com

*Attorneys for Defendant Nationwide Mutual Insurance Company*

## **CERTIFICATE OF SERVICE**

      I, Mark L. Hanover, an attorney, hereby certify that on February 25, 2014, I electronically filed the preceding with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

                                                               /s/ Mark L. Hanover