**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER SMITH, on behalf of herself and others similarly situated, | ) ) ) | No. 13-cv-2018 |
| Plaintiff, | ) ) | Consolidated with |
| v. | ) ) | Nos. 13-cv-7389, 13-cv-7149, and 13-cv-6694 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On February 4, 2014, Plaintiffs Jennifer Smith, Shawn Matejovich, Stuart Benson, Brennan Landy, Josh Friedman, Merrill Primack, and Matt Clark filed a consolidated class action complaint asserting claims against several insurance companies for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). (*See* R. 111, Consol. Compl.) Plaintiffs allege that the insurance companies marketed their services through the use of a lead-generator marketing company, Variable Marketing, LLC ("Variable"), whose telemarketing calls to Plaintiffs and others violated the TCPA. The insurance companies, Defendants State Farm Mutual Automobile Insurance Company ("State Farm"); Nationwide Mutual Insurance Company ("Nationwide"); and Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, and Mid-Century Insurance Company (collectively, "Farmers"), have moved to dismiss the Consolidated Complaint, arguing that Plaintiffs have not alleged a basis to hold them liable for Variable's allegedly unlawful calls. (*See* R. 114, 122, 125.) For the following reasons, the Court grants Nationwide's and Farmers' motions to dismiss, but denies State Farm's motion.

**BACKGROUND**

The seven plaintiffs in this consolidated action complain of receiving similar unlawful telemarketing calls from Variable. Plaintiffs allege that Variable used an automated telephone dialing system to place telemarketing calls to them and others. For those who answered the call, a prerecorded message played telling the plaintiff that he or she could save on auto insurance. If the plaintiff expressed interest in receiving a quote, a Variable operator joined the call and requested various personal information from the plaintiff—*i.e.,* his or her name, address, date of birth, type of vehicle, and driving history. The operator would then inform the plaintiff that he or she could receive an insurance quote from one of Defendants (State Farm, Nationwide, or Farmers) and transfer him or her to a local State Farm, Nationwide, or Farmers agent to receive the quote.

For those plaintiffs who did not answer Variable's initial call, Variable left a pre-recorded message on their voicemail informing them of the opportunity to save on auto insurance. If the plaintiff returned the call, he or she heard a pre-recorded voice message stating that "State Farm, Nationwide, and Farmers are competing for your business, and you can save several hundred dollars on your car insurance." If the plaintiff either expressed interest in receiving a quote or simply remained on the line, a Variable operator then joined the call, requested certain personal information, and transferred the plaintiff to a local agent for State Farm or Nationwide (or, hypothetically, Farmers, although Variable did not transfer any plaintiffs in this case to a local Farmers' agent) to receive an insurance quote. None of the plaintiffs gave prior consent to receive these telemarketing calls. Plaintiffs Smith and Clark, moreover, had registered their cell phone numbers on the National Do-Not-Call Registry.[1]

---

[1] The Court discusses additional allegations, where relevant, in its analysis.

Before the Court consolidated the present cases, it dismissed Plaintiff Smith's Amended Complaint against State Farm for failing to allege a plausible basis to hold State Farm liable for Variable's allegedly unlawful calls. (*See* R. 50, 9/23/13 Opinion at 4-10.) The Court explained that while Smith had alleged that State Farm's local insurance agents are legal agents of State Farm and (albeit only in conclusory terms) that Variable was an agent of State Farm's local insurance agents, she had failed to connect the two relationships in order to plead a plausible agency relationship between Variable and State Farm itself. (*See id.* at 5-7.) Smith also had failed to allege sufficient facts to support holding State Farm liable under apparent authority and ratification theories. (*See id.* at 8-10.)

Plaintiffs subsequently filed the Consolidated Complaint against State Farm, Nationwide, and Farmers. According to Plaintiffs, the Consolidated Complaint resolves the deficiencies that the Court found in Smith's Amended Complaint. Defendants disagree, arguing that the Consolidated Complaint again fails to allege a plausible basis to hold them liable for Variable's misconduct.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under federal notice-pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)).

