# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER SMITH, SHAWN MATEJOVICH, JOSH FRIEDMAN, MERRILL PRIMACK, and MATT CLARK individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>   Defendant,<br><br>and<br><br>VARIABLE MARKETING, LLC, a/k/a INSTANT INSURANCE MARKETING a/k/a INSTANT INSURANCE TRANSFERS a/k/a AUTO INSURANCE PLACEMENT CENTER,<br><br>   Defendant. | **Case No. 1:13-cv-2018**<br><br><br>**FIRST AMENDED CONSOLIDATED MASTER CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jennifer Smith ("Smith"), Shawn Matejovich ("Matejovich"), Josh Friedman ("Friedman"), Merrill Primack ("Primack"), and Matt Clark ("Clark") (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## NATURE OF ACTION

1. This case involves a scheme by State Farm Mutual Automobile Insurance Company ("State Farm") (and by and through its agents) to market its services through use of a lead-generator marketing company in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2.     As described more fully below, State Farm has issued a high volume of insurance quotes – and made sales of products and services – derived through illegal telemarketing calls placed by defendant lead-generator marketing company Variable Marketing, LLC ("Variable").

3.     Plaintiffs bring this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of State Farm, together with its agents, and Variable Marketing, LLC (a/k/a Instant Insurance Marketing a/k/a Instant Insurance Transfers) ("Variable") (hereinafter referred to, along with State Farm, as "Defendants").

4.     State Farm delegated its marketing duties to and directed and conducted marketing through Variable and ratified the conduct of Variable by accepting the referrals and sales generated by Variable's calls on behalf of State Farm.  And, while State Farm has sought to minimize their direct involvement in Variable's illegal telemarketing calls on behalf of State Farm (presumably to avoid TCPA liability), State Farm nonetheless actively participated in the telemarketing calls through its own actions and the actions of its agents.

5.     Together, these Defendants contacted, and/or caused to be contacted on their behalf, Plaintiffs and Class Members on their cellular telephones without their prior express consent within the meaning of the TCPA.  Defendants violated the TCPA by contacting Plaintiffs and Class Members on their cellular telephones for non-emergency purposes via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without Plaintiffs' and Class Members' prior express consent within the meaning of the TCPA.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each

1194016.1

member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiffs allege a national class, which will result in at least one Class member from a different state.

7.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

8.     This Court has personal jurisdiction over State Farm because the company is licensed to and does conduct the business of insurance in the State of Illinois and because State Farm's corporate headquarters are located in Illinois. It therefore has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

9.     This Court has personal jurisdiction over Variable because the conduct at issue in this case occurred, among other locations, in Illinois.

10.     Venue is proper in the United States District Court for the Northern District of Illinois because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. *See* 28 U.S.C. § 1391.

## PARTIES

11.     Plaintiff Jennifer Smith is, and at all times mentioned herein was, an individual citizen of the State of Illinois, who resides in this District and whose cell phone number has been on the National Do Not Call Registry since approximately November 25, 2010.

12.     Plaintiff Shawn Matejovich is, and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in Galena, Ohio.

13.     Plaintiff Josh Friedman is, and at all times mentioned herein was, an individual citizen of the State of California.

1194016.1

14. Plaintiff Merrill Primack is, and at all times mentioned herein was, an individual citizen of the State of Illinois, who resides in this District.

15. Plaintiff Matt Clark is, and at all times mentioned herein was, an individual citizen of the State of Illinois, who resides in this District and whose cell phone number has been on the National Do Not Call Registry.

16. State Farm is the parent company of a series of interrelated insurance and financial services companies. State Farm is a Delaware corporation with corporate headquarters in Bloomington, Illinois.

17. Variable is a limited liability company formed under the laws of California with its corporate headquarters in Los Angeles, California.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

18. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

19. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

20. Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

21. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found,

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

22.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

23.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

24.     In that same ruling, the FCC reiterated that "a company on whose behalf a telephone call is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

25.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

26.     Variable made the autodialed and prerecorded message calls described herein "on behalf of" State Farm within the meaning of the 2008 FCC Declaratory Rulings and 47 U.S.C. § 227(c)(5).

27.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

---

[2] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).
[3] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 FCC Declaratory Ruling"), CG Docket No. 02-278, 23 FCC Rcd. 559, 564-65 (¶ 10) (2008).

1194016.1

liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

28.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC RCD. at 6586 (¶ 34).

29.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n.107.

30.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer may have apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

31.     State Farm is legally responsible for ensuring that Variable complied with the TCPA, even if State Farm did not itself make the calls.

