**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER SMITH, et al., | ) | |
| | ) | Case No. 1:13-cv-02018 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | Hon. Judge Amy J. St. Eve |
| INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CLASS COUNSEL'S AMENDED MOTION FOR ATTORNEYS' FEES, COSTS, AND
<u>SERVICE AWARDS AND MEMORANDUM IN SUPPORT</u>**

1320349.8

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND AND SETTLEMENT ............................................. 2

    A.    Litigation History............................................................... 2

    B.    Settlement ........................................................................... 5

III.   LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS ....................................... 6

IV.   ARGUMENT ...................................................................................... 8

    A.    The Court Should Calculate Fees as a "Percentage of the Fund." .......................... 8

    B.    Counsel's Request Is Within the "Market Rate." ................................................. 9

        1.    The Requested Fee Comports with the Contracts Between Plaintiffs and Counsel. ............................................................ 11

        2.    The Requested Fee Reflects the Fees Awarded in Other Settlements. ........................................................................... 12

        3.    Other Factors Support the Requested Fee................................ 14

            a.    Risk of Nonpayment ................................................... 14

            b.    Quality of Performance and Work Invested ............................... 19

            c.    Stakes of the Case ...................................................... 21

    C.    The Service Award to the Class Representatives Should Be Approved............. 22

    D.    Class Counsel's Costs and Expenses Should Be Approved. ............................... 23

V.    CONCLUSION.................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ...................................................... 13

*Allen v. JPMorgan Chase Bank, NA*,
No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93) ............................................................ 13

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ................................................................................................... 7

*Balschmiter v. TD Auto Fin. LLC*,
303 F.R.D. 508 (E.D. Wis. 2014) .......................................................................................... 17

*Benzion v. Vivint, Inc.*,
No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201) ........................................................ 23

*Bickel v. Sheriff of Whitley Cnty.*,
No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) ................................................... 14

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ............................................................................................ 17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................................. 6

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ............................................................................................................. 18

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) ........................................................... 12

*CE Design, Ltd. v. Exterior Sys., Inc.*,
No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) .................................................................. 12

*City of Greenville v. Syngenta Corp Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) ..................................................................................... 12

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .......................................................................................... 22, 23

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ............................................... 8, 13

*Cummings v. Sallie Mae*,
No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) ............................................................ 12

*Desai v. ADT Sec. Servs., Inc.*,
No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) .......................................................... 12

## TABLE OF AUTHORITIES
### (continued)

Page

*Donaca v. Dish Network, LLC.*,
   303 F.R.D. 390 (D. Colo. 2014) ................................................................ 19

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ................................................................ 8, 15

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146) ............................ 12

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .................................................................. 11

*Gaskill v. Gordon*,
   942 F. Supp. 382 (N.D. Ill. 1996) ............................................................ 9

*Gehrich v. Chase Bank USA, N.A.*,
   No. 12-5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ...................... 13

*Green v. DirecTV, Inc.*,
   No. 10-117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ...................... 18

*Gusman v. Comcast Corp.*,
   298 F.R.D. 592 (S.D. Cal. 2014) ............................................................ 17

*Hanley v. Fifth Third Bank*,
   No. 12-1612 (N.D. Ill. Dec. 23, 2013) (Dkt. No. 87) ............................ 12

*Heekin v. Anthem, Inc.*,
   No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ................ 23

*Hinman v. M&M Rental Ctr., Inc.*,
   No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) ............................ 12

*Holtzman v. CCH, Inc.*,
   No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. No. 33).......................... 12

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) .................................................. 18

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................ 8, 13, 19

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .................................................................... 9

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ...................................................... 14

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Joint Pet. Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*,
  CG Docket No. 11-50 (May 9, 2013) ................................................................. 16

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................. 21

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ................................................................. 10, 11, 15, 22

*In re Synthroid Mktg. Litig.*,
  325 F.3d 974 (7th Cir. 2003) ................................................................. 8

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ................................................................. 9

*Jamison v. First Credit Servs.*,
  290 F.R.D. 92 (N.D. Ill. 2013) ................................................................. 17, 18

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ................................................................. 15

*Kirchoff v. Flynn*,
  786 F.2d 320, 322-23 (7th Cir. 1986) ................................................................. 11

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ................................................................. 8, 10, 13, 14

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ................................................................. 11

*Martin v. Dun & Bradstreet, Inc.*,
  No. 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) ................................................................. 12

*McCue v. MB Fin., Inc.*,
  No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ................................................................. 13

*Paldo Sign and Display Co. v. Topsail Sportswear, Inc.*,
  No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) ................................................................. 12

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ................................................................. 1, 9

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
  No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ................................................................. 11

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
  No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ................................................................. 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*,
    No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) ............................................................... 12

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) ........................................................................................................ 15

*Spano v. The Boeing Co.*,
    No. 06-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................................ 13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................................................. 18

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .......................................................................................... 6, 14, 15, 19

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ................................................................................................. 11, 12

