**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JENNIFER SMITH, et al., | Case No. 1:13-cv-2018 |
| Plaintiffs, | |
| v. | Hon. Amy J. St. Eve |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al. | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF THE FACTS ........................................................... 2

    A.     Procedural Background........................................................... 2

        1.     The Consolidated Litigation ...................................... 2

        2.     Discovery ................................................................... 3

        3.     Motion to Certify Class.............................................. 5

        4.     Mediation and Settlement .......................................... 5

    B.     The Proposed Settlement ....................................................... 6

        1.     The Settlement Class.................................................. 6

        2.     Monetary Relief for Settlement Class Members........ 7

        3.     Escheatment .............................................................. 8

        4.     Class Release ............................................................. 8

        5.     Class Representative Service Awards......................... 8

        6.     Attorneys' Fees and Costs ......................................... 8

        7.     Settlement Administration ......................................... 9

III.    CLASS NOTICE WAS DISSEMINATED TO THE ENTIRE CLASS, NO OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WITH VALID MAILING ADDRESSES WILL RECEIVE PAYMENTS ................................ 9

    B.     CAFA Notice ...................................................................... 11

    C.     Zero Objections and One Exclusion Request ..................... 11

IV.    FINAL APPROVAL IS WARRANTED ........................................... 12

    A.     The Settlement Approval Process ....................................... 12

    B.     The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved............................................................................ 14

        1.     The "Claimless" Settlement Provides Substantial Relief When Measured Against the Strength of the Plaintiffs' Case ........................... 14

            a.     The Monetary Amount and Straightforward Distribution Process for Settlement Funds....................................... 15

            b.     The Strength of Plaintiffs' Case........................ 17

        2.     There Is No Opposition to the Settlement................. 20

        3.     Continued Litigation is Likely to be Complex, Lengthy, and Expensive ................................................................. 20

        4.     Class Counsel Strongly Endorse the Settlement...................... 21

**TABLE OF CONTENTS**
(continued)

**Page**

     5.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval ................................................................ 22

V.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ................... 23

     1.    The Rule 23(a) Requirements are Satisfied .............................................. 23

     2.    The Rule 23(b)(3) Requirements are Satisfied ....................................... 24

VI.    CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

Adams v. AllianceOne Receivables Mgmt. Inc.,
No. 08-cv-00248 (S.D. Cal.) .............................................................. 15

Aliano v. Joe Caputo & Sons - Algonquin, Inc.,
No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) .................................. 19

Amchem Prods. v. Windsor,
521 U.S. 591 (1997) ...................................................................... 25

Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,
616 F.2d 305 (7th Cir. 1980) ..................................................... 12, 14, 16

Arthur v. Sallie Mae Inc.,
No. 10-cv-00198 (W.D. Wash.) ............................................................ 15

Connor v. JPMorgan Chase Bank,
No. 10 CV 1284 (S.D. Cal.) .............................................................. 15

Creative Montessori Learning Ctr. v. Ashford Gear, LLC,
No. 09 C 3963, 2014 WL 865963 (N.D. Ill. Mar. 3, 2014) .................................. 18

Duke v. Bank of Am., N.A.,
No. 5:12-cv-04009 (N.D. Cal.) ........................................................... 15

G.M. Sign, Inc. v. Brinks Manufacturing Co.,
No. 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ................................. 19

G.M. Sign, Inc. v. Finish Thompson, Inc.,
No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ................................ 24

Gehrich v. Chase Bank USA, N.A.,
No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) .................................. 15

Hickey v. Great W. Mortg. Co.,
No. 94 C 3638, 1995 WL 121534 (N.D. Ill. Mar. 17, 1995) ................................. 18

Holmes v. Roadview, Inc.,
No. 15-CV-4-JDP, 2016 WL 1466582 (W.D. Wis. Apr. 14, 2016) ............................. 14

In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,
789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................... 13

In re AT&T Mobility Wireless Data Servs. Sales Litig.,
270 F.R.D. 330 (N.D. Ill. 2010) ......................................................... 15

In re Capital One Tel. Consumer Protection Act Litig.,
No. 12-cv-10064 (N.D. Ill.) ............................................................. 15

In re Mexico Money Transfer Litig.,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................... 22

## **TABLE OF AUTHORITIES**
(continued)

**Page**

*In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*,
No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)....................................14

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ..........................................................................12, 14

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)............................................................................13

*Kramer v. Autobytel*,
No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012).........15

*Lee v. Stonebridge Life Ins. Co.*,
289 F.R.D. 292 (N.D. Cal. 2013)..........................................................................18

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)...................................15

*Mauer v. Am. Intercontinental Univ., Inc.*,
No. 16 C 1473, 2016 WL 4698665 (N.D. Ill. Sept. 8, 2016)...................................19

*McCabe v. Crawford & Co.*,
210 F.R.D. 631 (N.D. Ill. 2002).............................................................................23

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009)...................................................................21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)......................................................................................11, 12

*Murray v. New Cingular Wireless Servs.*,
232 F.R.D. 295 (N.D. Ill. 2005).............................................................................25

*Palmer v. Sprint Nextel Corp.*,
No. 09-cv-01211 (W.D. Wash.).............................................................................16

*Parker v. Risk Mgmt. Alternatives, Inc.*,
206 F.R.D. 211 (N.D. Ill. 2002).............................................................................24