**ANALYSIS**

The central issue raised in Defendants' motions is whether Plaintiffs have pled a basis for holding Defendants liable for Variable's unlawful telemarketing calls. According to Plaintiffs, the Consolidated Complaint alleges Defendants' liability under the following five theories: (1) direct liability; (2) impermissible delegation of liability; (3) formal agency/actual authority; (4) apparent authority; and (5) ratification. (*See* Consol. Compl. ¶ 145.) To survive dismissal, the Consolidated Complaint must contain sufficient factual allegations to state a plausible basis for holding Defendants liable under any one of these theories.[2]

**I.      Direct Liability**

Plaintiffs argue that they have sufficiently alleged that Defendants directly participated in Variable's unlawful telemarketing calls, rendering Defendants directly liable for Variable's

---

[2] Farmers argues that Plaintiffs lack Article III standing to assert claims against Farmers. (*See* R. 126, Farmers Br. at 4-5.) To establish Article III standing, a plaintiff must establish that he or she has suffered "an injury-in-fact that is fairly traceable to the defendant's conduct and that could be redressed by a favorable court decision." *Abbott v. Lockheed Martin Corp.,* 725 F.3d 803, 808 (7th Cir. 2013). Farmers argues that Plaintiffs have not alleged any connection between Variable's unlawful calls and Farmers, and Plaintiffs, therefore, have failed to establish that their alleged injury is "fairly traceable" to Farmers. Farmers' standing challenge turns on the same issue as Farmers' Rule 12(b)(6) challenge—namely, whether Plaintiffs have alleged a plausible basis to hold Farmers liable for Variable's unlawful calls. If Plaintiffs sufficiently allege that Farmers and the other Defendants are directly or vicariously liable for Variable's calls, Plaintiffs have standing to assert claims against them. Accordingly, the Court does not need to perform a separate standing analysis.

misconduct.  (*See* R. 131, Pl. Resp. Br. at 23-24.)  Direct liability under the TCPA, however, applies only to entities that "initiate" the telemarketing calls.  *See In re Joint Petition filed by Dish Network, LLC,* 28 F.C.C.R. 6574, 6582 ¶ 24 (2013) (hereinafter, the "FCC Ruling" or "*Dish Network*") ("[W]e clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call . . . ."); *Golan v. Veritas Entm't, LLC,* No 4:14 CV 00069 ERW, 2014 WL 2095310, at *4 (E.D. Mo. May 20, 2014) ("[A] seller is not directly liable for a TCPA violation unless it initiates [the] call.").  A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call."  *See* FCC Ruling, 28 F.C.C.R. at 6583 ¶ 26.  Accordingly, a seller generally does not "initiate" calls placed by third-party telemarketers.  *See id.* at 6593 ¶ 48.  There is no question that Variable—not Defendants— physically placed the allegedly unlawful telemarketing calls at issue.  (*See, e.g.,* Compl. ¶¶ 49-50, 63, 82, 86, 95, 111.)  Even if Variable placed those calls on Defendants' behalf, Plaintiffs cannot hold Defendants directly liable under the TCPA.  *See* FCC Ruling, 28 F.C.C.R. at 6582-93.

Plaintiffs argue that although Defendants did not initiate the calls, they may be directly liable for Variable's misconduct because they maintain "direct control over telemarketing and advertising."  (*See* Pl. Resp. Br. at 24.)  In support of this argument, Plaintiffs selectively rely on the statement in the FCC Ruling that "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to the timing and the manner of the call, for example," *see* FCC Ruling at 6583 ¶ 27, but ignore the myriad of statements in the FCC Ruling recognizing that sellers generally do not initiate—and, thus, are not directly liable for—calls made by third-party telemarketers.  Even accepting Plaintiffs' argument that a seller

could be so involved in a third party's placement of a call that the seller becomes directly liable for initiating it, however, Plaintiffs fail to allege that Defendants were involved in the placing of Variable's calls to Plaintiffs. At best, Plaintiffs allege that Defendants' *insurance agents* had some input on the timing and manner of the calls and that Variable transferred some calls to Defendants' *insurance agents*, but Plaintiffs do not allege that Defendants themselves had any involvement in the telemarketing calls. Plaintiffs cannot simply attribute the actions of Defendants' insurance agents to Defendants without alleging a plausible basis for doing so.

Plaintiffs also argue that State Farm was directly involved with Variable's telemarketing calls because it "directly emailed Plaintiff Smith two email quotations for homeowners insurance arising out of the calls made in August 2013." (*See* Pl. Resp. Br. at 24.) The emailed quotation that Plaintiffs attached to the Consolidated Complaint, however, belies Plaintiffs' assertion that it came directly from State Farm. (*See* Consol. Compl. at Ex. A.) Contrary to Plaintiffs' allegations, the office of David Olchowka, a local State Farm insurance agent—not State Farm itself—sent Plaintiff Smith the quotation. In sum, Plaintiffs fail to allege a plausible basis for holding Defendants directly liable for Variable's telemarketing calls.