---

[4] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

32.     State Farm knew (or reasonably should have known) that the Variable was violating the TCPA on State Farm's behalf and failed to take effective steps within their power to force the telemarketer to cease that conduct.

33.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## FACTUAL ALLEGATIONS

### Plaintiff Smith

34.     Plaintiff Smith is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

35.     Smith is not a State Farm customer, and has never provided her cell phone number to State Farm.  Smith has never provided her cell phone number to any other entity whereby State Farm became privileged to make telemarketing calls to Smith's cell phone.

36.     On January 25, 2013, Smith received a telephone call from the number 773-897-6086.

37.     When Smith answered the call, a prerecorded message played that told Smith that she could save on her auto insurance. Smith hung up the phone.

38.     Smith recognized the call as using an automated telephone dialing system because there was a significant delay after Smith answered before the recorded message began.  In addition, the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

1194016.1

39.     Smith called 773-897-6086 later that day in an effort to identify the entities responsible for the illegal telemarketing call. The operator who answered told Smith that the call had been placed in order to sell State Farm automobile insurance, and that the call would be automatically transferred to another State Farm salesperson once Smith provided more personal information, which Smith did not do.

40.     Variable confirmed that the January 25, 2013, call was made for purposes of attempting to sell State Farm insurance. Upon information and belief, this statement was true: had Smith indicated an interest in car insurance, she would have been transferred to a State Farm agent, who would have worked with State Farm to issue a quote for insurance to Smith.

41.     Following a subpoena regarding the January 25, 2013 call to Smith, Variable indicated that it used the automated telephone dialing system of a company called Ytel, Inc. to make many of the calls at issue in this case, including the January 25, 2013 call to Smith.  A different, but similar, predictive dialing system was used to make other calls, including the call made to Smith in August 2013.

42.     On August 12, 2013, Smith received another call from Variable, similar to the one she received on January 25, 2013.

43.     The August 12, 2013 call was also made by Variable, with the purpose of attempting to sell State Farm insurance.

44.     Smith recognized the call as using an automated telephone dialing system because there was a significant delay after Plaintiff answered before the prerecorded message began.  In addition, the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

45.     Plaintiff responded to various questions posed by the Variable operator.

1194016.1

46.     Variable transferred the call to a Chicago-area authorized State Farm insurance agent's office.

47.     In addition to transferring the telephone call, Variable transferred the demographic and insurance information it had collected from Smith, to the State Farm agent.

48.     The State Farm agent was David Olchowka. State Farm holds out Mr. Olchowka, and its other agents as being authorized to speak on its behalf. http://www.statefarm.com/agent/US/IL/Elk-Grove-Village/David-Olchowka-80HHV474000.

49.     Mr. Olchowka's office used the information received from Variable, and took additional information from Smith, and entered it directly into State Farm's computer system.

50.     Either during the call, or within a few minutes after, State Farm issued a quotation for automobile and homeowner's insurance to Smith.

51.     State Farm emailed the quote directly to Smith. This quote from the defendant was precipitated by Variable's call. State Farm therefore actively participated in the telemarketing scheme that is the subject of this case.

52.     Smith did not provide prior express consent to receive these calls.

**Plaintiff Matejovich**

53.     Plaintiff Matejovich is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

54.     On August 9, 2013, Matejovich received a telephone call to his cell phone from telephone number (614) 656-4949. The 614 area code is Matejovich's home area code. The caller left a pre-recorded message on Matejovich's voicemail informing him of an opportunity to receive an automobile insurance quote.

55.     On information and belief, Variable placed this call using a 614 area code telephone number in order to make the call appear to be coming from Matejovich's home area.

1194016.1

56.     When Matejovich returned the call, he heard a pre-recorded voice message.

57.     Matejovich remained on the line, and was eventually connected to a live operator. This operator did not disclose what organization or entity she worked for or represented.

58.     This operator took down personal information from Matejovich, such as his name, address, date of birth, type of vehicles owned, and driving history.

59.     The operator informed Matejovich that he could receive a quote from State Farm for his car insurance needs, and that he would be connected to a State Farm agent for that quote.

60.     Plaintiff was then connected with Jimmy McDowall, who identified himself as a State Farm agent working in the office of Shane Tressler, located at 6075 Chandler Court, Westerville, Ohio.  Mr. McDowall asked Matejovich to confirm information that he had provided to the operator previously.  Mr. McDowall confirmed that his agency worked exclusively with State Farm, and that a visitor to his office would know they were in the right place "when you see the big State Farm sign out front."