*Wilkins v. HSBC Bank Nev., N.A.*,
    No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ......................................................... 13

*Will v. Gen. Dynamics Corp.*,
    No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) .................................................. 12, 23

*Zolkos v. Scriptfleet, Inc.*,
    No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ..................................................... 13

**Statutes**

47 U.S.C. § 227 ............................................................................................................................... 1, 2

**Other Authorities**

7 J. Empirical Legal Stud. 811 (2010) ............................................................................................ 7

I.  **INTRODUCTION**

On August 9, 2016, this Court preliminarily approved a proposed class action settlement

("Settlement") between Plaintiffs Jennifer Smith and Shawn Matejovich and Defendant State

Farm Mutual Automobile Insurance Company ("State Farm").  The Settlement creates a

$7,000,000, all-cash, non-reversionary common fund to be distributed automatically – with no

need to file a claim – to approximately 78,212 consumers who were allegedly transferred to a

State Farm Agent after the now-defunct lead generator Variable Marketing, LLC ("Variable")

called their cell phones using an automatic telephone dialing system and a prerecorded voice, in

violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Class Counsel

zealously prosecuted Plaintiffs' claims for over three-and-a-half years, achieving the Settlement

only after extensive first- and third-party discovery, contested motion practice, and months of

arm's-length negotiations.

Class Counsel now respectfully move the Court for an award of attorneys' fees of

$2,286,666.67, which represents one-third of the total settlement fund, after deducting notice and

claims administration costs, plus $153,389.00 in counsel's out-of-pocket costs.  Class Counsel

respectfully submit that this amount is appropriate and should be approved because: (1)  it

represents the market rate for a class settlement that provides automatic payment to every class

member and is in line with the Seventh Circuit's directives regarding attorneys' fees set forth in

*Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), *Silverman v. Motorola Solutions, Inc.*,

739 F.3d 956, 958 (7th Cir. 2013), and *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir.

2001) ("*Synthroid I*"); and (2) it represents a reasonable and appropriate amount in light of the

substantial risks presented in prosecuting this action, the quality and extent of work conducted,

and the stakes of the case.  Class Counsel also respectfully move the Court for an award of

$15,000 each as service awards to Plaintiffs Smith and Matejovich, for their work on behalf of the Class. Such an award is routine and proper.

## II.      BACKGROUND AND SETTLEMENT

### A.      Litigation History

Plaintiff Jennifer Smith filed this lawsuit on March 15, 2013, alleging that Variable made telemarketing calls on behalf of State Farm to cell phones using an automatic telephone dialing system and a prerecorded voice, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. The Settlement is the result of over three years of hard-fought litigation, reached only after extensive discovery, and after Plaintiffs overcame multiple dispositive motions.

Indeed, after Plaintiff Smith amended her initial complaint on May 30, 2013, State Farm filed a motion to dismiss that the Court *granted* without prejudice after full briefing on September 23, 2013, finding Plaintiff Smith's allegations insufficient to state a vicarious liability claim against State Farm. Dkt. Nos. 29, 33, 37, 45, 49-50. Plaintiff filed a second amended complaint against State Farm on October 11, 2013, after which the Court consolidated this action with others in which Plaintiffs similarly alleged that Variable made illegal calls on behalf of State Farm and other insurance companies: *Blotzer v. State Farm*, No. 13-1797 (S.D. Cal.); *Primack v. State Farm*, No. 13-6694 (N.D. Ill.); and *Matejovich v. Am. Auto. Ass'n, Inc.*, No. 13-7149 (N.D. Ill.). Dkt. Nos. 53, 58, 64, 82. Together those plaintiffs—Jennifer Smith, Shawn Matejovich, Stuart Benson, Brennan Landy, Josh Friedman, Merrill Primack, and Matt Clark— then filed a consolidated complaint asserting vicarious liability claims based on Variable's lead generation calls against Variable, State Farm, and two other Variable call beneficiaries, Farmers and Nationwide. Dkt. No. 111. The insurance Defendants moved to dismiss the master

-2-

consolidated complaint on February 25, 2014. After full briefing, this Court denied the motion to dismiss State Farm but granted it as to Farmers and Nationwide on August 11, 2014, finding Plaintiffs' allegations insufficient to state a claim on a vicarious liability theory against those two insurance companies. Dkt. Nos. 114, 122, 125, 131-34, 145-46.

Plaintiffs Smith, Matejovich, Friedman, Primack, and Clark thereafter filed an amended consolidated complaint against State Farm and Variable only. Dkt. No. 153. State Farm moved to strike Plaintiffs' class allegations and dismiss the individual claims of Plaintiffs Friedman and Clark on September 25, 2014, which the Court granted as to Plaintiff Friedman without prejudice but otherwise denied.[1] Dkt. No. 158, 170, 174, 190. When State Farm eventually answered Plaintiffs' complaint, it denied any wrongdoing, asserting over 40 affirmative defenses, including that it could not be held vicariously liable based on any theory of agency and that, regardless, no class could be certified in this action absent settlement. Dkt. No. 197 ¶ 167 and pp. 48-54.