*Phillips Randolph Enters., LLC v. Rice Fields*,
No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007) ....................................19

*Picchi v. World Fin. Network Bank*,
No. 11-CV-61797 (S.D. Fla.) ...............................................................................15

*Sadowski v. Med1 Online, LLC*,
No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) ............................24, 25

*Savanna Group, Inc. v. Trynex, Inc.*,
No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013).......................................19

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................................21

## TABLE OF AUTHORITIES
(continued)

**Page**

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...................................................................... 15

*Thorne v. Donald J. Trump for President, Inc.*,
    No. 1:16-cv-04603 (N.D. Ill.) .................................................................... 20

*Wilkins v. HSBC Bank Nev., N.A.*,
    No. 14-cv-190 (N.D. Ill.) ............................................................................ 15

*Wright v. Nationstar Mortage LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ........................ 15, 17

**Statutes**

47 U.S.C. § 227 ................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... 23

Fed. R. Civ. P. 23(e)(2) ................................................................................. 14

**Treatises**

4 *Newberg on Class Actions* (4th ed. 2002) ............................................... 12, 13

*Manual for Complex Litigation* (Fourth) (2004) ...................................... 11, 13, 23

## I.     <u>INTRODUCTION</u>

After more than three years of adversarial, hotly contested litigation, including exhaustive discovery and motion practice, Plaintiffs Jennifer Smith ("Smith") and Shawn Matejovich ("Matejovich") (together, "Plaintiffs") reached a proposed class settlement with Defendant State Farm Mutual Automobile Insurance Company ("State Farm") to resolve all claims in this action alleging State Farm's vicarious liability for calls placed by its alleged sub-agent Variable Marketing, LLC ("Variable") in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

The Settlement, which was preliminarily approved by this Court on August 9, 2016, requires State Farm to pay a total of $7,000,000 in cash into a Settlement Fund, which will be dispersed pro rata automatically (without need to file a claim) to each of the 80,714 Settlement Class Members with a valid mailing address—a number that, after careful work by the claims administrator overseen by Class Counsel and counsel for State Farm, currently stands at 74,538. Not a single penny of the Settlement Fund will revert to State Farm: unclaimed funds will be redistributed to Class Members who cash their checks until there is not enough money to distribute at least $2.00 each, at which point remaining funds will be held in custodial escheatment for the benefit of Settlement Class Members who did not cash their final checks.

After the Court granted preliminary approval, Notice was issued via U.S. Mail to all Settlement Class Members using contact information obtained in discovery, verified by U.S. Postal Service database and (in the event of returned mail) skip tracing—reaching 92.35% of Settlement Class Members as of November 27, 2016 with individual direct notice. This means that this same 92.35% of Settlement Class Members will automatically receive payment under the Settlement—an extraordinarily high payout rate. Indeed, such a payout is *remarkably high* among sizable TCPA class settlements; in nearly every other TCPA class settlement that

involves a common fund in the high seven figures or above, only those class members who affirmatively make a claim on the common fund – usually somewhere between 1% to 10% of class members – receive a payment. Perhaps unsurprisingly, therefore, after receiving thousands of calls and hits to the Settlement website, *zero* Settlement Class Members objected to the Settlement, and *only one* requested exclusion.

Plaintiffs respectfully submit that these facts demonstrate that the Court's preliminary determination that the Settlement should be approved was correct. Plaintiffs now seek final approval of the Settlement and final certification of a nationwide settlement class. Plaintiffs submit that this Settlement is an excellent result for the Class, and amply satisfies all criteria for final settlement approval under Seventh Circuit law. Plaintiffs therefore respectfully request that the Court grant their motion.

## II.  STATEMENT OF THE FACTS[1]

### A.  Procedural Background

#### 1.  The Consolidated Litigation

This litigation originated with four separate actions: *Smith v. State Farm*, Case No. 1:13-cv-02018, *Blotzer, et al. v. State Farm, et al.,* Case No. 13CV1797 JAH NLS (S.D. Cal.), *Primack, et al. v. State Farm, et al.* Case No. 1:13-cv-06694 (N.D. Ill.), and *Matejovich, et al. v. American Automobile Association, Inc., et al.*, Case No. 1:13-cv-07149 (N.D. Ill.). *See* Selbin Decl. ¶¶ 3-8.[2]  On October 21, 2013, November 5, 2013, and November 18, 2013, the *Primack* Action, the *Blotzer* Action, and the *Matejovich* Action, respectively, were transferred to the Honorable Amy J. St. Eve, the District Court Judge presiding over the *Smith* Action, and

---

[1]  Sections of this brief discussing issues that have not changed since Plaintiffs filed their motion for preliminary approval were adapted from Plaintiffs' memorandum of law in support of preliminary approval.

[2]  All citations to the Selbin Declaration refer to the contemporaneously filed Declaration of Jonathan D. Selbin, Lead Class Counsel.

ultimately consolidated under Case No. 13-cv-02018. Dkt. No. 58.

The parties engaged in extensive motion practice. On December 11, 2013, the *Smith* and *Matejovich* plaintiffs moved to designate Jonathan Selbin of Lieff, Cabraser, Heimann & Bernstein, LLP, as Interim Lead Class Counsel, and Alexander H. Burke of Burke Law Offices, LLC, as Interim Liaison Counsel for all cases. Dkt. No. 94. Although the *Primack* plaintiffs opposed this motion, Dkt. No. 97, the Court appointed Selbin and Burke to the respective positions in January 21, 2014 Order. Dkt. No. 101.