## II.     Impermissible Delegation

Plaintiffs next argue that they can hold Defendants liable for Variable's calls because Defendants impermissibly delegated activities to Variable that they knew or had reason to know would result in harm to consumers from trespass or nuisance. (*See* Pl. Resp. Br. at 24-27.) According to Plaintiffs, the same logic underlying the FCC's Ruling that entities can be vicariously liable for third-party telemarketers' TCPA violations suggests that entities can also be liable for third parties' TCPA violations under an impermissible delegation of authority theory. The Court disagrees.

"[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." *Meyer v. Holley,* 537 U.S. 280, 290, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003) (quoting *General Bldg. Contractors Assn., Inc. v. Pennsylvania,* 458 U.S. 375, 396, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982)). Imposing a nondelagable duty on a principal goes further than traditional vicarious liability principles. *See id.* at 290. It imposes liability on the principal even when the principal "has himself done everything that could reasonably be required of him . . . and irrespective of whether the agent was acting with or without authority." *See id.* (citation omitted). Nothing in the TCPA supports imposing liability for third-party telemarketing calls under such a broad theory, and "such silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules." *See id.* at 286. The FCC, which is the agency primarily charged with implementing and administering the TCPA, moreover, expressly rejected a proposal to construe the TCPA as concluding that an entity initiates (and thus is liable for) all third-party telemarketing calls made on its behalf. *See* FCC Ruling, 28 F.C.C.R. at 6583 ¶ 27.

Furthermore, Plaintiff's comparison of telemarketing calls to "work which [an] employer knows or has reason to know to be likely to involve a trespass upon the land of another or the creation of a public or private nuisance" is unpersuasive. (*See* Pl. Resp. Br. at 25 (quoting Restatement (Second) of Torts § 427B (1965)). Although the recipients of unwanted telemarketing calls certainly may consider them a "nuisance," telemarketing calls are not the type of "public or private nuisance" referred to Restatement of Torts § 427B. Section 427B encompasses, for example, construction of a dam that will necessarily flood other land, blasting for excavation that damages nearby structures, or disposal of hazardous wastes—not the slight annoyance and cost of receiving unwanted telemarketing calls. *See* Restatement (Second) of

Torts § 427B cmt. b; *see also* Restatement (Second) of Torts § 821A cmt. b (1979)

(distinguishing between the legal meaning of "nuisance" and the popular meaning of the term).

The Court, therefore, rejects Plaintiffs' impermissible delegation theory as unsupported by the

law.

## III.    Vicarious Liability

Plaintiffs next argue that Defendants are vicariously liable for Variable's telemarketing

calls under formal agency principles as well as apparent authority and ratification.  Because the

Consolidated Complaint contains more factual allegations related to State Farm than the other

two Defendants, the Court addresses the sufficiency of Plaintiffs' allegations against State Farm

separately from the sufficiency of their allegations against Nationwide and Farmers.  As an

initial matter, though, the Court must first address Nationwide's argument that the TCPA does

not allow for vicarious liability or, alternatively, that it allows only for vicarious liability under

formal agency principles.[3]

### A.    The 2013 FCC Ruling

As discussed in the Court's September 23, 2013 Opinion, in May 2013, the FCC issued a

decision clarifying that "while a seller does not generally 'initiate' calls made through a third-

party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable

under federal common law principles for violations of either section 227(b) or section 227(c) that

are committed by third-party telemarketers."  *See* FCC Ruling, 28 F.C.C.R. at 6574 ¶ 1.  The

FCC determined that an entity may be vicariously liable for TCPA violations "under a broad

---

[3] In the Court's September 23, 2013 Opinion dismissing Smith's Amended Complaint, the Court, relying on the FCC Ruling, found that the TCPA allows for vicarious liability under formal agency, apparent authority, and ratification theories.  (*See* 9/23/13 Opinion at 4.)  Nationwide, however, was not a party to the case at the time of the Court's ruling, and neither Plaintiff Smith nor State Farm—the only parties in the case at the time—challenged that TCPA § 227(b) allows for vicarious liability.  The Court, therefore, will address Nationwide's argument on the applicability of vicarious liability under the TCPA before evaluating the sufficiency of Plaintiffs' allegations.

range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* at 6584 ¶ 28. Nationwide argues that the FCC's determination does not bind the Court, and the Court should not follow it because the text and structure of the TCPA limits private rights of action under section 227(b) only to claims against the person that "make[s]" or "initiate[s]" the calls, even if that person makes or initiates the calls on another's behalf. (*See* R. 123, Nationwide Br. at 3.)