61.     Matejovich did not provide prior express consent to receive this call.

**Plaintiff Primack**

62.     Plaintiff Primack is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

63.     On or about September 13, 2013, Primack received a recorded call on his cell phone from 312-854-0140, seeking to sell car insurance.

64.     Primack returned the call and was placed in contact with Freddie Villacci, Jr Insurance Agency, Inc., which tried to sell Primack State Farm automobile insurance.

65.     Primack was told that the initial calls were placed by a telemarketer in California, described as the "Auto Insurance Placement Center," that had been hired by Freddie Villacci, Jr Insurance Agency, Inc.

- 10 -

66.     On information and belief, Freddie Villacci, as the sole officer and owner of the Freddie Villacci, Jr Insurance Agency, Inc., authorized, caused and directed the placement of the telemarketing calls to his agency of persons who appear to be interested.

67.     Freddie Villacci, Jr., and Freddie Villacci, Jr. Insurance Agency, Inc., are agents of State Farm.  The duties of Freddie Villacci, Jr Insurance Agency, Inc. and Freddie Villacci, as State Farm agents, include marketing and selling State Farm insurance products.

68.     Primack did not provide prior express consent to receive this call.

**Plaintiff Friedman**

69.     Plaintiff Friedman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

70.     On or about June 19, 2013, at approximately 4:07 p.m., Friedman received a telephone call to his cell phone from telephone number (323) 679-2214 via an automatic telephone dialing system and using an artificial or prerecorded voice.

71.     Upon calling the number back, a prerecorded message played.

72.     Friedman did not provide prior express consent to receive this call.

**Plaintiff Clark**

73.     Plaintiff Clark is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

74.     During August 2013, Clark received recorded calls on his cell phone seeking to sell car insurance from Variable at 312-854-0140, the same number used to call Plaintiff Primack.

75.     Clark did not provide prior express consent to receive these calls.

**<u>Defendants</u>**

76.     State Farm is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

77.     Variable is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39)

78.     Upon information and belief, State Farm oversees and controls its actions generally, but particularly with respect to telemarketing.

79.     Upon information and belief, State Farm directly solicited business using Variable and authorized their agents to solicit business using Variable.

**<u>The Defendants' Marketing Scheme</u>**

80.     State Farm requires its insurance agents to represent the company to consumers, including non-customers.

81.     State Farm knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

82.     After a prerecorded message, calls by Variable on behalf of State Farm were transferred to a live Variable representative and then forwarded on to an authorized insurance agent of that State Farm.

83.     During the phone call, an insurance agent took Plaintiffs' and Class Members' demographic and other information, and entered it directly into the State Farm's computer system.

84.     Either during the phone call, or a few minutes after this telephone call (but arising from the call), State Farm issued a quotation for auto insurance to Plaintiffs and Class Members.

85.     For example, State Farm sent at least two emails directly to Smith, along with a quotation for homeowners insurance. One such email is attached as <u>Exhibit A</u>.

- 12 -

86.     State Farm knew or should have known that the quotations it issued arose from autodialed and prerecorded calls made on their behalf, through Variable.

87.     State Farm has concealed its knowledge and participation in these illegal telemarketing calls to avoid liability.

88.     State Farm maintains control over its agents' actions, both as to telemarketing and other activities.

89.     State Farm directs the content of its agents' advertising.

90.     Upon information and belief, State Farm retains absolute and unilateral control over the content of its advertising.

91.     For example, State Farm requires that all advertising that directly or indirectly identifies State Farm, such as call scripts, must be approved prior to use by its agents.

92.     State Farm sometimes helps pay for its agents' advertising.

93.     State Farm also issues to its agents manuals, forms, records, computer and electronic files, equipment and other materials, supplies and services, which agents are expected and directed to use and follow.

94.     State Farm requires use of these materials and information and maintains strict controls over the information's use and dissemination. State Farm retains ownership of these materials.

95.      State Farm directs the geographical area for which its agents may take credit and earn fees.

96.     State Farm specifically retains the right to place whatever limitations it pleases upon what applications for insurance its agents are permitted to submit to State Farm.

97.     At all relevant times, State Farm had the right to instruct each and every one of its agents not to submit applications for insurance that were obtained through telemarketing.

98.     State Farm expressly and publically authorizes its insurance agents to solicit new customers through the use of telephones.

99.     State Farm filed a petition with the Federal Communications Commission in 2005, in which it announced to the public that its agents perform telemarketing on its behalf.

100.     State Farm suggested to several of its agents that it would be a good idea to call Variable owner Jeffrey Schaffer to help advertise the State Farm product.