Discovery has been particularly contentious in this action. Soon after consolidation, State Farm took steps to thwart Plaintiffs' attempts to obtain and preserve evidence from one of its data vendors, Salesforce, moving to quash Plaintiffs' subpoena after Plaintiffs asked the Court to order State Farm to stop interfering. Dkt. No. 100, 103. The Court denied Plaintiffs' motion and granted State Farm's motion in part, requiring compliance but deferring production until after its ruling on Defendants' motions to dismiss. Dkt. No. 110. The Court denied in part as moot and granted in part a further motion by State Farm to modify Plaintiffs' subpoena to Salesforce. Dkt. Nos. 150, 156. Plaintiffs moved to compel State Farm's own discovery production on December 19, 2014, which the Court denied and granted in part after full briefing and oral argument on January 1, 2015. Dkt. Nos. 177, 189, 191, 194. Counsel had to meet and confer

---

[1] Plaintiffs Primack and Clark voluntarily dismissed without prejudice on October 13, 2015 and November 19, 2015, respectively. Dkt. Nos. 236, 243.

repeatedly in order to obtain lead data from State Farm. Dkt. Nos. 220, 232. Ultimately, Plaintiffs issued dozens of subpoenas to State Farm agents and the various dialer companies and other vendors Variable used to make its calls, obtaining records of the illegal lead generation calls Variable made on behalf of State Farm and other insurers, and even hunting down Variable's lead transfer data from a former vendor in Morocco.

State Farm's co-defendant, Variable, largely refused to participate in this action until the Court granted Plaintiffs' motions to compel and required Variable to show cause regarding Plaintiffs' discovery requests. Even then, Variable only participated after its continued non-compliance prompted the Court to consider holding its principal, Jeffrey Schaffer, personally in contempt. Dkt. Nos. 168, 173, 181, 188, 192, 196, 198. Despite filing an affidavit in May 2015 stating that he had complied with his discovery obligations, however, Mr. Schaffer had not done so. Dkt. No. 215. He sat for a deposition on October 3, 2015, but refused to answer basic questions about the calls Variable placed, necessitating yet another motion to compel by Plaintiffs. Dkt. No. 234. After the Court granted this motion, Mr. Schaffer submitted another affidavit identifying a previously undisclosed dialer vendor—one whose own discovery non-compliance required Plaintiffs to file an ancillary subpoena enforcement action in New York, *Smith v. Kaltner*, No. 1:16-mc-00018 (S.D.N.Y. granted Apr. 15, 2016), *appeal docketed*, No. 16-1489 (2d Cir. May 10, 2016).[2] Dkt. No. 239. This Court required Mr. Schaffer to produce numerous additional e-mail communications he previously failed to produce, and to sit for another deposition regarding new records and other relevant topics he previously refused to answer questions about at his first deposition. Dkt. No. 243. Although this Court ordered

---

[2] Sales Technologies' principal, George Kaltner, has appealed the district court's order granting Plaintiffs' motion to compel him to comply with their subpoena and sit for a deposition. Given the proposed settlement of these underlying proceedings, the Second Circuit is currently holding the appeal in abeyance.

Variable to answer Plaintiffs' complaint by February 23, 2016, it *still* has not done so.  Dkt. No. 206.

Plaintiffs moved for class certification on March 1, 2016, after which the parties submitted position papers and participated in a settlement conference with Magistrate Judge Cox, which did not result in a settlement.  Dkt. Nos. 265, 273.  The parties completed class certification briefing on April 20, 2016, after which the parties' ongoing arm's-length negotiations yielded an agreement in principle.  However, the parties continued to disagree over terms, and it was only after substantial further negotiations and a tentative second settlement conference with Magistrate Judge Cox that the parties ultimately agreed upon the terms of the final Settlement.  Dkt. Nos. 287, 291, 306.  Plaintiffs filed their motion for preliminary approval of the Settlement on August 2, 2016, which the Court granted on August 9, 2016. Dkt. Nos. 310, 316.

### B.    <u>Settlement</u>

The Settlement requires State Farm to pay $7,000,000 in non-reversionary cash for the benefit of a Settlement Class defined as:

> All persons within the United States who received a non-emergency telephone call from Variable to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and whose Lead Information was transferred to a State Farm Agent between January 1, 2012 and October 1, 2013. Excluded from the Settlement Class are all persons who validly opt out of the Settlement Class.