On February 4, 2014, Plaintiffs filed a Consolidated Master Class Action Complaint (Dkt. No. 111), which State Farm, Nationwide, and Farmers moved to dismiss (Dkt. Nos. 114, 122, 125). After receiving all briefing (*see* Dkt. Nos. 132-134) and holding a hearing on the motions, the Court granted Nationwide's and Farmers' motions to dismiss, but denied State Farm's motion, on August 11, 2014. Dkt. No. 146. On September 4, 2014, Plaintiffs filed an Amended Consolidated Master Class Action Complaint and a Motion for Class Certification, which they asked be stayed until further discovery was completed. Dkt. Nos. 153, 154. State Farm then moved to strike the class allegations and dismiss the claims of plaintiffs Clark and Friedman. Dkt. No. 158. On January 13, 2015, after State Farm's motion was fully briefed by the parties (*see* Dkt. Nos. 170, 174), the Court denied the motion to strike and granted the motion to dismiss with respect to plaintiff Friedman only. Dkt. No. 190.

## 2. Discovery

Plaintiffs engaged in extensive discovery that required production from State Farm, Variable, key third parties, and experts. These efforts resulted in the production of over 193,850 pages of documents from State Farm. Plaintiffs requested from State Farm, among other materials: documents concerning State Farm's telemarketing policies and practices, documents relating to the Plaintiffs, documents relating to Variable, documents relating to internal databases

and calling software, documents relating to State Farm's effort to comply with the TCPA, documents sent to or from government entities regarding allegations of unlawful telemarketing, and documents related to internal investigations regarding allegations of unlawful telemarketing. Over the course of the litigation, Plaintiffs served 34 requests for production of documents, 21 interrogatories, and 7 requests for admission on State Farm. State Farm, meanwhile, served 49 requests for production of documents and 21 interrogatories on each Plaintiff. Each Plaintiff sat for a day-long deposition.

Discovery was contentious: over the course of the litigation, eight discovery motions were filed, including motions to quash, motions to compel production, and motions to show cause. *See, e.g.*, Dkt. Nos. 104, 168, 177, & 181. Variable repeatedly refused to respond to routine discovery requests and communications about discovery matters. Plaintiffs therefore spent an extraordinary amount of time and effort obtaining responsive materials from Variable, including lead data, contracts with State Farm agents, and other relevant discovery. Selbin Decl. ¶¶ 9-11 (describing Plaintiffs' wide-ranging efforts to obtain relevant discovery from Variable).

Because State Farm did not possess key documents essential to prove Plaintiffs' TCPA claims, Plaintiffs also engaged in extensive third-party discovery. Aside from issuing dozens of subpoenas to U.S.-based individuals and companies, Plaintiffs located and obtained a call database from a Morocco-based Variable vendor, which contained essential records identifying each Class Member.

The parties also engaged in expert work and discovery. Plaintiffs disclosed Jeffrey A. Hansen, a forensic expert who specializes in investigating and analyzing electronic data. Dkt. No. 266 (Memo in Support of Class Cert.) at 6. Hansen has extensive experience with data warehousing, and has personally used, assembled, configured, customized, maintained, and

operated all aspects of autodialers. *Id.* Using call and lead data obtained through discovery from the Variable database, Hansen identified the persons who comprise the proposed Class. *Id.* at 19. State Farm, meanwhile, disclosed its own expert, Debra J. Aron, to challenge Hansen's findings. Dkt. No. 287-14 and 287-22 (Aron rebuttal report and sur-rebuttal report).

### 3. Motion to Certify Class

On March 1, 2016, Plaintiffs moved to certify a Class consisting of persons who received automated telephone calls on their cellular telephones, and whose lead information was transferred to agents of State Farm, between January 1, 2012 and September 29, 2013. Dkt. No 266 at 2. State Farm filed its Opposition on April 6, 2016, to which Plaintiffs filed a Reply on April 20, 2016. Dkt. Nos. 287, 291. When the parties reached preliminary agreement on a settlement in principle, they notified the Court and requested that it stay ruling on that motion.

### 4. Mediation and Settlement

Settlement negotiations in this case occurred over many months, including Court-ordered in-person and telephonic mediation sessions before the Honorable Susan E. Cox. After Plaintiffs filed the class certification Motion, but before State Farm filed its Opposition, the parties held a mediation conference before Magistrate Judge Cox on March 17, 2016. Dkt. 273. Prior to the mediation, Plaintiffs and State Farm submitted detailed mediation briefs setting forth their respective views on the strengths of their cases. Selbin Decl. ¶ 14. The parties discussed their relative views of the law and the facts and potential relief for the proposed Class, at times sharply differing over both the dollar amount of relief to be provided to the proposed Class and the structure of the settlement fund itself. *Id.* At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. *Id.* ¶¶ 14-15.