The principle case on which Nationwide relies in support of its argument, *Mais v. Gulf Coast Collection Bureau, Inc.,* 944 F. Supp. 2d 1226 (S.D. Fla. 2103)—which pre-dates the FCC's ruling in *Dish Network* by one day—held that a prior FCC ruling regarding vicarious liability under section 227(b) was not entitled to *Chevron* deference because it contradicted the TCPA's plain language. The *Mais* court based its decision on the difference in language between section 227(b)(1)(A) and section 227(c)(5) of the TCPA. The court noted that section 227(b)(1)(A) imposes liability only on persons who "make" a call that violates the TCPA, whereas section 227(c)(5), which concerns calls to persons on the National Do-Not-Call Registry, imposes liability for multiple calls made "by *or on behalf of*" a person. According to the court, the inclusion of the phrase "on behalf of" in section 227(c)(5) but not in section 227(b) demonstrated that Congress intended vicarious liability to attach only to violations of section 227(c)(5), not to violations of section 227(b). *See Mais,* 944 F. Supp. 2d at 1241-43.

The Court respectfully disagrees. As the Supreme Court has recognized, "[w]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer,* 537 U.S. at 828-29, 123 S. Ct. 824, 154 L. Ed. 2d 753. "In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law."

*United States v. Texas,* 507 U.S. 529, 534, 113 S. Ct. 1631, 123 L. Ed. 2d 245 (1993); *Resolution*

*Tr. Corp. v. Gallagher,* 10 F.3d 416, 419 (7th Cir. 1993) (same).  Nothing in the language of

section 227(b) itself indicates that common-law agency principles are inapplicable, *see Creative*

*Montessori Learning Ctr. v. Ashford Gear, LLC,* No. 09 C 3963, 2014 WL 865963, at *3 (N.D.

Ill. Mar. 3, 2014) (quoting *Bridgeview Health Care Ctr., Ltd. v. Clark,* No. 09 C 5601, 2013 WL

1154206, at *5 (N.D. Ill. Mar. 19, 2013)), and the Court does not find that Congress's inclusion

of the phrase "on behalf of" in section 227(c)(5) but not in section 227(b) is sufficient to

abrogate established common-law agency principles.  *See United States v. Texas,* 507 U.S. at

534, 113 S. Ct. 1631, 123 L. Ed. 2d 245; *Resolution Tr. Corp.,* 10 F.3d at 419.

Congress intended for the TCPA to protect individuals from the annoyance and cost of

receiving certain types of telemarketing calls without their prior consent.  As the FCC and the

telemarketing industry recognized in *Dish Network*, sellers are in the best position to monitor and

police third-party telemarketers' compliance with the TCPA.  *See* FCC Ruling, 28 F.C.C.R. at

6588 ¶ 37.  Allowing sellers to avoid potential TCPA liability by outsourcing their telemarketing

activities to unsupervised third parties would leave consumers in many cases without an effective

remedy for telemarketing intrusions, particularly when the telemarketers are judgment proof,

unidentifiable, or located outside the United States.  *See id.*  Interpreting section 227(b) as not

allowing vicarious liability, therefore, undermines the purpose of the TCPA.

Additionally, liability attaches under section 227(c)(5) only if *multiple* calls are made by

or on behalf of a person.  *See* 47 U.S.C. § 227(c)(5).  Congress may have included the phrase "on

behalf" of in section 227(c)(5) to address the issue of how to  aggregate different calls.  Put

differently, the addition of the phrase "on behalf of" clarifies that a person is liable for making

multiple calls to a cell phone registered on the National Do-Not-Call Registry even if a seller made one call and a third-party telemarketing agent made another call on behalf of that seller.