101.     State Farm employs certain persons to advise its agents as to how to better solicit potential customers. For example, Kathy Riley is one such person in the Los Angeles, California area.  Ms. Riley is a "Sales Leader;" a direct employee of State Farm. Ms. Riley's responsibilities at State Farm are to consult with State Farm agents on best practices to grow their agencies, recruit new agents for opportunities in an assigned market area and help with developing agents' skill level on sales systems around State Farm's vast portfolio of products. Ms. Riley hired Variable on or about July 13, 2013, to make telemarketing calls on behalf of State Farm. Ms. Riley again hired Variable to make telemarketing calls on behalf of State Farm on August 12, 2013, the same date Smith received her second call. The IP address for the computers Ms. Riley used to hire Variable and sign her contract with Variable are assigned to State Farm. Ms. Riley was authorized to hire Variable on behalf of State Farm. Either Ms. Riley or another authorized State Farm employee made at least one communication to several State Farm agents, suggesting that telemarketing through Variable or its principal Jeff Schaffer, was a good way to obtain new State Farm customers.

102.     In other words, State Farm had the right to instruct its agents to use Variable.

- 14 -

103.     Pursuant to the above policies, practices and procedures, more than forty State Farm agents from Illinois and many more State Farm agents throughout the country hired telemarketing company Variable in 2012 and 2013 to make autodialed and prerecorded calls to non-customers for the purpose of selling State Farm insurance policies. Upon information and belief, dozens of other authorized State Farm agents around the country similarly hired Variable over the past four years.

104.     Each of these State Farm agents separately believed and warranted to Variable that they had State Farm's permission to advertise and telemarket through Variable on State Farm's behalf. These agents' belief that they were so authorized was reasonable under the circumstances, and upon information and belief, was correct.

105.     Upon information and belief, Variable keeps or kept track of the leads that it refers to State Farm and its agents, through Salesforce.com, Inc., and/or a similar marketing contact management solution.

106.     At all times relevant, State Farm had absolute control over whether, and under what circumstances, they issue an insurance quote to a prospective customer.

107.     State Farm has known that its agents were engaged in telemarketing that resulted in sales of insurance since long before Variable began making calls.

108.     Upon information and belief, State Farm knew that Variable, specifically, was making such calls before this lawsuit was initiated.

109.     Even if State Farm did not know about Variable's calls before suit was filed, it became aware of such through this lawsuit, but took no or inadequate steps to prevent future violations.

110. State Farm have also taken little or no action to curb the illegal telemarketing that is the subject of this case, and certainly have taken insufficient steps, as the calls continued in spite of the pendency of this case.

111. Indeed, despite its knowledge of Variable's calls, State Farm has continued to issue insurance quotes during, and arising out of, telephone calls that began as prerecorded and autodialed telemarketing calls placed by Variable on its behalf.

112. From at least January 2013 to September 2013, Variable autodialed Plaintiffs' cellular telephones to attempt to sell State Farm insurance products.

113. Upon information and belief, and based upon conversations with Variable's lawyers, only in around August or September 2013, did State Farm contact *some* agents and asked them to stop using Variable to telemarket. (The agents that State Farm contacted complied with this request and fired Variable.)

**The Court's Order**

114. In the Court's September 23, 2013 Order (*see* Dkt. No. 50) dismissing the Amended Complaint without prejudice and granting leave to file a Second Amended Complaint, the Court indicated that Plaintiff Smith must plead more facts regarding State Farm's liability for the calls challenged in this case. Plaintiffs did so in their Consolidated Master Class Action Complaint for Damages and Injunctive Relief. Following the Court's August 11, 2104 Memorandum Opinion and Order (Dkt. No. 146), Plaintiffs reiterate the following three theories:[5]

---

[5] Of course, these facts were developed without the benefit of first-party discovery, and some documents subpoenaed from third party agents were not produced on the theory that State Farm "owns" those documents, instead of the agents. *See also* Dkt. No. 110 (deferring subpoena responses until 30 days after Court rules on any motions to dismiss). More facts will become

*Footnote continued on next page*

1194016.1

    a.   Subagency/Formal Agency/Actual Authority;

    b.   Apparent Authority; and

    c.   Ratification.

**Subagency/Formal Agency/Actual Authority**

115.    With regard to torts committed by an agent, the Restatement provides:

§ 7.04 Agent Acts With Actual Authority

A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and

(1) the agent's conduct is tortious, or

(2) the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

116.    The purpose of State Farm's agents is to serve State Farm by soliciting applications for insurance from consumers on behalf of State Farm.