(Agr. ¶¶ 2.33, 2.36.)  This Settlement Fund will be distributed by checks mailed on a *pro rata* basis to all Settlement Class Members for whom the Class Notice is not returned as undeliverable, after payment of Settlement Administration Costs, Class Counsel's fee award and expenses, and any service award to Plaintiffs.  (Agr. ¶¶ 4.4, 7.4.)  There is no claims process; payment is automatic.  The Settlement Fund is completely non-reversionary: to the extent

administratively feasible (i.e., checks of $2 or more), any amount in uncashed checks will be re-distributed to Settlement Class Members who cashed their initial Cash Awards, with any remaining amounts thereafter being held in custodial escheatment for the benefit of Settlement Class Members who did not cash their final checks. (Agr. ¶¶ 4.1, 7.4, 9.1-9.2.)  In part because Class Counsel insisted upon automatic payments to Settlement Class members without requiring a claims process, notice and administration through Rust Consulting, Inc. ("Rust") is expected to cost only approximately $140,000.  Settlement Class Members for whom a valid address is available are expected to receive Cash Awards of approximately $60 each. Dkt. No. 312 at 13.

Plaintiffs respectfully request that the Court approve attorneys' fees of $2,286,666.67 and costs of $153,389.00, as well as a service award of $15,000 each to Plaintiffs Smith and Matejovich.  As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested service award is comparable to other TCPA cases, and should be approved.

## III.   LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

As a first step in determining a reasonable fee, "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class

-6-

counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014).

In a series of recent decisions, the Seventh Circuit has reiterated that a district court must award attorneys' fees from a class settlement consistent with the ex ante market rate for similar cases. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) ("When attorneys'' fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical ex ante bargain between the class and its attorneys."); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013); *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014). Courts must "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718. In common fund cases, courts have used one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar. *Americana*, 743 F.3d at 247. Because the percentage method, rather than the lodestar method, best approximates the ex ante market for legal services in cases like this, it "has emerged as the favored method for calculating fees in common-fund cases in this district." *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015); *see also* Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 836 (2010) (including comprehensive study of comprehensive study of hundreds of class settlements, including 79 from within the Seventh Circuit, applying the percentage method).

## IV.     ARGUMENT

### A.     The Court Should Calculate Fees as a "Percentage of the Fund."

The Court should use the percentage of the fund approach to determine fees in this case. Under the market rate approach set forth in *In re Synthroid Mktg. Litig.* ("*Synthroid II*"), 325 F.3d 974, 980 (7th Cir. 2003), courts nearly uniformly hold that the percentage of the fund reflects the "market rate" for TCPA and other consumer class actions because, as this Court previously found, "given the opportunity . . . class members and Plaintiff's counsel would have bargained for" it. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *see also In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in a TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

One of the advantages that the percentage of the fund has over lodestar, and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of . . . lightly-injured plaintiffs likely would not be interested in doing."  *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).  Using the lodestar and multiplier method, in contrast, can be complex, time-intensive, and subjective, and it "do[es] not guarantee a more fair result or a more

expeditious disposition of litigation." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

### B. Counsel's Request Is Within the "Market Rate."

The Court is also tasked with determining what percentage of the settlement fund is appropriately allocated as attorneys' fees. *Synthroid II* holds that the Court should determine this percentage by approximating the market rate, and specifically found that the "market" fee for the first $10 million of a consumer class action was 30% of the *entire* settlement fund (without deducting notice and administration expenses); *see also Craftwood*, 2015 WL 1399367, at *4 (discussing *Synthroid II*).

In *Pearson*, 772 F.3d at 782, the Court established a presumption for fee requests in certain types of consumer class actions. Specifically, *Pearson* held that "in consumer class actions, *where the percentage of class members who file claims is often quite low* . . . the presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Id.* (emphasis added). In others words, a reasonable attorneys' fee must be determined in light of the "value of the settlement to the class." *Redman*, 768 F.3d at 629. In consumer cases like *Pearson* and *Redman* where only a small percentage of class members received any monetary benefit from a class settlement, it stands to reason that, ex ante, class members would have allocated no more than 50% of their total recovery to attorneys' fees. Here, in contrast, every class member with a valid

mailing address will receive an automatic payment. Under these circumstances, Class Members negotiating ex ante would have certainly agreed to a higher market rate for attorneys' fees.

*Pearson* also found that notice and administration costs should be deducted before calculating the percentage for attorneys' fees. 772 F.3d 781; *see also Redman*, 768 F.3d at 630 ("Those costs are part of the settlement but not part of the value received from the settlement by the members of the class."). Here, the very low notice and administration costs of approximately $140,000 equals two percent of the total Settlement Fund. Because Class Counsel have directed approximately 98 percent of the Settlement Fund to cash payments rather than notice and administration costs, the concerns underlying *Pearson* and *Redman* are not present.

Thus, *Pearson* did *not* overrule *Synthroid II*, and did *not* purport to lower the "market rate" for attorneys' fees in all-cash consumer class action settlements like this one where every class member receives automatic payment. Rather, *Synthroid II* established the market rate calculation method, while *Pearson* set a 33-50% ceiling and is exclusive of notice and claims costs. Under both authorities, Class Counsel's request is reasonable.