The initial mediation conference did not result in settlement. *Id.* ¶ 14. After Plaintiffs' class certification motion was fully briefed, though, the parties resumed settlement discussions,

ultimately reaching agreement in principle on April 28, 2016. *Id.* ¶ 15. Since that time, the parties negotiated final details of the Settlement Agreement—continuing to exchange proposals in an effort to resolve outstanding disagreements over a number of key issues—and worked with notice providers and settlement administrators to craft details of the notice and claims administration proposals. After an impasse in negotiations on certain remaining issues, the parties were set for another mediation before Magistrate Judge Cox. However, on July 7, 2016, the parties ultimately reached agreement on these issues, and notified the Court that a final settlement agreement had been reached.

### B.    The Proposed Settlement

The Settlement's details are contained in the Settlement Agreement ("Agreement") signed by the parties, a copy of which is attached as Exhibit 1 to the Selbin Declaration. The Agreement's key terms are summarized below:

### 1.    The Settlement Class

The Settlement Class is defined as follows:

> All persons within the United States who received a non-emergency telephone call from Variable to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and whose Lead Information was transferred to a State Farm Agent between January 1, 2012 and October 1, 2013.

Agreement § 2.33. The Settlement Class is comprised of 80,714 individuals identified in the Moroccan Variable database.[3]

---

[3] In prior briefing, Plaintiffs estimated the Class size at 78,212. Subsequently, State Farm informed Plaintiffs that its expert had determined that 2,502 additional leads in the Variable database were transferred by Variable to State Farm agents, although these agents did not have "statefarm.com" or "sf.com" email addresses and were not previously identified as Class Members by Plaintiffs. Selbin Decl., ¶ 18. After conferring with their expert, Plaintiffs agreed that these individuals should properly be included as Class Members, and Notice was sent to all 80,714 addresses. *Id.*

### 2. Monetary Relief for Settlement Class Members

The Settlement requires State Farm to create a non-reversionary Settlement Fund of $7,000,000.00. Agreement § 2.36. After payment of all costs of notice and claims administration, and Court-awarded attorneys' fees and costs and class representative incentive awards, all Settlement Class Members who do not timely and validly submit a Request for Exclusion from the Settlement, and whose Notice was not returned as undeliverable, will automatically receive a Cash Award from the Settlement Fund in the form of a check. *Id.* §§ 4.2, 4.3, 9.1, 9.2. However, Settlement Class Members *need not file a claim or take any action* in order to receive a Cash Award. Cash Awards will be paid to Settlement Class Members within 25 days of the Settlement Funding Date. *Id.* § 7.4.d. The amount of each Settlement Class Member's Award will be based on a pro rata distribution, depending on the total number of Class Members for whom Notice is not ultimately returned as undeliverable. *Id.* § 4.4. If any checks that remain uncashed after 180 calendar days yield an amount that, after administration costs, would allow further pro rata distributions to Settlement Class Members equal to or greater than $2.00 per person, the Claims Administrator will make a further pro rata distribution. *Id.* § 7.4.e. No amount of the Settlement Fund will revert to State Farm. *Id.* §§ 2.36, 4.1. Any remaining funds after the further pro rata distributions will be held in custodial escheatment for the benefit of Settlement Class Members who did not cash their final checks. *Id.* § 7.4.f.

Based upon the rate of undeliverable Notices and one exclusion request, *see infra* Sec. III, the Claims Administrator conservatively estimates that awards will be in the range of $59. Stinehart Decl. ¶ 11.[4] Checks for Cash Awards will be valid for 180 days from the date of the check. Agreement § 9.2.

---

[4] All citations to the Stinehart Declaration refer to the contemporaneously filed Declaration of Jason M. Stinehart of Rust Consulting, Inc., Claims Administrator.

### 3. Escheatment

If the combined amounts of any settlement payment checks to Settlement Class Members that remain uncashed for more than 180 days would not allow a further pro rata distribution to the qualifying Settlement Class Members equal to or greater than $2.00 per Settlement Class Member, the remaining money will be distributed to the states of residence of those Settlement Class Members who did not cash their final checks under an early custodial escheatment procedure. State Farm will pay the Claims Administrator's administration costs associated with the escheatment procedure. *Id.* § 7.4.f.

### 4. Class Release

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release any and all federal, state, or common law claims "that arise out of this Litigation or the facts that give rise to this Litigation, including but not limited to claims that could have been asserted in the Litigation." *Id.* § 13.1.[5]

### 5. Class Representative Service Awards

Class Counsel have asked the Court to award Class Representatives service awards of $15,000 each in light of the time and effort they have personally invested in this Action in order to pursue class claims. Dkt. No. 324 at 24. State Farm does not object to such incentive payments. Agreement § 5.2. The Settlement is not contingent on the Court's granting of such an award. *Id.* § 5.3.

### 6. Attorneys' Fees and Costs

On October 12, 2016, Class Counsel applied to the Court for an award of attorneys' fees

---

[5] The Class Release does not prohibit Settlement Class Members' from communicating with government agencies, as the contemporaneously filed amendment to the Settlement Agreement makes clear. *See infra* Sec. III.B.

of one-third of the common fund (after deducting notice and administration costs) and costs. Dkt. No. 324. The Settlement is not contingent on Court approval of an award of attorneys' fees or costs. Agreement § 5.3. Consistent with Seventh Circuit case law, Class Counsel calculate this percentage based on the ex ante market rate for a class settlement that provides automatic payment to every class member. Class Counsel's $2,286,666.67 fee request is warranted in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Class Counsel's request for reimbursement of $153,389.00 in out-of-pocket expenses is reasonable and, at 2.2% of the total settlement amount, below the average percentage of expenses in class cases. These requests do not take into account Class Counsel's costs incurred in attending the final approval hearing or in continuing to oversee the successful implementation of the Settlement.