Nationwide also cites *Dish Network L.L.C. v. FCC,* 552 Fed. App'x 1 (D.C. Cir. Jan. 22, 2014), in support of its argument. Nationwide contends that the FCC affirmatively stated in *Dish Network L.L.C. v. FCC* that its discussion of agency law principles in the context of the TCPA had no binding effect on courts and is not entitled to deference. (*See* R. 133, Nationwide Reply Br. at 6-7.) The FCC's statement—and the D.C. Circuit's decision in *Dish Network L.L.C. v. FCC*—however, dealt only with paragraphs 46 and 47 of the FCC Ruling, which provide "guidance" to the courts on how common-law agency principles might apply to TCPA cases. *See Dish Network L.L.C. v. FCC,* 552 Fed. App'x at 1. Neither the FCC nor the D.C. Circuit stated that the FCC's determination that section 227(b) of the TCPA incorporates common-law agency principles is not entitled to deference.

Moreover, regardless of whether the FCC Ruling binds the Court or is merely persuasive authority, the Court finds that the FCC's determination that an entity may be vicariously liable for violation of section 227(b) under a broad range of common-law agency principles is correct for the reasons explained above. The Court's determination is in accord with the vast majority of courts that have addressed the issue since the FCC's ruling. *See, e.g., Palm Beach Golf Ctr.-Boca, Inc. v. Sarris,* 981 F. Supp. 2d 1239, 1248-49 (S.D. Fla. 2013); *Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2013 WL 4495221, at *1 (N.D. Ill. Aug. 21, 2013); *Golan v. Veritas Entm't, LLC,* No. 4:14-cv-00069 ERW, 2014 WL 2095310, at *3-5 (E.D. Mo. May 20, 2014); *Lucase v. Telemarketer Calling from (407) 476-5670 & Other Tele. Numbers,* No. 1:12-cv-630, 2014 WL 1119594, at *6-9 (S.D. Ohio Mar. 20, 2014); *see also Thomas v. Taco Bell Corp.,* No. 12-56458, 2014 WL 2959160, at *1-2 (9th Cir. July 2, 2014) (finding that the

"district judge properly concluded vicarious liability can provide the basis for liability for a TCPA violation" and assuming, based on the FCC Ruling, that principles of apparent authority and ratification also may provide a basis for liability under section 227(b)). The Court, therefore, rejects Nationwide's argument that section 227(b) does not permit vicarious liability under common-law agency principles, including apparent authority and ratification. The Court next must determine whether Plaintiffs have alleged a plausible basis for holding Defendants vicariously liable for Variable's telemarketing calls.

**B.** **Allegations Against State Farm**

Plaintiffs have alleged sufficient facts to plead a plausible basis for holding State Farm vicariously liable for Variable's actions under a subagency theory. Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Agency § 1.01 (2006).[4] "A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal." *Id.* § 3.15(1). An agent may appoint a subagent if the agent has actual or apparent authority from the principal to do so. *See id.* § 3.15(2).

Viewing the allegations in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, as the Court must, the Court finds that Plaintiffs have alleged sufficient facts to make it plausible that Variable was acting as State Farm's subagent

---

[4] The federal common law of agency is in accord with the Restatement. *See Opp v. Wheaton Van Lines, Inc.,* 231 F.3d 1060, 1064 (7th Cir. 2000); *Asher v. Chase Bank USA, N.A.,* 310 Fed. App'x 912, 920 (7th Cir. 2009).

when it placed the allegedly unlawful calls at issue.  First, Plaintiffs have sufficiently alleged that State Farm's local insurance agents acted as State Farm's legal agents with respect to telemarketing.  (*See* Consol. Compl. ¶¶ 118-120, 130, 131, 135, 172; *see also* 9/23/13 Opinion at 7 ("Ms. Smith has sufficiently alleged that State Farm had a formal agency relationship with its own insurance agents . . . .").)

Second, Plaintiffs have sufficiently alleged that an agency relationship exists between State Farm's insurance agents and Variable.  Plaintiffs allege that the State Farm insurance agents who hired Variable directed the quality, timing, and volume of Variable's telemarketing calls (*see* Consol. Compl. ¶ 181; *see also* R. 114, State Farm Mot. to Dismiss at Exs. A-B (Variable contracts)), and that State Farm's insurance agents provided information to Variable regarding the nature and pricing of State Farm's products to allow Variable to route customers to the proper insurance agents.  (*See* Consol. Compl. ¶ 199.)  The State Farm insurance agents entered into contracts with Variable that specified the days of the week and times in which Variable should make its calls, the geographic location of the customers whom it should call, and the number of calls Variable should transfer to the insurance agency each day.  (*See* State Farm Mot. to Dismiss at Exs. A-B.)  Admittedly, the existence of a contract between State Farm's insurance agents and Variable—even one that imposes certain constraints on Variable—does not necessarily mean that the insurance agents had the power to give interim instructions to Variable, which is the hallmark of an agency relationship.  *See* Restatement (Third) of Agency § 1.01 cmt. f(1) ("[T]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."); *see also Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) ("While an agency relationship can be created by contract or by conduct, not all contracts create agency