117.    Respective insurance agents had the actual authority of State Farm to make the complained-of calls.

118.    State Farm's agents were, and are, authorized to hire third parties, including Variable, to perform marketing, including telemarketing.

119.    Indeed, the standard contract entered into between Variable and State Farm contains a warranty that the agencies had permission to hire Variable to make calls on behalf of State Farm.

---

*Footnote continued from previous page*
apparent through first and further third-party discovery. Also, some facts in this complaint support multiple theories of liability.

1194016.1

120.     Upon information and belief, this warranty represented the insurance agents' understanding of their authority, and was true:  State Farm provided its agents permission to perform the telemarketing that is the subject of this lawsuit.

121.     State Farm and its agents has contracted with Variable to employ an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to contact consumers such as Plaintiffs.  At least some of those calls, such as all the calls to Plaintiffs, are made to cellular telephones.

122.     State Farm and its agents have contracted with Variable to employ "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) to communicate with consumers such as Plaintiffs on their cellular telephone.

123.     Each of the telephone numbers that Variable, acting on behalf of State Farm, called to contact Plaintiffs with an "artificial or prerecorded voice" made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. §  227(b)(1)(A)(iii).

124.     Plaintiffs did not provide their "prior express consent" allowing Variable or State Farm to place telephone calls to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

125.     Variable, acting on behalf of State Farm, did not make telephone calls to Plaintiffs' cellular phones "for emergency purposes" utilizing an "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

126. Variable, acting on behalf of State Farm, did not employ an "automatic telephone dialing system," to make telephone calls to Plaintiffs' cellular phones "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

127. The calls made by Variable, acting on behalf of State Farm, to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" for non-emergency purposes and in the absence of Plaintiffs' prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

128. Likewise, the calls made by Variable, acting on behalf of State Farm, to Plaintiffs' cellular phones placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiffs' prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

129. Agents that hired Variable to make calls on behalf of State Farm also directed the quality, timing, and volume of Variable's predictive dialer calls and leads, so as to ensure that operators were available to make the sales pitch for State Farm.

130. Under the TCPA, the burden is on the Defendants to demonstrate that Plaintiffs and Class Members provided prior express consent within the meaning of the statute.[6]

131. The Defendants acted willfully, knowingly, and without regard to the TCPA when they caused the calls described above to be made.

132. Because of the above facts, and additional facts that Plaintiffs may learn through discovery, Variable was an authorized subagent of State Farm when it made the calls to Plaintiffs and Class Members, and State Farm is liable for such calls.

133. In the alternative, because of the above facts, and additional facts that Plaintiffs may learn through discovery, Variable was an authorized co-agent of each State Farm when it made the calls to Plaintiffs and Class Members, and is liable for such calls.

---

[6] *See 2008 FCC Declaratory Ruling*, 23 FCC Rcd. at 565 (¶ 10).

1194016.1

134.    By orchestrating the termination of Variable, State Farm evidenced its ability to control its sub-agent.

**Apparent Authority**

135.    State Farm gave their agents substantial power to affect their legal relations with third parties, including Variable and consumers generally.

136.    State Farm cloaked its agents with apparent authority to enter into advertising arrangements on its behalf, including lead generation telemarketing through Variable.

137.    For example, State Farm filed a formal petition with the Federal Communications Commission in 2005 on behalf of its agents, asking for a declaratory ruling under the TCPA.

138.    The petition asked that the Commission issue a ruling that State Farm could "graft" its Existing Business Relationship exemption to the National Do Not Call Registry prohibitions, so as to permit its agents to make telemarketing calls, just like State Farm could. State Farm's petition was granted. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of State Farm for Clarification and Declaratory Ruling,* CG Docket No. 02-278, Declaratory Ruling, 20 FCC Rcd. 13664, 13666-13668 (2005).

139.    The FCC, however, explicitly warned State Farm that State Farm's agents would otherwise[7] have to comply with the TCPA, and that State Farm would be liable if its agents engaged in telemarketing in violation of the TCPA:

> We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call.

---

[7] The EBR exemption does not allow a telemarketer to contact a consumer on their cell phone via auto-dialer; it does not allow a telemarketer to contact a consumer on their cell phone via pre-recorded message; it does not permit a telemarketer to contact a consumer whose phone number is listed on the DNC Registry.

1194016.1

*Id.* at 13667 (¶ 7).

140. The significance of the petition, and the ruling, was that State Farm placed the public on notice that its agents would be making calls on its behalf, and that calls made by State Farm agents would be treated under the TCPA just as if State Farm made the calls.