Class Counsel's request falls squarely within both the market rate and the *Pearson* presumption. They respectfully request that the Court approve $2,286,666.67 in attorneys' fees, amounting to one-third of the estimated net settlement fund of $6,860,000 fund, exclusive of Settlement Administration Costs. The Seventh Circuit has elucidated "benchmarks" that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *Synthroid I*, 264 F.3d at 719). Other relevant factors include the risk counsel undertook in accepting the case, the quality of performance, and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As explained below, each of these factors supports the requested fee.

1. **The Requested Fee Comports with the Contracts Between Plaintiffs and Counsel.**

The requested fee award is not only supported by the fee awards deemed reasonable in similar class cases; it is in line with representation agreements commonly entered into in this District, including between Plaintiffs and their counsel. In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Stumpf v. PYOD, LLC*, 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill*, 160 F.3d at 362–64 (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiffs entered into a retainer agreement with Class Counsel that reflects this fee range, as is normal in consumer TCPA cases in this District. (Selbin Decl. ¶ 30; Burke Decl. ¶

1320349.8

15; Wilson Decl. ¶ 9.) Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee ex ante.

### 2. The Requested Fee Reflects the Fees Awarded in Other Settlements.

Awards of one-third of the gross settlement fund were commonplace in the Seventh Circuit before *Pearson*, both in TCPA cases[3] and in other cases.[4] After *Pearson*, Class Counsel's one-third fee request – measured after deducting administration costs – represents the market price, and is therefore reasonable. That the rate is within the market is reflected in the following fees approved by judges in this District in TCPA cases since *Pearson*:

- 36% of the first $10 million of the fund: *In re Capital One*, 80 F. Supp. 3d 781 (awarding 22% of net settlement fund) (Holderman, J.).

- 30% of the first $10 million of the fund: *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) (awarding 25% of net settlement fund) (Holderman, J.).

---

[3] *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill. Dec. 23, 2013) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign and Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rental Ctr., Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH, Inc.*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).

[4] *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (finding "the market for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate").

- 30% of the first $10 million of the fund: *Craftwood*, 2015 WL 1399367 (awarding 24% of net settlement fund) (St. Eve, J.).

- 38% of net settlement fund: *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015), transcript, Exhibit 7 at 15 (Shah, J.).

- 36% of net settlement fund of $7,850,000: *Kolinek*, 311 F.R.D. 483 at 501 (N.D. Ill. 2015) (Kennelly, J.).

- 33% of fund minus notice/admin costs: *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Pallmeyer, J.).

- 30% of the first $10 million of the fund: *Gehrich v. Chase Bank USA, N.A.*, No. 12-5510, 2016 WL 806549, at *16 (N.D. Ill. Mar. 2, 2016) (awarding 25% of net settlement fund) (appeal pending) (Feinerman, J.).[5]

In comparatively small seven-figure TCPA settlements like this one, "higher fee percentages . . . make sense under the sliding-scale approach given the relatively lower settlement amounts." *See id.* (discussing settlements "far below" $34 million, including several below $5 million).

Class Counsel's requested fee also reflects post-*Pearson* fees approved in non-TCPA cases in this Circuit. *Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) (awarding one-third of the gross monetary settlement plus costs); *McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding one-third of the net settlement fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding one-third of the gross settlement fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding one-third of the gross guaranteed settlement amount plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the net settlement fund); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015)

---

[5] Some Courts award counsel a lower percentage of any recovery above $10 million, but since the instant Settlement provides $7 million in relief, the calculations discussed here only take into account the first $10 million of the Settlement.

(awarding 43.7% of the gross settlement fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015) (awarding one-third of the gross settlement fund).[6]  Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit.

### 3.     Other Factors Support the Requested Fee.

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case."  *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted).  Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

### a.     Risk of Nonpayment

From changing regulatory precedent and Supreme Court jurisprudence, to the inability to establish State Farm's vicarious liability for the calls at issue or an absence of predominating individualized issues sufficient for certification of a litigation class, Class Counsel faced substantial risk and uncertainty at the outset of this action that they would receive no compensation despite investing the time and resources necessary to adequately prosecute this case.  This risk supports the requested fee award.

---

[6] The *Synthroid I* court also held that pre-suit negotiations and class-counsel auctions may inform the market rate calculation, but such information is "basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. at 501.

"Contingent fees compensate lawyers for the risk of nonpayment.  The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."  *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff*, 786 F.2d 320).  Thus, the risk of non-payment at the outset of the case is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award.  *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services. . . . [T]he need for such an adjustment is particularly acute in class action suits.  The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] . . .[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel . . . was undercompensated").

In this context, "at the time" is at the start of the case:  the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)."  *Synthroid I*, 264 F.3d at 718. That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low).  This is what happens in actual

1320349.8

markets." *Id.* Thus, because this case was filed on March 15, 2013, the Court must look at the risks associated with the case on that date.

Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size or ascertainability of the asserted class. Class Counsel accepted the case despite knowing that contentious class discovery would likely be required, with not only State Farm and its lead generator, but also then-unknown third-party vendors involved in making or storing data relating to the calls at issue. (Burke Decl. ¶ 17.) Class Counsel also accepted the possibility that, given the class period going back to 2009 and the fact that many vendors reside overseas and often purge their call records on a regular basis, necessary class call data records would likely be difficult to obtain and, in fact, might have already been destroyed, potentially obliterating any ability to identify class members and ultimately obtain class-wide relief. *Id.* This proved to be the case here, where Class Counsel was forced to conduct discovery with Variable's former vendor in Morocco after Variable claimed it did not have any records of its call transfers. (*Id.*; Selbin Decl. ¶¶ 2, 9.) Class Counsel also accepted the possibility that this Court would rule that State Farm could not be subject to vicarious liability as a result of calls made by Variable—especially considering the developing law at the time and the fact that, at the time of filing, the FCC had yet to issue its May 2013 ruling confirming that sellers *could* be held liable for calls made by third parties under federal common law principles of agency.[7]

Moreover, even assuming sufficient discovery would be obtained, Class Counsel accepted the risk that the Court might ultimately deny class certification. This is a very real concern, as, for example, courts are divided as to whether consent issues predominate over

---

[7] *In re Joint Pet. Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50 (May 9, 2013) (available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-13-54A1_Rcd.pdf).

1320349.8

common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 106-07 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

One anticipated battle also included Class Counsel's attempts to determine the size and scope of the class. Those facts were not (and could not be) known by Class Counsel ex ante, and typically require contentious discovery and litigation before ever becoming known. This case was no different: Class Counsel subpoenaed numerous third-party vendors and engaged in contested discovery motion practice in an effort to determine the scope of the class and obtain supporting evidence—even filing an ancillary subpoena enforcement proceeding in the Southern District of New York to that end. (Burke Decl. ¶ 17.) TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result. *E.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of call data).

The regulatory and legal landscape was unsettled at the outset and continued to shift as the case unfolded. Throughout the course of this litigation, the FCC considered multiple petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against autodialed calls like the ones at issue in this case. And although Class Counsel actively advocates to the FCC in favor of consumers, the process is unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that fax advertisements must contain specific language explaining how recipients can "opt-out" of

-17-

receiving more faxes, but providing *retroactive immunity* for violators that file petitions with the FCC—a wholly unexpected and incongruous result from the consumer perspective.[8]  In fact, it was only until two years into this litigation, on July 10, 2015, that the FCC released a declaratory ruling clarifying relevant issues as wide-ranging as consent and the definition of an "automatic telephone dialing system" under the statute.[9]  And then there were the overhanging *Spokeo* and *Campbell-Ewald Co.* cases before the Supreme Court affecting standing and defendants' ability to "pick-off" named plaintiffs through a settlement offer or Rule 68 offer of judgment. [10]

Success, especially at the outset of this action, was thus by no means assured.  Class Counsel accepted that litigating these and other issues risked recovering nothing for the class and would require significant investments of time, money, and resources—including potentially substantial expert expenses—for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-37 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102-09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff).

The risk was real. As detailed in the accompanying declarations of counsel, plaintiffs' lawyers lose TCPA cases all the time, both at summary judgment and at the class certification stage.  *See, e.g., Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-402 (D. Colo. 2014)

---

[8] *See* http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.
[9] *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.
[10] *See generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Campbell-Ewald Co., v. Gomez,* 136 S. Ct. 663 (2016).

(denying class certification in TCPA action); (Burke Decl. ¶ 14; Wilson Decl. ¶ 12).  Indeed, the Court in this case granted State Farm's motion to dismiss Plaintiff Smith's first amended complaint, granted Defendants Nationwide and Farmers' motions to dismiss Plaintiffs' consolidated master complaint, and granted State Farm's motion to dismiss Plaintiff Friedman's individual claims upon finding that Plaintiffs had insufficiently alleged Defendants' vicarious liability for Variable's lead generation calls Plaintiffs alleged were made on their behalf.  Dkt. Nos. 49, 145, 190.  Thus, despite Plaintiffs' confidence in the viability of their claims, there was substantial risk that the Court would ultimately find an absence of evidence supporting class-wide vicarious liability, resulting in <u>no</u> relief for Plaintiffs or the class.

Therefore, in light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award is reasonable and should be granted.  *In re Capital One*, 80 F. Supp. 3d at 805-06 (awarding 6% risk premium on top of 30% in TCPA class settlement, where some class members may have agreed to be called, there were potential manageability issues in relation to the ability to determine from defendants' records whether class members consented or provided or owned their phone numbers, and FCC petitions similarly at issue in this case potentially could have affected the plaintiffs' claims).