### 7.    Settlement Administration

Except as to the escheatment of undistributed funds, *id.* § 7.4.f, all costs of notice and claims administration are being paid from the Settlement Fund. *Id.* §§ 4.1, 4.4, 7.3. Rust Consulting serves as the Court-appointed Claims Administrator, and its total costs are limited to $140,000. Dkt. No. 316 (Preliminary Approval Order), ¶ 8; Stinehart Decl. ¶ 11.

### III.    CLASS NOTICE WAS DISSEMINATED TO THE ENTIRE CLASS, NO OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WITH VALID MAILING ADDRESSES WILL RECEIVE PAYMENTS

The Notice program approved by the Court (Dkt. No. 316) has been fully and successfully implemented by the parties and the Court-approved Claims Administrator, Rust Consulting, in accordance with the Court's direction. *See* Stinehart Decl. ¶¶ 3-11. Within 25 days of the judgment becoming final, should the Court grant final approval to the Settlement, payments will be automatically issued to all Class Members with valid mailing addresses.

### A.    Direct Individual Notice Was Disseminated via U.S. Mail

Beginning on September 8, 2016, the Claims Administrator sent Postcard Notices via United States mail to all 80,714 Class Members. *Id.* ¶ 7 and accompanying Exhibit A. Class Member mailing addresses were determined by obtaining the last known address for each Class Member from the Variable database and submitting each one to the National Change of Address ("NCOA") database to review for address updates. *Id.* ¶ 4. This generated 12,426 address updates. *Id.* Additionally, 67,551 mailing addresses were able to be standardized using CASS processing, a certification system developed by the United States Postal Service ("USPS") that standardizes addresses to USPS guidelines for mailing purposes. *Id.*

Of the 80,714 Postcard Notices, 271 were returned as undeliverable with a forwarding address and re-mailed. *Id.* ¶ 7. Another 15,817 were returned as undeliverable with no forwarding address. *Id.* The Claims Administrator sent these to batch trace to review for further updates, resulting in 9,912 address updates (including the 271 returned with a forwarding address). *Id.* The Claims Administrator applied these updates, and the Postcard Notices were re-mailed. *Id.* As of November 27, 2016, 74,538 Postcard Notices were delivered to a valid mailing address—meaning 74,538 Class Members (92.35%) are projected to receive Settlement payments.

On September 8, 2016, the Claims Administrator established a dedicated Settlement website at www.vmtcpasettlement.com. *Id.* ¶ 8.[6] The website provides visitors with a Long Form copy of the Class Notice in English and Spanish, as well as answers to commonly asked questions, documents that have been filed with the Court, and information on important dates. *Id.* Through November 27, 2016 the website has counted 1,377 hits by 1,111 unique visitors. *Id.*

The Claims Administrator also established a dedicated toll-free telephone number to field

---

[6] This domain was used because www.variabletcpasettlement.com, the web address originally intended to be used, was unavailable. *Id.*

Settlement inquiries by Class Members.  Through November 27, 2016, the Claims Administrator received a total of 3,908 calls to the toll-free number.  *Id.* ¶ 9.

By endeavoring to provide direct, individual Notice to the entire universe of Class Members by U.S. Mail—updating and standardizing each address as needed, eventually reaching 92.35% of Class Members—and supplementing that Notice with a Settlement website and toll-free telephone number, the parties ensured that Notice comported with due process and protected all Class Members' rights.  *See Manual for Compl. Lit.* (Fourth) (2004) § 21.312 (describing notice requirements); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (defining best practicable notice as that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

**B.**    **CAFA Notice**

On August 12, 2016, the Claims Administrator also sent a total of 113 notifications to the appropriate State and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, to all 50 States, as well as all territories and to the U.S. Attorney General.  Stinehart Decl. ¶ 5.  In addition, 56 notices were sent to the Department of Insurance in every state and territory. *Id.*

After CAFA Notice was issued, the parties received an inquiry from the California Attorney General's office, on behalf of itself and one other state attorney general, seeking clarification of the scope of the release.  As a result of these inquiries, the parties executed an Amendment to the Settlement Agreement, which is being filed contemporaneously with this motion and posted to the Settlement Website.

**C.**    **Zero Objections and One Exclusion Request**

After Class Notice was disseminated, the Claims Administrator received one request for

exclusion by the November 14, 2016 deadline set by the Court. *Id.* ¶ 10. No objections to the Settlement or to Class Counsel's request for attorneys' fees, costs, and service awards for Class Representatives have been received by Class Counsel or docketed by the Clerk of Court.

## IV.   FINAL APPROVAL IS WARRANTED

### A.   The Settlement Approval Process

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Indeed, as this Court has previously observed:

> [T]he law recognizes class actions as a legitimate part of the U.S. litigation system. The Supreme Court has made this clear on several occasions. *See, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147,

> 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (explaining that, in appropriate cases, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"); *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). In addition, Federal Rule of Civil Procedure 23 provides for the use of such a procedure.