relationships and not all conduct creates agency relationships.").  Plaintiffs, however, allege sufficient facts to show that State Farm's insurance agents exercised a level of control over Variable's telemarketing activities (including the timing, target location, and volume of Variable's calls) to make the existence of an agency relationship between State Farm's insurance agents and Variable plausible.[5]  Plaintiffs, therefore, have satisfied federal notice-pleading standards with respect to this issue.  *See Iqbal,* 556 U.S. at 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

Third, unlike Smith's Amended Complaint, the Consolidated Complaint alleges facts making it plausible that State Farm's insurance agents had State Farm's actual or apparent authority to appoint Variable as a subagent for telemarketing purposes.  *See* Restatement (Third) Agency § 3.15(2).  Plaintiffs allege that State Farm suggested to several of its insurance agents that that telemarketing through Variable was a good way to obtain new customers.  (*See id.* ¶¶ 131-32.)  More than forty State Farm insurance agents in Illinois alone hired Variable for telemarketing purposes in 2012 and 2013.  (*Id.* ¶ 134.)  Additionally, in August or September 2013, State Farm requested some of its insurance agents to stop using Variable for telemarketing, and pursuant to State Farm's requests, those agents fired Variable.  (*Id.* ¶ 144.)  While these facts alone ultimately may not be enough to allow Plaintiffs to prevail against State Farm on their subagency theory, Plaintiffs need not plead all the facts necessary to support their claim; they need only allege facts sufficient to make their claim plausible on its face.  *See Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (quoting *Twombly,* 550 U.S. at 570); *see also Whitley v. Taylor Bean & Whitacker Mortg. Corp.,* 607 F. Supp. 2d 885, 896 (denying a motion to dismiss

---

[5] The Court is mindful that Plaintiffs have not had an opportunity to conduct first-party discovery and have received only limited third-party discovery regarding Variable's relationships with State Farm and its insurance agents, and, thus, Plaintiffs do not have access to all the details regarding those relationships.

where the plaintiff's allegations, taken as true, indicated that the relationship between two defendants was "more involved than simply bringing [a] borrower and lender together" and sufficiently raised an inference of an agency relationship). Plaintiffs have satisfied this pleading burden, and the Court, therefore, denies State Farm's motion to dismiss.[6]

### C. Allegations Against Nationwide and Farmers

The Court next considers whether the Consolidated Complaint contains sufficient allegations to plead a plausible basis for holding Nationwide or Farmers vicariously liable for Variable's misconduct. The Court concludes that it does not.

#### 1. Formal Agency

First, Plaintiffs fail to plead a plausible basis for holding Nationwide or Farmers liable under a formal agency theory. Plaintiffs argue that they have sufficiently alleged that Variable acted as a subagent or coagent of Nationwide and Farmers, but even viewing the facts in the light most favorable to Plaintiffs, the Consolidated Complaint fails to allege that Nationwide or Farmers authorized its insurance agents to appoint Variable as its subagent or coagent. To begin with, although Plaintiffs allege that Defendants' insurance agents were authorized to hire third parties to perform telemarketing (*see* Consol. Compl. ¶ 170), this allegation is conclusory and Plaintiffs plead no facts to support it. *See Sefton v. Toyota Motor Sales U.S.A.,* No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010) (dismissing claim against purported principal where the plaintiff failed to plead "allegations concerning an actual agency relationship beyond purely conclusory statements"). Plaintiffs' allegation that Defendants "cloaked their agents in apparent authority . . . to hire third parties such as Variable to perform telemarketing" (*see*

---

[6] Because the Court finds that Plaintiffs have sufficiently pled State Farm's liability under a subagency theory, it need not determine whether Plaintiffs have sufficiently pled a basis for holding State Farm liable under an apparent authority or ratification theory.

Consol. Compl. ¶ 194) fails for this same reason. Plaintiffs, moreover, base this allegation on the actions of State Farm, not Nationwide or Farmers. (*See id.* ¶¶ 190-93.)