141. State Farm cloaked their agents in apparent authority specifically as to legal relations between their agents and the public, and to hire third parties such as Variable to perform telemarketing, sufficient to support vicarious liability pursuant to the TCPA.

142. State Farm agents understand that they are permitted to enter into telemarketing contracts on behalf of State Farm.

143. Variable's standard contract, which was signed by more than forty Illinois State Farm agents and many more State Farm agents throughout the country, warrants that the agents have authority to telemarket on behalf of State Farm. Upon information and belief, Variable made such autodialed and prerecorded calls for State Farm, through such contracts with at least hundreds of State Farm agents nationwide.

144. Accordingly, the artificial voice used by Variable at the beginning of some of the calls informed customers that "State Farm" would be making automobile insurance quotes to customers who stayed on the line. Thus, Variable, upon information and belief, had authority to use State Farm's "trade name, trademark and service mark[s]," as discussed in the May 2013 FCC Ruling. As such, Variable is an apparent agent of State Farm.

145. Upon information and belief, State Farm's contracts with Variable call for responding callers to be directed to specific local insurance agents of State Farm based on predetermined criteria, such the customer's geographic and/or customer profile. Thus, Smith, Matejovich, and Primack were directed to State Farm agents.

146.    By providing information to Variable in order that Variable could properly route responding customers to the proper agents, State Farm "allow[ed] the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products," as discussed in the May 2013 FCC Ruling.  As such, Variable is an apparent agent of State Farm.

147.    Variable transferred customer information, including the Plaintiffs' information, directly to local insurance agents.  Thus, Variable has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, Variable is an apparent agent of State Farm.

148.    By hiring Variable to make calls on behalf of its agents to generate sales leads, State Farm "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency. Similarly, by accepting these contacts, Variable "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of State Farm, as described in the Restatement (Third) of Agency.  As such, Variable is an agent of State Farm.

149.    Variable was reasonable in believing that the dozens of State Farm agents it worked with had authority to bind State Farm because Variable knew that its calls were resulting in actual quotes for, and sales of, State Farm's insurance.

150.    These quotes and sales were being performed by State Farm itself.

**Ratification**

151.    In the alternative, State Farm and its agents repeatedly ratified Variable's illegal marketing scheme by knowingly accepting the benefits of Variable's activities when they

accepted leads from Variable.  These leads provided State Farm and its agents with additional business prospects.

152.    Upon information and belief, State Farm and its agents were aware of Variable's marketing scheme and that Variable was making calls using an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" when they accepted the marketing leads from Variable.

153.    For example, even many months after Smith filed her lawsuit, State Farm issued formal quotation for insurance to Smith and other Class Members, arising directly from contact initiated through Variable calls.

154.    The second Smith call was one of millions of calls that were placed by Variable in order to sell State Farm's insurance policies. The quote that was issued to Smith was one of thousands that was issued during the past four years, on behalf of State Farm.  The violations alleged herein are ongoing and continuous, just as the marketing scheme explained herein has been.

155.    In issuing quotes for insurance as part of this marketing scheme, State Farm manifested its assent to the public, Variable and its agents, that they were each a knowing participant in Variable and its agents' telemarketing complained of herein.

156.    In participating in these calls, State Farm manifested an intent to accept the benefit of Variable's calling campaigns; including calls that were made by Variable on its behalf but that did not result in an insurance quote.[8]

---

[8] It is the purpose of the call that is relevant for TCPA purposes, rather than what is actually said or how far into the telemarketing script the caller goes. *See Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012) (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14098 ¶141 136, 2003 WL 21517853 (F.C.C. July 3, 2003)).

1194016.1

157.    Even if State Farm did not realize that specific insurance quotes were generated through Variable, State Farm made a conscious choice to issue quotes for insurance without adequate knowledge of the source of the quotes.

158.    Because it accepted the calls' benefits, State Farm cannot avoid the burden associated with its ratification.

159.    Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

> Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6586, n 102.

160.    In its FCC petition, State Farm asked for permission for its agents to receive the benefit of State Farm's "Existing Business Relationship" with existing customers.

161.    State Farm asked for this permission because "Existing Business Relationship" is an affirmative defense to certain TCPA claims.

162.    In doing so, State Farm ratified its own liability for TCPA violations arising out of calls where any Existing Business Relationship might be at issue, such as with calls at issue in this case.

163.    In other words, it would be inequitable for State Farm agents to be afforded State

Farm's EBR as a defense, but for State Farm not to be liable for calls that run afoul of that

defense.

164.    The benefits of the relationship State Farm requested from the FCC must be

accompanied by the burden.[9]

## CLASS ACTION ALLEGATIONS

165.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if

fully stated herein.