### b. <u>Quality of Performance and Work Invested</u>

The quality of Class Counsel's performance and time invested in fighting through years of contested motion practice, substantial adversarial discovery, and extended negotiations to achieve a $7,000,000, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award.  *Sutton*, 504 F.3d at 693.  In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation whatsoever, only achieving the Settlement after over three-and-a-half years of litigation.  Class Counsel successfully overcame numerous

hurdles, from adversarial motion practice asking the Court to dismiss Plaintiffs' complaints, strike their class allegations, or dismiss individual named plaintiffs, to contentious first- and third-party discovery involving multiple motions to compel, a motion for rule to show cause and the near-sanctioning of Variable's principal, obtaining lead transfer data from Variable's Moroccan vendor, and even instituting ancillary subpoena enforcement proceedings against a Variable dialer company that has appealed the district court's finding in Plaintiffs' favor to the Second Circuit. Dkt. Nos. 19, 33, 49-50, 68, 71, 77, 100, 103, 110, 114, 122, 125, 145-46, 150, 158, 168, 173, 177, 181, 188, 190, 192, 194, 198, 220, 232, 234, 241, 243.

In addition to their substantial litigation efforts, Class Counsel devoted many hours to negotiating the Settlement, as well, which included preparing their clients' settlement conference submissions, attending a settlement conference with Magistrate Judge Cox, and proceeding through further arms' length settlement negotiations with defense counsel by phone and e-mail. (Selbin Decl. ¶¶ 14-15; Burke Decl. ¶ 17.) Class Counsel also spent substantial time preparing the settlement papers and notice documents, working with the independent notice provider, and drafting the motion for preliminary approval. (Selbin Decl. ¶ 18; Burke Decl. ¶ 17.)[11]

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. (Selbin Decl. ¶¶ 21-27; Burke Decl. ¶¶ 5-6; Wilson Decl. ¶¶ 2-3; Paronich Decl. ¶¶ 6-7; McCue Decl. ¶ 9; Clark Decl. ¶ 3.) Indeed, in weighing competing motions for appointment as interim class counsel earlier in this action, the Court acknowledged counsel's experience and expressed confidence that they would fairly and adequately represent the interests of the putative

---

[11] Indeed, Class Counsel's efforts throughout this hard-fought litigation resulted in a substantial expenditure of time. As this Court has held, "a lodestar cross-check of the attorney's fees is not warranted." *Craftwood*, 2015 WL 1399367, at *5. However, should the Court decide to consider Class Counsel's lodestar, the approximately $2,161,535.00 of combined lodestar results in a very low multiplier of 1.1 that is below the market rate for similar class litigation. (*See* Selbin Decl. ¶ 34; Burke Decl. ¶¶ 11-13; Wilson Decl. ¶ 13; Paronich Decl. ¶ 10; McCue Decl. ¶¶ 12-13; Clark Decl. ¶ 5.)

1320349.8

class. Dkt. No. 101 at 3-5. "Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the outstanding $7,000,000 settlement obtained for the class—which includes automatic, direct cash payout by mail to each of the 78,212 Settlement Class Members for which a valid address is identified after payment of notice and administration costs, attorneys' fees and expenses, and any service awards—Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

<b>c.     <u>Stakes of the Case</u></b>

Because this is a case in which class members' most likely alternative was zero recovery, the stakes of the case further support the requested fee award. This case involves tens of thousands of Settlement Class Members who allegedly received unsolicited automated lead generation calls from Variable and were transferred to a State Farm Agent. The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per violation), and thus individuals are unlikely to file individual lawsuits, especially where, as here, each class member only received a small number of these telemarketing calls. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to 2009 when the class period began, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members, the recovery afforded under the Settlement given the amount the TCPA generally affords per violation, and the fact that class members likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

-21-

### C.    The Service Award to the Class Representatives Should Be Approved.

Class Counsel also respectfully request that the Court grant a service award of $15,000 each to Plaintiffs Smith and Matejovich for their efforts on behalf of the class. Courts routinely award such service payments to compensate named plaintiffs for work done on behalf of the class. *See Craftwood*, 2015 WL 1399367, at *6 (discussing class representative service awards in TCPA cases and awarding $25,000). Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Here, Plaintiffs benefitted the class by staying the course for over three years of litigation while every other plaintiff was dismissed or dropped out of the case. Plaintiffs worked with Class Counsel to investigate the case, stayed abreast of the proceedings through litigation and settlement, assisted in responding to discovery requests, attended the settlement conference with Magistrate Judge Cox in person, and reviewed and approved the proposed settlement. (Selbin Decl. ¶ 38; Burke Decl. ¶ 16; Wilson Decl. ¶¶ 22-23); *see In re Sw. Airlines Voucher Litig.*, No. 11-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 incentive awards to two plaintiffs who assisted with discovery, were deposed, and consulted with class counsel on a regular basis). They responded to an inordinately large amount of discovery requests and sat for lengthy depositions. *See id.* In addition, each Plaintiff made other sacrifices that resulted in an all-cash settlement from which class members receive automatic payments.