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 497 (N.D. Ill. 2015) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 982 (N.D. Ill. 2011) (St. Eve, J.)). For these reasons, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1)  Preliminary approval of the proposed settlement at an informal hearing;
>
> (2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed in the Newberg treatise on class actions, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  4 *Newberg* § 11.25.

The first two steps in this process have occurred.  With this motion, Plaintiffs respectfully request that the Court take the third and final step in the process by granting final approval of the

Settlement.

**B.     The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved**

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  When making this determination at the final approval stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199; *accord Holmes v. Roadview, Inc.*, No. 15-CV-4-JDP, 2016 WL 1466582, at *4 (W.D. Wis. Apr. 14, 2016).  In reviewing these factors, courts view the facts "in a light most favorable to the settlement."  *Isby*, 75 F.3d at 1199.  In addition, courts "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel."  *In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (citing *Armstrong*, 616 F.2d at 315).

Application of these factors here confirms that the Settlement is fair, reasonable, and adequate, and should be finally approved.

**1.     The "Claimless" Settlement Provides Substantial Relief When Measured Against the Strength of the Plaintiffs' Case**

"The most important factor relevant to the fairness of a class action settlement is the first

one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

### a. The Monetary Amount and Straightforward Distribution Process for Settlement Funds

The Settlement provides substantial relief to the Class. It requires State Farm to pay $7,000,000.00 cash into a Settlement Fund, out of which all Settlement Class Members will *automatically* receive their *pro rata* share of cash payments. Agreement § 4.4. The Settlement Fund is non-reversionary, ensuring that nearly all monetary benefits will go to the approximately 74,538 Settlement Class Members who received Notice at a valid mailing address; none of the Settlement Fund will return to State Farm. The Claims Administrator conservatively estimates that each Class Member will receive about $59. Stinehart Decl., ¶ 11. This is an excellent result when measured against 25 years of TCPA settlements, in which a significantly smaller percentage of class members generally receive notice and make a claim on the common fund.[7]

---

[7] *See, e.g., Wright v. Nationstar Mortage LLC*, No. 14 C 10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016), *appeal filed* ($12.1 million for 2,343,988 class members); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016), *appeal filed* ($34 million for more than 32 million class members); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797 (S.D. Fla.) ($7.9 million for 3 million class members); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ($24.15 million for 7,792,256 class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 4,546,293 class members); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009 (N.D. Cal.) ($32,083,905 for approximately 7,723,860 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 (S.D. Cal.) ($11,665,592.09 for 2,684,518 class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) ($39,975,000 for 9,065,262 class members); *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12-cv-10064 (N.D. Ill.) ($75,455,098 for 16,645,221 class members); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ($12.2 million for 47 million class members); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal.) ($9 million for 6,696,743

Further, because discovery yielded a database containing Class Members' mailing addresses, the Settlement incorporates state-of-the-art Notice and Administration provisions that will guarantee maximum relief. In short, all 74,538 Class Members who received Notice will *automatically* receive a Cash Award *without having to submit any claim forms*. The Settlement ensures that the Claims Administrator—admittedly a bit of a misnomer in this "claimless" settlement—took multiple actions to ensure the maximum number of Class Members received Notice and, thus, will receive a Settlement payment. First, the Claims Administrator verified and updated last known mailing addresses, resulting in 12,426 address updates. Second, after some Notices were returned as undeliverable, the Claims Administrator conducted a skip trace search, re-sending Notice to 9,912 Class Members. Finally, if any Settlement checks are uncashed 180 days after payments are issued, the Claims Administrator will make a further pro rata distribution to all participating Class Members provided sufficient funds remain. Class Counsel specifically negotiated for—and obtained—a simple, straightforward settlement administration process that would ensure maximum participation by Class Members.

Of course, the $7,000,000.00 Fund, however broadly distributed, does not constitute the full measure of statutory damages potentially available to the Class. This fact alone, however, should not weigh against approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues in this case, full briefing of

---

class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash.) (approving $5.5 million for 18.1 million class members).

a motion for class certification, after taking into consideration the risks involved in the actions, and after extensive arm's-length negotiations presided over by an experienced Magistrate Judge. Further, the Settlement compares favorably to other TCPA class actions settlements. *See, e.g.*, *Wright*, 2016 WL 4505169, at *8 ("readily reject[ing]" objections to $45 per class member TCPA settlement distribution, finding it "in line with other TCPA settlements," and providing examples); *see supra* n. 7 (listing exemplar TCPA settlements). The Settlement provides class members with real monetary relief which, absent this Settlement, they might not otherwise obtain.

For all of the above reasons, the monetary amount recovered through the Settlement—which will be disbursed to Class Members using remarkably convenient, easy-to-use Notice and administration procedures—is an excellent result for the Class.

### b. The Strength of Plaintiffs' Case

Plaintiffs continue to believe that their claims against State Farm have merit and that they could make a compelling case if their claims were tried. Nevertheless, Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

First, the parties recognize that State Farm's vicarious liability for Variable's automated telemarketing practice is the most significant dispositive issue in this case, and both Plaintiffs and State Farm have evaluated the risk of continued litigation accordingly. To prevail on the merits, Plaintiffs would have to demonstrate that State Farm should be held vicariously liable for the business recruitment practices of its individual insurance agents, who are in turn responsible for the telemarketing actions of Variable, the contractor they hired to generate insurance leads. Although Plaintiffs believe their position to be legally meritorious, they faced the risk that the Court or a jury would be persuaded that assigning liability for an alleged sub-agent's actions is too attenuated. To the extent the vicarious liability question will determine the outcome of the

case, all Plaintiffs' eggs are in one basket: a litigant with ordinary risk tolerance would seek a reasonable compromise rather than insisting on winning all or taking nothing. This issue counsels in favor of settlement. *See, e.g.*, *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2014 WL 865963, at *3 (N.D. Ill. Mar. 3, 2014) (denying plaintiffs summary judgment on vicarious liability grounds).