Furthermore, although Plaintiffs allege that Defendants' insurance agents represented to Variable that they had permission to telemarket for Defendants, this representation does not establish a subagency or coagency relationship between Nationwide or Farmers and Variable. Even accepting as true Plaintiffs' allegation that Nationwide's and Farmers' insurance agents contracted with Variable, the contract does not state that the insurance agents have authority to appoint additional agents for telemarketing purposes—only that the insurance agents themselves had authority to advertise or telemarket on Nationwide's or Farmers' behalf. (*See* State Farm Mot. to Dismiss at Exs. A-B.) The contract, therefore, does not create a reasonable inference that Nationwide's or Farmers' insurance agents had actual authority to appoint Variable as Defendants' subagent or coagent. Nor does it support an inference that Nationwide's or Farmers' insurance agents had apparent authority to appoint Variable as Defendants' coagent or subagent, because apparent authority requires a manifestation from the *principal* (*i.e.,* Nationwide and Farmers), not the purported agent. *See Bridgeview Health Care Ctr., Ltd.,* 2013 WL 4495221, at *3; *see also* Restatement (Third) of Agency § 3.03 cmt. b ("Apparent authority is present only when a third party's belief is traceable to manifestations of the principal."); *Thomas,* 2014 WL 2959160, at *2 ("Apparent authority is inapplicable because it can only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied.'" (alterations in original)). In sum, Plaintiffs fail to plead a plausible basis for inferring that a formal agency relationship existed between Variable and either Nationwide or Farmers.

## 2.  Apparent Authority

Second, Plaintiffs fail to plead a plausible basis for holding Nationwide or Farmers liable under an apparent authority theory.  "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal."  Restatement (Third) of Agency § 2.03 cmt. c (2006).  Accordingly, to plead apparent authority, Plaintiffs must allege that they reasonably believed Variable called them as an agent of Nationwide or Farmers and that their belief is traceable to a manifestation of Variable's authority from Nationwide or Farmers, respectively.  *See id.*

Plaintiffs' apparent authority theory against Nationwide and Farmers fails because Plaintiffs do not allege that they believed Variable called them as an agent of Nationwide or Farmers.  Nor do Plaintiffs allege that such a belief would have been reasonable.  Several Plaintiffs allege that when they returned Variable's call, they heard a pre-recorded message stating that State Farm, Nationwide, and Farmers were competing for their business.  (*See* Consol. Compl. ¶¶ 64, 79, 87, 96.)  Nothing in this pre-recorded message, however, suggests that Variable was acting as an agent of Nationwide or Farmers.  To the contrary, the message suggests that Variable would help the caller shop around for the best offer from the competing Defendants.  Both Plaintiffs who spoke with Nationwide insurance agents allege that they heard this message before speaking with the Variable operator and Nationwide's insurance agent.[7] (*See id.* ¶¶ 87, 96.)  Neither of those Plaintiffs alleges that the Nationwide insurance agents with whom he spoke did or said anything to make him believe that Variable was Nationwide's agent.

---

[7] No Plaintiffs spoke to Farmers or a Farmers insurance agent as a result of Variable's calls.

Plaintiffs, therefore, have failed to allege a central requirement of their apparent authority theory—*i.e.,* that they reasonably believed Variable was Nationwide's or Farmers' agent.

Plaintiffs' apparent authority theory against Farmers, moreover, fails for the additional reason that Plaintiffs do not trace any belief they may have about an agency relationship between Farmers and Variable to a manifestation of Farmers (the principal), rather than a representation made by Variable (the agent). It is well-established that apparent authority must derive from the statements or actions of the alleged principal, not the alleged agent. *See Opp,* 231 F.3d at 1064 ("[O]nly the words or conduct of the alleged principal, not the alleged agent, establish the [actual or apparent] authority of an agent." (second alternation in original)); *Thomas,* 2014 WL 2959160, at *2 ("Apparent authority is inapplicable because it can only 'be established by proof of something said or done by the [alleged principal] . . . ." (alteration in original)); *see also* Restatement (Third) of Agency § 2.03 cmt. c ("An agent's success in misleading the third party as to the existence of actual authority does not itself make the principal accountable."). In other words, for apparent authority to exist, the principal "must communicate either directly or indirectly with the third party" or take some action that instills in the third party a reasonable belief that the actor had authority to act as the principal's agent. *See Bridgeview Health Care Ctr., Ltd. v. Clark,* No. 09 C 5601, 2013 WL 4495221, at *3 (N.D. Ill. Aug. 21, 2013). Accordingly, Plaintiffs cannot base their apparent authority theory solely on Variable's representations. Because none of Plaintiffs communicated directly or indirectly with Farmers or a local Farmers insurance agent, Plaintiffs have failed to plead a plausible basis for holding Farmers liable under an apparent authority theory. *See, e.g., Opp,* 231 F.3d at 1064; *see also* Restatement (Third) of Agency § 3.03 cmt. b; *Thomas v. Taco Bell,* 2014 WL 2959160, at *2.