166.    Plaintiffs bring this action individually and on behalf of all other persons similarly

situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

167.    Plaintiffs propose the following Class definition, subject to amendment as

appropriate:

> All persons within the United States who received a non-emergency telephone
> call from Variable, placed while Variable was acting on behalf of State Farm, to a
> cellular telephone through the use of an automatic telephone dialing system or an
> artificial or prerecorded voice.

Collectively, all these persons will be referred to as "Class members."  Plaintiffs represent, and

are members of, the Class.

---

[9] The FCC also emphasized in its Order that due to the behind-the-scenes nature of relationships
between sellers and telemarketers, Courts should consider affording TCPA plaintiffs discovery to
establish the basis for vicarious liability for a call which on its face promotes the seller's
products or service:  "At a minimum, evidence of these kinds of relationships—which consumers
may acquire through discovery, if they are not independently privy to such information— should
be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer
would not sensibly assume that the telemarketer was acting as the seller's authorized agent."
*May 2013 FCC Ruling*, 28 FCC Rcd at 6592-593 (¶ 46).  This complaint has been drafted
without the benefit of discovery from State Farm.

168.    Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

169.    Plaintiffs do not know the exact number of members in the Class, but Plaintiffs reasonably believe Class members number, at minimum, in the thousands.

170.    Plaintiffs and all members of the Class have been harmed by the acts of the Defendants.

171.    This Class Action Complaint seeks injunctive relief and money damages.

172.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

173.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

174.    Further, the Class can be identified easily through records maintained by State Farm and/or its telemarketing agents.

175.    There are well defined, nearly identical, questions of law and fact affecting all parties.

176.    The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

177.    Such common questions of law and fact include, but are not limited to, the following:

a.      Whether Variable, acting on behalf of State Farm, used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

- 26 -

1194016.1

b.      Whether Variable, acting on behalf of State Farm, used an artificial or prerecorded voice in its non-emergency calls to Class members' cell phones;

c.      Whether the Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

d.      Whether the Defendants' conduct was knowing and/or willful;

e.      Whether the Defendants are liable for statutory damages; and

f.      Whether the Defendants should be enjoined from engaging in such conduct in the future.

178.    As persons who received non-emergency telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without providing their prior express consent to the Defendants within the meaning of the TCPA, Plaintiffs assert claims that are typical of each Class member who also received such phone calls.

179.    Further, Plaintiffs will fairly and adequately represent and protect the interests of the Class.

180.    Plaintiffs have no interests which are antagonistic to any member of the Class.

181.    Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

182.    A class action is the superior method for the fair and efficient adjudication of this controversy.

183.    Class wide relief is essential to compel the Defendants to comply with the TCPA.

184.    The interest of the Class members in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small,

and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

185.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

186.    Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

187.    Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §  227 *ET SEQ*.

### (Against all Defendants)

188.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

189.    The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. §  227 *et seq.*

190.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

191.     Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

192.     Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

**SECOND COUNT**

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.***

**(Against all Defendants)**

193.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

194.     The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

195.     As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

196.     Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

197.     Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

## THIRD COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

### (Against All Defendants)

198.    Plaintiffs Smith and Clark incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

199.    The foregoing acts and omissions by Defendants constitute violations of 47 U.S.C. § 227(c), which prohibits initiating calls to a person's residential or cellular telephone for telemarketing purposes, where such number is listed on the Do Not Call Registry.  *See* 47 C.F.R. § 64.1200(c)(2). A private right of action attaches where there is more than one call during a twelve month period. 47 U.S.C. § 227(c)(5).

200.    As a result of the Defendants' violations of 47 U.S.C. §  227 *et seq.*, Plaintiffs Smith and Clark and the Class Members on the Do Not Call Registry are entitled to damages for each and every call in violation of the statute.  *See* 47 U.S.C. § 227(c)(5).

201.    Plaintiffs Smith and Clark and Class Members on the Do Not Call Registry are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.  *See id.*

202.    Plaintiffs and Class Members on the Do Not Call Registry are also entitled to an award of attorneys' fees and costs as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against the Defendants:

A.    Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B.      As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a group;

C.      As a result of Defendants' statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a whole;

D.      As a result of Defendants' violations of 47 C.F.R. § 64.1200(c), Plaintiffs Smith and Clark seek for themselves and the other Class members whose telephone numbers were called at least twice within any 12-month period despite being registered with the National Do Not Call Registry, up to $500 in statutory damages for each and every call that violated such regulations, or—where such regulations were willfully or knowingly violated—up to $1,500 for each and every call in violation, to be paid jointly and severally by the Defendants as a group