1320349.8

Moreover, the amount requested here, $15,000 each, is modest when compared with other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201) (awarding $20,000 incentive award in TCPA class settlement); *Desai* (Dkt. No. 243 ¶ 20) (awarding $30,000 incentive awards in TCPA class settlement). The requested service award of $15,000 each to Plaintiffs Smith and Matejovich is reasonable and should be approved.

### D. Class Counsel's Costs and Expenses Should Be Approved.

Rule 23(h) allows the Court to "award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Plaintiffs respectfully request reimbursement for $153,389.00 in costs, which is 2.2% of the total settlement of $7,000,000 obtained for the Class by Class Counsel. *Cf. Craftwood*, 2015 WL 1399367, at *7 (noting that the average percentage of expenses in class cases is four percent). Moreover, it represents the actual unreimbursed expenses incurred out-of-pocket by Class Counsel prosecuting this case on behalf of the Plaintiffs since 2013. (Selbin Decl. ¶ 32; Burke Decl. ¶ 11; Wilson Decl. ¶¶ 20-21; Paronich Decl. ¶¶ 13-14; McCue Decl. ¶ 12.) These reasonable costs and expenses were incurred in connection with this litigation, and consist primarily of expert fees to obtain and analyze Variable's call data, costs associated with depositions and document discovery, and travel for required court appearances. Courts routinely reimburse class counsel for such costs incurred in prosecuting class actions on a contingent basis. These costs were advanced by Class Counsel on a purely contingent basis; had there been no recovery, the costs would have been

1320349.8

lost.  Class Counsel also seeks reimbursement without any addition for interest or "time value of money."  Finally, although Class Counsel's work is ongoing, Class Counsel will not seek reimbursement of additional expenses to be incurred preparing for or attending the final approval hearing and for continuing to oversee successful implementation of the settlement upon final approval.

In light of the expenses Class Counsel have incurred in bringing this case to a successful settlement, Plaintiffs respectfully submit that their request for reimbursement of costs and expenses is reasonable.

## V.  <u>CONCLUSION</u>

WHEREFORE, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $2,286,666.67 in fees and $153,389.00 in costs.  Class Counsel further requests that the Court approve a service award in the amount of $15,000 each to Plaintiffs Smith and Matejovich.

Dated: October 12, 2016                Respectfully submitted,

                                       JENNIFER SMITH and SHAWN MATEJOVICH,
                                       on behalf of themselves and all others similarly situated,

                                       LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP

                                       By: _____
                                             Jonathan D. Selbin

                                       Jonathan D. Selbin (*pro hac vice*; admitted to the
                                       N.D. Ill. general bar)
                                       Email:  jselbin@lchb.com
                                       250 Hudson Street, 8th Floor
                                       New York, NY  10013
                                       Telephone:  (212) 355-9500
                                       Facsimile:   (212) 355-9592

                                       Daniel M. Hutchinson (*pro hac vice*; admitted to the N.D.
                                       Ill. general bar)
                                       Email:  dhutchinson@lchb.com
                                       275 Battery Street, 29th Floor
                                       San Francisco, CA  94111-3339
                                       Telephone:  (415) 956-1000
                                       Facsimile:  (415) 956-1008

                                       John T. Spragens (*pro hac vice*; admitted to the N.D. Ill.
                                        general bar)
                                       jspragens@lchb.com
                                       One Nashville Place
                                       150 4th Avenue North, Suite 1650
                                       Nashville, TN 37219-2423
                                       Telephone:  (615) 313-9000
                                       Facsimile:  (615) 313-9965

                                       *Lead Counsel for Plaintiffs and the Class*

                                       BURKE LAW OFFICES, LLC
                                       Alexander H. Burke
                                       Email: ABurke@BurkeLawLLC.com
                                       155 N. Michigan Avenue, Suite 9020
                                       Chicago, IL  60601
                                       Telephone:  (312) 729-5288
                                       Facsimile:   (312) 729-5289

                                       *Liaison Counsel for Plaintiffs and the Class*

1320349.8

BRODERICK LAW, P.C.
Edward A. Broderick (pro hac vice)
ted@broderick-law.com
Anthony Paronich (pro hac vice)
anthony@broderick-law.com
125 Summer Street, Suite 1030
Boston, MA 02360
Telephone: (508) 221-1510

LAW OFFICE OF MATTHEW MCCUE
Matthew McCue (pro hac vice)
Email: mmccue@massattorneys.net
1 South Ave, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925;
admitted to the N.D. Ill. general bar)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio State Bar No. 0091162;
admitted to the N.D. Ill. general bar)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603-3593
Telephone (312) 739-4200
Facsimile: (312) 419-0379

*Additional Counsel for Plaintiffs and the Class*

-26-

## CERTIFICATE OF SERVICE

I hereby certify that, on October 12, 2016, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all counsel of record.

 _/s/ John T. Spragens_

Dated: October 12, 2016