Second, Plaintiffs faced the risk posed by this Court's imminent decision on class certification. As demonstrated by the parties' briefing, courts have a mixed record on certifying vicarious liability consumer class actions. *Compare Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) (certifying class under vicarious liability theory in TCPA case), *with Hickey v. Great W. Mortg. Co.*, No. 94 C 3638, 1995 WL 121534, at *8 (N.D. Ill. Mar. 17, 1995) (denying class certification in TILA case). The parties hotly contested whether individual issues predominated over common questions of law and fact. State Farm contested whether: discrepancies between State Farm's and Variable's call records were minimal and insignificant; Variable's calling practices were standard and automated, rather than individualized among its employees; contracts between State Farm and its agents and between its agents and Variable were uniform and properly interpreted without resort to extrinsic (and thus, individualized) evidence; and the call data could effectively and efficiently be explained through expert testimony. Because the majority of Class Members received only a single call, individual actions would not have been viable had the Court denied the class certification motion. Plaintiffs therefore faced a significant risk that any Court decision denying class certification would effectively end the litigation.

Third, Plaintiffs had to contend with State Farm's position that the alleged prior express consent of individual plaintiffs could undermine predominance or other findings necessary for

class certification. State Farm contended that named plaintiff Matejovich provided prior express consent. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance grounds, with the outcome depending on the specific facts of each case." *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4698665, at *4 (N.D. Ill. Sept. 8, 2016) (citing cases).[8] If State Farm were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiffs to pursue their individual claims.

Fourth, even if Plaintiffs prevailed on class certification, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."). More and more defendants in these cases are asserting Due Process challenges to awards of statutory damages in the class context.

Next, Plaintiffs faced the risk posed by a shifting and uncertain legal landscape, with the

---

[8] *Compare Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 WL 66181, at *17 (N.D. Ill. Jan. 4, 2013) (granting class certification), *with G.M. Sign, Inc. v. Brinks Manufacturing Co.*, No. 09 C 5528, 2011 WL 248511, at *10-11 (N.D. Ill. Jan. 25, 2011) (declining to certify a class).

balance of power on the Federal Communications Commission (FCC) expected to change in 2017 and an incoming administration that may wish to alter TCPA enforcement practices. *See* Brian Fung, *With Trump on the horizon, the FCC signals it may not pass any more big rules*, Washington Post, Nov. 16, 2016, *available at* https://www.washingtonpost.com/news/the-switch/wp/2016/11/16/with-trump-on-the-horizon-the-fcc-signals-it-wont-be-passing-any-more-big-rules/ (noting that the "incoming administration . . . could take things in a very different direction next year"); *Thorne v. Donald J. Trump for President, Inc.*, No. 1:16-cv-04603 (N.D. Ill.) (pending TCPA action).

Finally, there is a risk of losing a jury trial. And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal.

In contrast to all of these very real risks, the Settlement provides substantial relief to Settlement Class Members without delay and is fair, reasonable, and adequate.

### 2.     There Is No Opposition to the Settlement

Zero of the approximately 80,000 Class Members objected to the Settlement, and only one Class Member opted out, all after nearly 4,000 Class Members called the toll-free telephone number and over 1,000 unique visitors logged onto the Settlement Website. "Such a remarkably low level of opposition supports the Settlement." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 965 (St. Eve, J.) (concluding that "tiny fraction" of opt-outs and objections supports approval where .01% of class members requested exclusion and 10 class members filed specific objections).

### 3.     Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive

motion practice, including merits discovery, motions for summary judgment, and further expert analysis.[9] It is likely to be late 2017 before the case would actually proceed to trial. And, any judgment in favor of Settlement Class Members could be further delayed by the appeal and certiorari petition process, which would likely include a Due Process challenge. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiffs strongly endorse this Settlement. Selbin Decl. ¶ 16. Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases); (2) Class Counsel engaged in extensive discovery, fully briefed the motion for class certification, and exhaustively evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel, after an in-person mediation session before a United States Magistrate Judge, with many additional weeks of contentious negotiations between the parties. *Id.* ¶¶ 14-15. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final

---

[9] The Settlement will also effectively moot an ancillary subpoena enforcement proceeding pending on appeal, *Smith v. Kaltner*, No. 16-1489 (2d Cir.). The Second Circuit is currently holding the subpoena respondent's appeal in abeyance in light of this Court's consideration of the Settlement.

approval"); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  This factor therefore weighs in favor of approval.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval

The Settlement was informed by Class Counsel's analysis of the factual and legal issues involved in the case.  Counsel's judgment was based upon extensive discovery—including call data and testimony from State Farm, Variable, and a relevant non-party, along with expert analysis—and Class Counsel's legal analysis was refined through the adversarial process of briefing Plaintiffs' Motion for Class Certification.  Class Counsel possess the discovery necessary to confirm that the Settlement is fair, reasonable, and adequate.  Selbin Decl. ¶ 16.