Plaintiffs rely heavily on the FCC's *Dish Network* ruling to support their apparent authority argument. In *Dish Network*, the FCC provided two paragraphs of "guidance" containing "illustrative examples of evidence that may demonstrate that [a] telemarketer is [a] seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations." *See* FCC Ruling, 28 F.C.C.R. at 6592-93 ¶¶ 46-47. Plaintiffs' allegations regarding apparent authority closely track several of the examples the FCC provided. Plaintiffs allege, for example, that (1) Defendants "allow[ed] the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products," (2) Variable has the "ability . . . to enter consumer information into the seller's sales or customer systems," and (3) Variable had authority to use Defendants' trade name, trademark and service marks. (*See* Consol. Compl. ¶¶ 197, 199, 200 (quoting the FCC Ruling) (alterations in original).)

The FCC's "guidance" on this subject, however, is not binding on the Court and "has force only to the extent the [FCC] can persuade [the Court] to the same conclusion." *See Dish Network L.L.C. v. FCC,* 552 Fed. App'x at 1-2. Federal common-law principles of apparent authority impose liability on a principal for its alleged agent's actions even though the agent lacked authority to take such actions when a third party reasonably believed that the agent did, in fact, act within its authority. Neither the FCC nor Plaintiffs have provided a persuasive reason for the Court to deviate from established principles of federal agency law here. While it may be possible for a plaintiff to allege apparent authority through the examples the FCC provided in some cases, Plaintiffs' attempt to do so here fails for the reasons the Court explained above.

### 3. Ratification

Third, Plaintiffs fail to plead a plausible basis for holding Nationwide and Farmers liable under a ratification theory. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *See* Restatement (Third) of Agency § 4.01(1) (2006). "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2). A principal, however, "is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Id.* § 4.01 cmt. b. When an agent has two or more co-principals, each principal must ratify with knowledge of the agent's actions for those actions to bind the principal. *See id.* § 4.01 cmt. b; *id.* § 4.06 cmt. b.

Plaintiffs argue that Nationwide and Farmers ratified Variable's misconduct by knowingly accepting leads on prospective customers that Variable obtained through its unlawful telemarketing. (*See* Pl. Resp. Br. at 19-23); *see also* Restatement (Third) of Agency § 4.01 cmt. d ("[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction."). Plaintiffs' ratification theory against Farmers fails, however, because Plaintiffs do not allege that Variable provided any leads to Farmers or its insurance agents stemming from Variable's telemarketing calls to Plaintiffs. Indeed, none of the Plaintiffs allege that they spoke to or did business with Farmers or its insurance agents as a result of Variable's calls.

Plaintiffs' ratification theory also fails against Nationwide because Plaintiffs allege no facts supporting an inference that Nationwide knowingly accepted a benefit from Variable's calls to Plaintiffs. While Nationwide's insurance agents may have accepted leads from Variable,

Plaintiffs fail to plead that Nationwide itself—as opposed to its insurance agents—obtained any benefit from Variable's calls to Plaintiffs. Plaintiffs, therefore, fail to allege a plausible basis to hold Nationwide liable under a ratification theory. *See id. id.* § 4.01 cmt. b; *id.* § 4.06 cmt. b.

## CONCLUSION

For the reasons explained above, the Court grants Nationwide's and Farmers' motions to dismiss, but denies State Farm's motion to dismiss. While the Consolidated Complaint contains sufficient factual allegations to plead a plausible basis for holding State Farm vicariously liable for Variable's unlawful telemarketing calls, it fails to establish a plausible basis for holding Nationwide or Farmers liable for Variable's misconduct. The Court, therefore, dismisses Plaintiffs' claims against Nationwide and Farmers without prejudice.

**DATED: August 11, 2014**     **ENTERED**

AMY J. ST. EVE
United States District Court