E.      An award of attorneys' fees and costs to counsel for Plaintiffs and the Class, to be paid jointly and severally by the Defendants as a whole as permitted by law;

F.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

G.      Such other relief as the Court deems just and proper.

1194016.1

Dated:  September 4, 2014          By:  _/s/ Jonathan D. Selbin_____
                                Jonathan D. Selbin

                       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice*)
Email:  jselbin@lchb.com
Douglas I. Cuthbertson (*pro hac vice*)
Email: dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Lead Counsel for Plaintiffs and the Proposed Class*

Dated:  September 4, 2014          By:  ___/s/ Alexander H. Burke_____
                                Alexander H. Burke

BURKE LAW OFFICES, LLC
Alexander H. Burke
Email: ABurke@BurkeLawLLC.com
155 N. Michigan Avenue, Suite 9020
Chicago, IL  60601
Telephone:  (312) 729-5288
Facsimile:   (312) 729-5289

*Liaison Counsel for Plaintiffs and the Proposed Class*

Dated:  September 4, 2014          By:  ___/s/ Edward A. Broderick_____
                                            Edward A. Broderick

                                    Edward A. Broderick (pro hac vice)
                                    ted@broderick-law.com
                                    Anthony Paronich (pro hac vice)
                                    anthony@broderick-law.com
                                    Broderick Law, P.C.
                                    125 Summer St., Suite 1030
                                    Boston, MA 02360
                                    Telephone:  (508) 221-1510

                                    Matthew McCue (pro hac vice)
                                    Email: mmccue@massattorneys.net
                                    Law Office Of Matthew McCue
                                    1 South Ave, Suite 3
                                    Natick, MA 01760
                                    Telephone:  (508) 655-1415

                                    *Additional Attorneys for Plaintiff Jennifer Smith*

Dated:  September 4, 2014          By:  _/s/ Matthew R. Wilson_____
                                            Matthew R. Wilson

                                    MEYER WILSON CO., LPA
                                    Matthew R. Wilson (Ohio State Bar No. 0072925;
                                    admitted to the N.D. Ill. general bar)
                                    Email:  mwilson@meyerwilson.com
                                    Michael J. Boyle, Jr. (Ohio State Bar No. 0091162; N.D.
                                    Ill. general bar admission pending)
                                    Email:  mboyle@meyerwilson.com
                                    1320 Dublin Road, Ste. 100
                                    Columbus, Ohio 43215
                                    Telephone:  (614) 224-6000
                                    Facsimile:  (614) 224-6066

                                    MAROVITCH LAW FIRM, LLC
                                    Daniel J. Marovitch
                                    Email: dmarovitch@marovitchlaw.com
                                    233 S. Wacker Dr., 84th Floor,
                                    Chicago, IL 60606
                                    Telephone: (312) 533-1605
                                    Facsimile:  (312) 488-4206

                                    *Additional Attorneys for Plaintiffs Shawn Matejovich,*
                                    *Stuart Benson, and Brennan Landy*

Dated:  September 4, 2014         By: _____/s/ Abbas Kazerounian_____
                                           Abbas Kazerounian

                                  KAZEROUNI LAW GROUP, APC
                                  Abbas Kazerounian, Esq.
                                  ak@kazlg.com
                                  Jason A. Ibey, Esq.
                                  Jason@kazlg.com
                                  2700 N. Main Street, Suite 1000
                                  Santa Ana, California 92705
                                  Telephone: (800) 400-6808
                                  Facsimile: (800) 520-5523

                                  HYDE & SWIGART
                                  Joshua B. Swigart, Esq.
                                  josh@westcoastlitigation.com
                                  2221 Camino Del Rio South, Suite 101
                                  San Diego, CA 92108
                                  Telephone: (619) 233-7770
                                  Facsimile: (619) 297-1022

                                  *Additional Attorneys for Plaintiff Josh Friedman*

Dated:  September 4, 2014         By: _____/s/ Dulijaza Clark_____
                                           Dulijaza Clark

                                  Daniel A. Edelman
                                  Cathleen M. Combs
                                  James O. Latturner
                                  Dulijaza Clark
                                  EDELMAN, COMBS, LATTURNER & GOODWIN,
                                  LLC
                                  120 S. LaSalle Street, Suite 1800
                                  Chicago, Illinois  60603-3593
                                  (312) 739-4200
                                  (312) 419-0379 (FA297-1022

                                  *Additional Attorneys for Plaintiffs Merrill Primack and
                                  Matt Clark*

- 34 -

1194016.1