Class discovery spanned 18 months and was exhaustive, including the production and review of 193,850 pages of documents, the exchange of 83 requests for production of documents, 42 interrogatories, 7 requests for admission, and the collection of a call database hidden in Morocco (by Variable, not State Farm).  Discovery was also contentious: over the course of the litigation, eight discovery motions were filed, including motions to quash, compel production, and show cause.  *See* Selbin Decl. ¶¶ 9-11.  Without a doubt, this Settlement was reached only after the parties tested and refined their positions through contentious discovery, motion practice, and ultimately, a fully briefed motion for class certification.

Settlement negotiations, likewise, were prolonged and hard-fought, spanning many months.  They included multiple Court-ordered in-person and telephonic mediation sessions before the Honorable Susan E. Cox.  Negotiations were non-collusive and adversarial, and at times it appeared that the Settlement would not be finalized and the parties would resume litigating.  *Id.* ¶ 14-15.  Only days before yet another Court-ordered mediation, the parties finally

reached agreement on the remaining issues. Plaintiffs moved for preliminary approval on August 2, 2016, and after holding a hearing, this Court granted the motion on August 9, 2016.

Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through discovery, briefing, and numerous, contentious arm's-length negotiations. This factor thus supports approval of the Settlement.

## V.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

For settlement purposes, Plaintiffs respectfully request that the Court certify the Settlement Class defined in the Agreement. Agreement § 2.33. In its preliminary approval order, the Court provisionally certified the Settlement Class for settlement purposes, finding that it met the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3). Dkt. No. 316, ¶¶ 5-6. The Court directed Notice of the proposed Settlement to inform Settlement Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. No objections were received, nor has anything occurred since preliminary approval that should alter this Court's conclusions. Accordingly, the Settlement Class should be certified under Federal Rule of Civil Procedure Rule 23.[10]

### 1.     The Rule 23(a) Requirements are Satisfied

The numerosity requirement of Rule 23(a) is satisfied because the combined Settlement Class consists of 80,714 people. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). The commonality requirement is satisfied because there are many questions of law and fact common to the

---

[10] Plaintiffs presented a full version of these arguments in their briefing in support of the Motion for Class Certification. *See* Dkt. Nos. 266 & 291.

Settlement Class that center on State Farm and Variable's common practice of using an automated dialing system to call Settlement Class Members on their cell phones. *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding the that common questions supported certification of TCPA class action). The typicality requirement is satisfied because Plaintiffs' TCPA claims, which are based on State Farm and Variable's systematic use of automated calls to cell phones, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. The adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign,* 2009 WL 2581324, at *6. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See id.*

### 2. The Rule 23(b)(3) Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Settlement Class Members in a single adjudication. Common issues predominate here because the claims of the class members arise from State Farm and Variable's common practice of using an automated dialing system to contact consumers on their cell phones without their consent. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *4-5 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant

selected who was to receive the [ ] faxes").

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Moreover, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 WL 2224892, at *5 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'"). For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

## VI.   **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order substantially in the form as the proposed order attached as Exhibit 1: (1) granting final approval to the proposed Settlement as fair, reasonable, and adequate; (2) confirming its prior preliminary certification of the Settlement Class; (3) finding that Notice was issued to the Settlement Class satisfying Rule 23 and due process, and to state and federal officials satisfying 28 U.S.C. ¶ 1715; (4) excluding the timely received exclusion from the Settlement Class; (5) granting Class counsel's request for attorneys' fees, costs, and service awards for Class Representatives; and (6) dismissing with prejudice all claims against State Farm and entering final judgment as to State Farm pursuant to Rule 54(b).

Dated:  November 30, 2016       Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:  _____
            Jonathan D. Selbin

Jonathan D. Selbin (*pro hac vice*; admitted to the N.D. Ill. general bar)
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hutchinson (*pro hac vice*; admitted to the N.D. Ill. general bar)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

John T. Spragens (*pro hac vice*; admitted to the N.D. Ill. general bar)
jspragens@lchb.com
One Nashville Place
150 4th Avenue North, Suite 1650
Nashville, TN 37219-2423
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

*Lead Counsel for Plaintiffs and the Proposed Class*

BURKE LAW OFFICES, LLC
Alexander H. Burke
Email: ABurke@BurkeLawLLC.com
155 N. Michigan Avenue, Suite 9020
Chicago, IL  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

*Liaison Counsel for Plaintiffs and the Proposed Class*

Broderick Law, P.C.
Edward A. Broderick (pro hac vice)
ted@broderick-law.com
Anthony Paronich (pro hac vice)
anthony@broderick-law.com
125 Summer Street, Suite 1030
Boston, MA 02360
Telephone: (508) 221-1510

Law Office of Matthew McCue
Matthew McCue (pro hac vice)
Email: mmccue@massattorneys.net
1 South Ave, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925; admitted
to the N.D. Ill. general bar)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio State Bar No. 0091162; admitted
to the N.D. Ill. general bar)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603-3593
Telephone (312) 739-4200
Facsimile: (312) 419-0379

*Additional Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 30, 2016, I electronically filed the foregoing Motion and Memorandum with two supporting declarations with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all Counsel of record.


By: /s/ *John T. Spragens*
John T. Spragens